## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

New Century Foundation,  )
)
        Plaintiff,  )
)
v.  )
)
                                   Case No.
The United States Small Business  )
Administration; Isabel Casillas Guzman, in  )
her official capacity as Administrator of the  )
Small Business Administration,  )
)
        Defendants.  )
)
)
_____  )

## COMPLAINT

Plaintiff New Century Foundation alleges as follows:

### INTRODUCTION

1.     Plaintiff New Century Foundation ("NCF") respectfully asks the Court to hold

unlawful and set aside the decision of defendant Small Business Administration ("SBA")

and its Administrator, denying forgiveness of a loan obtained by NCF under the Paycheck

Protection Program ("PPP") established by the Coronavirus Aid, Relief and Economic

Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020). NCF further

requests that this Court enter declaratory and injunctive relief, finding that NCF is entitled

to forgiveness of its PPP loan and directing SBA to grant such forgiveness and cease any

further collection efforts on NCF's loan. NCF also requests that this Court find that

SBA's position in this matter is not substantially justified, and grant an award of costs and

reasonable attorney's fees to NCF as the prevailing party, as authorized by the Equal Access to Justice Act.

2.    As alleged herein, SBA denied forgiveness of NCF's PPP loan on grounds that: are unlawful, arbitrary, capricious and an abuse of discretion; ignore procedures required by law; violate NCF's rights under the United States Constitution; and exceed SBA's statutory authority.

### PARTIES

3.    Plaintiff NCF is an IRS-recognized § 501(c)(3) non-profit educational organization, doing business as American Renaissance. NCF's principal place of business is P.O. Box 3336, Lynchburg, Virginia 24503. NCF has operated since 1994 as a host of conferences and publisher of American Renaissance, an online collection of original and reprinted discussions of fact and opinion concerning racial and other issues.

4.    Defendant SBA is an independent federal agency created and authorized pursuant to 15 U.S.C. § 633, *et seq.* SBA's headquarters are located at 409 3rd Street, SW, Washington, DC 20416.

5.    Defendant Isabel Casillas Guzman is the Administrator of the SBA, and is sued in her official capacity only. Authority to sue the Administrator is granted by 15 U.S.C. § 634(b).

### JURISDICTION AND VENUE

6.    This Court has jurisdiction of this dispute under 28 U.S.C. § 1331(federal question), 28 U.S.C. §§ 2201-2202 (the Declaratory Judgment Act), 5 U.S.C. §§ 701-706 (Administrative Procedure Act), and 15 U.S.C. § 634(b)(1) (SBA jurisdiction to sue and be sued).

7.     This Court has authority to issue declaratory and injunctive relief under 5 U.S.C. §

706 and 28 U.S.C. §§ 2201 and 2202.

8.     NCF has Article III standing because SBA's denial of loan forgiveness has caused

a concrete injury which is redressable by this Court by means of the relief requested herein.

9.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) and 5

U.S.C. § 703 because Defendants reside in this judicial district and a substantial part of the

events or omissions giving rise to NCF's claim occurred in this district.

10.    The SBA's review and denial of the Plaintiff's appeal through SBA's Office of

Hearings and Appeal ("OHA") became final on August 8, 2022. 13 C.F.R. § 134.1211(g).

The OHA's denial of full loan forgiveness is a final agency action pursuant to 5 U.S.C. §

704 and 13 C.F.R. § 134.1211(c)(3). The Small Business Act does not set a deadline for

petitions for judicial review of SBA final actions. Accordingly, NCF's Complaint is

subject to the six-year deadline for bringing of civil actions against the United States

Government and its agencies. 31 U.S.C. § 3702(b); 5 U.S.C. § 703.

## FACTUAL ALLEGATIONS

11.    All facts alleged and documents cited in this Complaint are part of the

administrative record that was before SBA at the time of its decision.

12.    On or about June 10, 2020, NCF and Capital One, N.A. ("Capital One") executed a

loan agreement for an SBA PPP loan in the amount of $51,600.00, as authorized by

Congress under the CARES Act. In the time since the loan agreement was executed, NCF

has made semi-annual payments to Capital One in the amount of $1,285.70. All

outstanding principal amounts of the loan will be due and payable on June 9, 2025.

13. On September 21, 2021, NCF applied to Capital One for forgiveness of the PPP loan, as authorized by the Paycheck Protection Flexibility Act, 15 U.S.C. § 636m.

14. On November 1, 2021, Capital One advised NCF that its application for loan forgiveness had been denied. Capital One claimed to base its denial on violations by NCF of the Civil Rights Requirement listed in SBA Form 2483, which requires the loan applicant to attest that it is in compliance with 13 CFR Parts 112, 113, and 117, prohibiting acts of discrimination on the basis of race, sex, national origin, and other forbidden grounds. In denying loan forgiveness, Capital One did not cite a single act of unlawful discrimination by NCF against any person.

15. On November 3, 2021, NCF notified SBA by email that NCF disputed Capital One's denial of loan forgiveness.

16. On November 4, 2021, Capital One advised NCF by email that Capital One had forwarded NCF's loan forgiveness application and Capital One's denial decision to SBA for review.

17. On November 5, 2021, NCF's counsel sent letters to Capital One's Chairman and General Counsel, demanding that Capital One approve NCF's forgiveness request or provide evidence that NCF, at any time and in any fashion, violated the Civil Rights laws of the United States. Capital One did not respond to NCF's letters.

18. SBA subsequently sent an informational request to Capital One, seeking further explanation of the denial of loan forgiveness to NCF. Capital One then sent SBA a letter citing, for the first time, the text of an inactive NCF job posting that had invited applications from persons who shared NCF's objectives and beliefs. Capital One claimed that the text constituted unlawful discrimination in employment. As alleged below, the

language of the job posting did not state that employment decisions would be made on the basis of protected characteristics, or that NCF ever had made any employment decisions on that basis. Furthermore, all links to the job posting were deleted not later than 2017 – well before NCF applied for its PPP loan – and the text itself was left on the website through inadvertence and could not be found through any ordinary form of site access and search. Capital One's letter to SBA also characterized various expressions of opinion by NCF as demonstrating NCF's supposed promotion of "exclusion of and discrimination against non-white persons" in access to accommodations. Capital One's letter to SBA referred only to NCF's advocacy of changes to current governmental law and policy, rather than discriminatory conduct, as a basis for its claim that NCF discriminates in access to accommodations.

19.    After receiving the response from Capital One, SBA made no effort to reach an informal resolution of its section 112 and 113 claims, as required by the Small Business Act and its own regulations.  42 U.S.C. § 2000d-1; 13 C.F.R. §§112.10, 113.6. Instead, on December 29, 2021, SBA notified Capital One by letter that no part of the NCF loan would be forgiven, and directed Capital One to communicate the decision to NCF. Letter from Office of Capital Access, U.S. Small Business Administration, to Capital One, National Association (Dec. 29, 2021). On January 2, 2022, SBA advised NCF that NCF was ineligible for its PPP loan because of failure to comply with 13 CFR Parts 112, 113, and 117.

20.    NCF duly appealed SBA's decision to SBA's Office of Hearings and Appeals ("OHA"). On June 16, 2022, Administrative Judge Raul Pardo issued a decision finding that "Appellant [NCF] is ineligible for the amount [of] PPP loan received due to

discrimination despite certifying on the Form 2483 [that] its business agreed not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA regulations, rules, policy, federal statutes and case law." United States Small Business Administration, Office of Hearings and Appeals (Decision Issued June 16, 2022) (hereinafter *"Initial Order"*).

21.     Judge Pardo's decision adopts the rationale of Capital One's denial of forgiveness. Specifically, Judge Pardo's decision finds that NCF violated its certification on Form 2483, and sections 112 and 113, when it "maintained" the inactivated language of the job posting and questioned the rationale of existing anti-discrimination laws. Judge Pardo's decision did not cite a single discriminatory act by NCF. *Initial Order,* p. 5.

22.     NCF filed a timely petition for reconsideration of the *Initial Order*. NCF's petition thoroughly explained the lack of factual and legal basis for Judge Pardo's order; and pointed out that in the absence of any claimed act or acts of unlawful discrimination, Judge Pardo had unlawfully denied NCF's loan forgiveness application on the basis of constitutionally-protected speech.

23.     On July 8, 2022, Judge Pardo entered an order denying NCF's petition for reconsideration, reciting the same grounds as set out in his *Initial Order*. U.S. Small Business Administration, Office of Hearings and Appeals, Order Denying Petitioner/Appellant's Petition for Reconsideration Appeal and Affirm [sic] Office of Hearing and Appeal's Initial Decision (July 8, 2022) (hereinafter *"Reconsideration Order"*).  On July 19, 2022, NCF sent a letter asking Administrator Guzman to exercise

her discretion to reverse Judge Pardo's denial of loan forgiveness. Administrator Guzman did not respond to NCF's request.

## Count I

### (To Vacate and Set Aside the Decision of SBA Pursuant to § 706 of the Administrative Procedure Act)

24.     NCF hereby incorporates paragraphs 1 to 23 as if fully set forth herein.

25.     5 U.S.C. §706 provides a federal court with authority to "hold unlawful and set aside agency action found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Section 706 also empowers a federal court to hold unlawful and set aside any agency action, finding or conclusion found to be contrary to constitutional rights, made without observance of procedure required by law, or in excess of statutory authority.

26.     SBA's decision to deny loan forgiveness to NCF is defective upon all of the cited grounds, and therefore must be vacated and set aside.

## SBA FAILED TO FOLLOW PROCEDURES REQUIRED BY LAW

27.     SBA claimed to base its denial of loan forgiveness on NCF's supposed violations of sections 112 and 113 of SBA's regulations, which require businesses receiving SBA financial assistance not to discriminate unlawfully in their business practices. However, SBA entirely failed to follow the procedure required by the Small Business Act and its own rules for enforcement of those regulations.

28.     Specifically, the Small Business Act permits compliance with the civil rights provisions of the Act to be enforced by "termination of or refusal to grant or to continue assistance [to a recipient];" but only upon "an express finding on the record, after opportunity for hearing, of a failure to comply with such requirement . . ." 42 U.S.C. §

2000d-1. The Act goes on to say that "no such action shall be taken until the department or agency concerned has advised the appropriate person or persons of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means." *Id.*

29.     The SBA adopted regulations that implement these statutory requirements. According to those regulations, when SBA learns by means of a "compliance review, report, complaint, or any other information [of] a possible failure to comply with [Parts 112 or 113]" it must "make a prompt investigation" including, where appropriate, "a review of the pertinent practices of the applicant or recipient, the circumstances under which the possible noncompliance . . . occurred, and other factors relevant to a determination as to whether the applicant or recipient has failed to comply with [Parts 112 or 113]." 13 C.F.R. §§ 112.10, 113.6.

30.     The regulations further provide that if SBA's investigation suggests a failure to comply with Parts 112 or 113, the agency *may not,* as in NCF's case, simply cut off the participant from funding, loan forgiveness or other PPP benefits. SBA first must determine whether the "issue can[] be resolved by informal means," and must make such an informal resolution "whenever possible." 13 C.F.R. §§ 112.10(d)(1), 113.6(d)(1); *see Alexander v. Sandoval,* 532 U.S. 275, 289-292 (2001).

31.     In NCF's case, the record shows no effort by SBA to explore an informal resolution of its issue with NCF, and reflects no finding by SBA that such a resolution could or could not be achieved. In fact, SBA engaged in no such discussion with NCF at all. SBA simply declared that NCF had violated the SBA non-discrimination regulations,

adopting the inadequate rationale for this conclusion given by Capital One, and found that NCF therefore was not eligible for its PPP loan.

32.     An elementary principle of administrative law is that an agency acts arbitrarily and capriciously when it fails to follow the governing statute and its own regulations. *See* 28 U.S.C. § 706(2)(D); *Acardi v. Shaughnessy,* 347 U.S. 260, 265-68 (1954); *Nelson v. Immigration & Naturalization Service,* 232 F.3d 258, 262 (1st Cir. 2000). SBA's failure to pursue an informal resolution of its issue with NCF, in violation of the regulations SBA had itself adopted to govern such issues, requires that its denial of loan forgiveness be vacated.

## SBA'S DECISION IS ARBITRARY, CAPRICIOUS AND AN ABUSE OF DISCRETION

33.     SBA's decision denying loan forgiveness to NCF lacks a factual basis and relies upon transparently inadequate reasoning. For these reasons, the order denying loan forgiveness to NCF must be vacated as arbitrary, capricious and an abuse of discretion. 28 U.S.C. § 706(A).

34.     Sections 112 and 113 of SBA's regulations, which SBA cites as the basis for denial of NCF's forgiveness application, were promulgated under the authority of Title VI of the Civil Rights Act, which authorizes federal agencies to adopt regulations that prohibit discriminatory practices in federally-assisted programs. 42 U.S.C. § 2000d-1. An agency's Title VI authority does not extend to the creation of new law; agency regulations must be applied and enforced in accordance with the Fourteenth Amendment to the United States Constitution and the civil rights laws of the United States, including Title VII of the Civil Rights Act and its prohibition on employment discrimination, as interpreted by the courts. *See* United States Department of Justice, "Title VI Legal

Manual," Section IV, available at dl (justice.gov) ("*DoJ Title VI Manual*") (last visited May 24, 2024).

35.    The civil rights laws of the United States impose liability only on defendants that have taken actual, adverse action against identifiable persons who are members of a group protected by those laws. As the United States Court of Appeals for the D.C. Circuit has found in the employment context, the adverse action at issue not only must have occurred, but must have resulted in a "materially adverse consequence." *See, e.g., Ortiz-Diaz v. United States Dep't of Housing & Urban Dev.*, 867 F.3d 70, 74 (D.C. Cir. 2017).

36.    The U.S. Supreme Court has addressed the requirement of proof of discriminatory action, and has made clear that such proof precedes any consideration of the defendant's intent. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) ("*McDonnell Douglas*"). Under *McDonnell Douglas*, applying Title VII to a discrimination claim must begin with a *prima facie* showing that an individual, belonging to a racial minority or other protected class, was rejected for employment or suffered other adverse action by the defendant. (Most of the caselaw applicable to discrimination claims has been developed under Title VII, and those principles are applied in cases brought under both Title VI and Title VII. *See Silva v. St. Anne Catholic School*, 595 F.Supp.2d 1171, 1183 (D. Kan. 2009); *DoJ Title VI Manual* section IV.) Only when this *prima facie* case has been made, including evidence of adverse action against a protected person, does the burden shift to the defendant to articulate some legitimate, nondiscriminatory reason for its adverse

action. Until the *prima facie* case has been made, the defendant's motives or intent,

including inferences from expressions of opinion, may not be placed at issue.[1]

### SBA Did Not Find a Single Act of Unlawful Discrimination by NCF, thereby Failing the *McDonnell Douglas* Standard

37.     Purporting to apply its Title VI regulations here, SBA concluded that NCF

engaged in unlawful acts of discrimination under sections 112 and 113; but nothing in the

record offers the slightest support for that conclusion. In fact, SBA effectively concedes

that it has no direct evidence of any act of unlawful discrimination by NCF, such as a

race-based denial of employment or a race-based refusal to permit a person to attend an

NCF-sponsored conference. (*See Reconsideration Order,* p. 17, where Judge Pardo finds

that there is no "direct evidence" that NCF committed acts of discrimination.) Instead,

SBA follows Capital One's lead in claiming, based upon what it describes as

"circumstantial" or "indirect" evidence, that NCF practiced such discrimination in two

ways. *See Initial Order*, p.p. 11-12, 14, 17, 18.

38.     First, SBA finds that NCF "maintained" on its website language inviting

applications from reporters with a "[s]trong commitment to race realism and white

advocacy." *Reconsideration Order*, p. 5. The job posting, which was effectively invisible

to the world, also requested that applicants submit a cover letter with "[a] brief

description of applicant's political views and how he came to them," and "why the

---

[1] Agencies have some discretion in their application of the *McDonnell Douglas* process. As the Department of Justice has pointed out, an agency's investigation of a Title VII claim "need not follow the same sequential process as courts, where a plaintiff first offers prima facie evidence and the defendant then offers rebuttal evidence." *DoJ Title VI Manual, supra.* For example, an agency might "choose to make a preliminary prima facie finding then require recipients to articulate defenses." *Id.* However, no matter which approach the agency chooses, the *prima facie* finding of adverse action must be made before intent may be examined and a violation can be established.

applicant believes he would be a good fit for American Renaissance." *Id.* Judge Pardo concluded that the job posting alone "appears" to be a "discriminatory employment practice that violates SBA's civil rights requirements." *Initial Order*, p. 11. SBA also suggested, without factual basis, that the language of the posting discouraged, or would have discouraged, non-white persons from applying for employment with NCF. *Initial Order*, p. 18.

39.     Second, Judge Pardo quotes portions of NCF articles and statements that question the rationale for legal prohibitions against racial discrimination. According to Judge Pardo, these statements reflect a policy of discrimination on the basis of race "with regard to goods, services, or accommodations offered" by NCF. Judge Pardo does not cite a single instance in which NCF actually refused to provide goods, service or accommodation on account of race.

40.     SBA's factual findings, reasoning and conclusions do not satisfy *McDonnell Douglas* or the fundamental requirement that civil rights claims must be based upon acts that have materially adverse consequences for real persons. Accordingly, SBA's denial of loan forgiveness must be vacated and set aside.

**SBA Incorrectly Relies upon "Circumstantial and Indirect Evidence" to Prove that NCF Committed Discriminatory Acts**

41.     In support of its argument that NCF violated sections 112 and 113, SBA relies heavily upon a distinction between "direct" evidence of discriminatory acts by NCF, which SBA does not claim to have, and "indirect" or "circumstantial" evidence, consisting entirely of statements by NCF and its contributors. *See Initial Order*, p.p. 11-12, 14, 17, 18.

42.   Judge Pardo's evidentiary theory is not a model of clarity. It is not always clear whether SBA contends that NCF's advocacy of certain policies, itself, constitutes unlawful restriction of patronage or employment; or whether SBA contends that actual acts of discrimination, going beyond mere advocacy, may be presumed to have occurred because of the statements SBA cites. As an example of the latter approach, Judge Pardo's *Initial Decision* cites four American Renaissance articles that question anti-discrimination laws and argue for a right of voluntary racial separation. Judge Pardo then concludes that "[t]he inference of discrimination in [the cited articles] makes it clear that protected classes of individuals *would be* denied, excluded, discouraged, and restricted from applying, and thus NCF engaged in illegal discriminatory employment practices." *Initial Order*, p. 14 (*emphasis added*). As an example of the former approach, Judge Pardo found that a job posting, itself, "appears to be a discriminatory employment practice that violates SBA's civil rights requirements." *Initial Order*, p. 11.

43.   Neither version of SBA's evidentiary theory is legally adequate. No amount of "circumstantial" evidence, derived from a person's or organization's expressed opinions, can overcome the need to make a *prima facie* case that includes evidence of an adverse act. As the very judicial decisions SBA cites in support of its argument make clear, and as the *McDonnell-Douglas* standard requires, indirect or circumstantial evidence may be used in a civil rights case only after the *prima facie* case of adverse action has been made, as a means of establishing the intent underlying that action. Notably, in *Loyd v. Phillips Bros., Inc.*, 25 F.3d 518 (7th Cir. 1994), the court stated that circumstantial evidence could be used to establish the employer's intent in denying an employee a place in an apprenticeship program; similarly, in *Troupe v. May Dept. Stores*, 20 F.2d 734 (7th Cir.

1994), the court found that circumstantial evidence could be used to show that an employee was terminated from her job because of her pregnancy. In neither of the decisions cited by SBA, nor in any other case of which NCF is aware, does a court uphold the use of indirect or circumstantial evidence, not merely to show the intent with which an actual, adverse action was taken, but to show that an unspecified adverse action occurred.

44.     In order to avoid judicial rejection of a decision as arbitrary and capricious, an agency must "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Casa De Maryland v. U.S. Department of Homeland Security*, 924 F.3d 684, 703 (4th Cir. 2019). The arbitrary-and-capricious standard "requires that the agency action be reasonable and reasonably explained . . . A court simply ensures that the agency has acted within a zone of reasonableness and in particular, has reasonably considered the relevant issues and reasonably explained the decision." *FCC v. Prometheus Radio Project*, ___ U.S. ___, 141 S.Ct. 1150, 1158, 209 L.Ed.2d 287 (2021).

45.     SBA's decision in this case is neither reasonable nor reasonably explained, and SBA has shown no rational connection between the facts it found and the choice it made. Accordingly, this court must find that the denial of loan forgiveness was arbitrary and capricious and must be vacated.

### SBA Ignored NCF's Demonstration that It Did Not Practice Unlawful Discrimination

46.     SBA's failure to make a *prima facie* case of adverse action taken by NCF against anyone, at any time, makes SBA's claims of NCF's discriminatory intent irrelevant. Nonetheless, in the proceedings before Judge Pardo, NCF presented substantial

arguments and evidence to show that American Renaissance's job posting and published articles, as cited by SBA, did not reflect an intention to engage in any unlawful, discriminatory acts; and that NCF, in fact, has not engaged in any such acts.

47.    Notably, NCF showed that the virtually-inaccessible language of the job posting on which SBA places such heavy reliance was not published to anyone during the life of NCF's PPP loan, could be found on NCF's website only with great difficulty, and in any case recited only legitimate, nondiscriminatory qualifications for a position with an advocacy organization such as NCF. As NCF demonstrated with several examples, other advocacy organizations, such as NARAL Pro-Choice America, the Southern Poverty Law Center and the Antidefamation League, openly seek employees who agree with the missions of those organizations. The fact that NCF seeks persons sympathetic to white interests does not establish that it will hire only white persons, any more than an organization that advocates the rights of women can be assumed to deny employment to men.

48.    NCF's submissions to SBA went much further, and included links to articles on American Renaissance written by persons of color, identification of prominent non-white speakers at American Renaissance conferences, and a short biography of a key NCF employee of Hispanic heritage and Chilean citizenship. Those materials established beyond any doubt that NCF has not discriminated against any protected group of persons in employment or in access to NCF services and events.

49.    SBA's Standard Operating Procedures ("SOP") implicitly acknowledge that the agency must take such evidence of non-discriminatory purpose into account. The SOP cites the example of a fitness center that markets to one gender, but will be eligible for

SBA financial assistance if it furnishes evidence that it is open to both men and women. SOP 50 10 5(K), "Lender and Development Company Loan Programs" (Office of Financial Assistance, U.S. Small Business Administration) p. 108. As this example shows, it is improper for SBA simply to infer from a business's public statements (such as an advertisement or a job posting) that it practices unlawful discrimination. The SBA must take explanatory evidence, such as the extensive factual submissions offered by NCF, into account.

50.     Unfortunately, although it reproduced substantial portions of NCF's responsive submissions in its *Initial Order* and *Reconsideration Order*, those orders include no suggestion that the agency seriously considered those submissions, or gave them any weight at all. SBA's disregard for evidence in NCF's favor is typical of the agency's arbitrary and capricious handling of NCF's case and requires that its decision be vacated.

### SBA'S DECISION IS CONTRARY TO CONSTITUTIONAL RIGHT, POWER, PRIVILEGE OR IMMUNITY

51.     Stripped of its unavailing references to non-existent violations of sections 112 and 113, SBA's denial of loan forgiveness to NCF is nothing more than an attack on opinions that SBA finds offensive. The order therefore violates NCF's rights under the First Amendment to the Constitution of the United States, and must be rejected as abusive and unlawful.

52.     When a regulation or order burdens lawful speech, a court must determine: (1) whether the regulation or order is content-based or content-neutral; and (2) if the regulation or order is content-based, the appropriate level of scrutiny to be applied. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163-64 (2015) ("*Reed*"); *Regan National Advert. of Austin, Inc. v. City of Austin*, 972 F.3d 696, 701-02 (5th Cir. 2020). Content-based

restrictions on speech are presumptively unconstitutional and receive strict scrutiny, which places the burden on the Government to show that the regulation is narrowly tailored to serve a compelling governmental interest. *Reed,* 576 U.S. at 171.

53.     It cannot be questioned that SBA's loan forgiveness decision is a content-based restriction on lawful speech. SBA's *Initial Order* and *Reconsideration Order* quote NCF's published opinions on political and cultural questions at length, including NCF's advocacy of reform of anti-discrimination laws and restoration of lawful freedom of association. SBA characterizes those views as "discriminatory" in themselves, even in the absence of unlawful actions by NCF. In SBA's view, NCF must be denied loan forgiveness not because it *practices* discrimination, but because it "supports discrimination" in circumstances to be defined by changes to present law and policy. *Initial Order*, p. 11.

54.     A clearer case for application of strict scrutiny could hardly be imagined. SBA nonetheless argues that its denial of loan forgiveness should be subject to "intermediate" scrutiny under the rationale of *Regan v. Taxation with Representation of Washington, et al.,* 461 U.S. 540 (*"Regan"*). Under *Regan,* strict scrutiny will not apply to a congressional refusal to subsidize certain expressive activities, so long as that refusal is not based upon the viewpoints expressed by the entity that is refused the subsidy. However, *Regan* also makes clear that strict scrutiny *would apply* if the government "were to discriminate invidiously in its subsidies in such a way as to 'aim[] at the suppression of dangerous ideas.'" *Regan,* 461 U.S. 540, 548, citing *Cammarano v. United States,* 358 U.S. 498, 523 (1959). That is precisely what SBA has done here.

55.     Application of strict scrutiny to SBA's decision requires the agency to show that denial of loan forgiveness to NCF serves a compelling, or very strong interest in the law, and that the action is either very narrowly tailored or is the least restrictive means available to the government. *See, e.g., Ashcroft v American Civil Liberties Union,* 535 U.S. 564 (2002).

56.     SBA does not attempt to show that its decision serves a compelling governmental interest and is narrowly tailored to serve that interest. Instead, it argues, incorrectly, that only a "rational relation to a legitimate government purpose need by shown" in this case, and that SBA's denial of loan forgiveness is rationally connected to Congress's intention to ensure that funds lent to businesses are used for the purposes Congress approves. *Initial Order,* p. 8. Even if this lower level of scrutiny were applied, SBA's argument would fail: as one court has pointed out in a case involving the same agency, "[t]he SBA does not have a legitimate interest in preventing government sponsorship of speech that it views as offensive to the public welfare." *Mission Trace Investments, Ltd. v. Small Business Administration,* 622 F.Supp. 687, 700 (D. Colo. 1985), citing *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546 (1975).

## SBA'S DECISION IS IN EXCESS OF STATUTORY AUTHORITY

57.     The regulations cited by SBA in support of its decision to deny loan forgiveness to NCF are authorized by Title VI of the Civil Rights Act of 1964, which prohibit discrimination on the basis of race, color, or national origin in programs or activities receiving Federal financial assistance. 42 U.S.C. § 2000d. Title VI does not, and lawfully could not, authorize SBA to adopt or enforce regulations that deny program participation and benefits on the basis of protected speech, rather than acts of discrimination.

58.    As alleged herein at paragraphs 51-56, SBA's adverse decision is based entirely upon its disagreement with opinions expressed by NCF or contributors of content to NCF, rather than upon any acts of unlawful discrimination. Neither the Small Business Act, Title VI of the Civil Rights Act, nor any other statute authorizes SBA to take such unconstitutional action. Accordingly, SBA's decision must be vacated and set aside as in excess of SBA's statutory authority.

## Count II

### (Declaratory Judgment)

59.    NCF incorporates paragraphs 1 through 58 as if fully set forth herein.

60.    28 U.S.C. § 2201 gives this Court the authority to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

61.    There exist actual, justiciable controversies among the parties to this action, which present issues within the jurisdiction of this Court.

62.    An actual controversy exists on the issue of whether SBA failed to follow the Small Business Act and its own regulations when it denied forgiveness of NCF's loan without first determining whether the matter could be resolved by informal means.

63.    An actual controversy exists on the issue of whether the SBA failed to offer any factual support for its finding that NCF practices unlawful discrimination.

64.    An actual controversy exists on the issue of whether SBA unlawfully relied upon what it called "circumstantial" and "indirect" evidence when it found that NCF committed unlawful acts of discrimination.

65.     An actual controversy exists on the issue of whether SBA arbitrarily ignored NCF's factual demonstration that NCF did not practice unlawful discrimination.

66.     An actual controversy exists on the issue of whether SBA's denial of forgiveness of NCF's loan is contrary to constitutional right, power, privilege or immunity.

67.     An actual controversy exists as to whether SBA's denial of forgiveness of NCF's loan was in excess of statutory authority.

68.     Accordingly, NCF respectfully prays that this Court issue a Declaration: (1) that SBA failed to follow statutory authority and its own regulations when it denied forgiveness of NCF's loan; (2) that SBA failed to offer any factual support for its finding that NCF practiced unlawful discrimination; (3) that SBA unlawfully relied upon so-called circumstantial and indirect evidence when it found that NCF had engaged in discrimination; (4) that SBA arbitrarily ignored NCF's factual demonstration that NCF did not practice unlawful discrimination; (5) that SBA's denial of forgiveness of NCF's loan is contrary to constitutional right, power, privilege or immunity; (6) that SBA's denial of forgiveness of NCF's loan exceeded SBA's statutory authority; and (7) granting NCF all other relief that is just and proper.

## Count III

### (Injunctive Relief)

69.     NCF hereby incorporates paragraphs 1 to 68 as if fully set forth herein.

70.     In addition to the other relief requested, NCF respectfully asks the Court to enter a permanent injunction prohibiting SBA from engaging in or permitting any further efforts to collect any principal or interest amounts due under NCF's PPP loan.

71.     In order for a permanent injunction to issue, a plaintiff must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange*, LLC, 547 U.S. 388, 391 (2006).

72.     NCF's present complaint meets all elements of this standard.

73.     First, NCF has suffered an irreparable injury for which remedies at law are unable to compensate. The courts have defined an irreparable injury as one which "cannot be undone through monetary remedies." *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). In this case, monetary relief in the form of a refund, with interest, of payments NCF has already made on the PPP loan will be inadequate unless SBA also is enjoined from collecting or permitting the collection of any semi-annual amounts supposedly due in the future, or from demanding payment of the entire principal amount outstanding. Further collection efforts on the part of SBA also will burden NCF's constitutional right of protected expression – a harm that cannot be remedied by eventual monetary relief.

74.     The balance of hardships in this case also favors NCF. In the absence of a permanent injunction, NCF will continue to be liable for payments of amounts due under the PPP loan and will continue to suffer a burden on its right to freedom of expression under the United States Constitution. SBA, on the other hand, will merely be required to cease actions that are unlawful and that confer no rightful benefit on SBA.

75.     Finally, entry of a permanent injunction on NCF's behalf will not harm, and in fact will advance, the public interest. Specifically, the public benefits when government is required to follow the law, including its own statutes and regulations and the Constitution of the United States.

76.     Accordingly, NCF respectfully asks this Court to enter a permanent injunction providing: (1) that SBA rescind its finding that NCF is not entitled to forgiveness of its PPP loan; (2) that SBA cease any efforts to collect any amounts supposedly due under the PPP loan and refund any amounts already paid, with interest; (3) that SBA advise Capital One that NCF's loan has been forgiven; and (4) for such other relief as this Court deems appropriate.

## Count IV

### (Attorneys' Fees and Costs Pursuant to the Equal Access to Justice Act)

77.     NCF hereby incorporates paragraphs 1 to 76 as if fully set forth herein.

78.     An award of attorneys' fees and costs to NCF is proper pursuant to 5 U.S.C. § 504 and 28 U.S.C. § 2412, because SBA's conduct was arbitrary and capricious and because the position taken by SBA in this matter is without substantial justification.

79.     Accordingly, NCF respectfully requests that this Court expressly find that SBA's position is without substantial justification, and award NCF its costs and attorneys' fees as the prevailing party in this litigation.

### PRAYER FOR RELIEF

WHEREFORE, New Century Foundation respectfully requests that this Court:

(a) Vacate and set aside SBA's decision as arbitrary, capricious, an abuse of discretion, in excess of statutory authority and otherwise contrary to the requirements of the Administrative Procedure Act;

(b) Enter a declaratory judgment setting aside or vacating SBA's denial of forgiveness of NCF's loan and making the findings requested in Count II of this Complaint;

(c) Enter a permanent injunction preventing any further efforts to collect amounts supposedly due under NCF's loan, and directing a full refund of any amounts paid by NCF under that loan, plus interest as permitted by law;

(d) Find that SBA's position in the matter is not substantially justified, and award NCF its attorneys' fees and costs for maintaining this action pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(e) Grant such other relief as this Court deems appropriate.

Date: May 31, 2024.

Respectfully,

/s/ Glen Allen

5423 Springlake Way
Baltimore, MD 21212
Bar No. 1013290

Attorney for Plaintiff