# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

NEW CENTURY FOUNDATION,     )
     )
       Plaintiff,     )
     )
v.     )
     )  Civil Action No. 24-1612 (TNM)
THE UNITED STATES SMALL BUSINESS     )
ADMINISTRATION, *et al.,*     )
     )
       Defendants.     )
_____  )

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 7(h), Plaintiff New Century Foundation hereby moves for summary judgment. In support of its Motion, Plaintiff relies upon the accompanying Memorandum of Points and Authorities and the Administrative Record. A proposed order is attached.

Dated: November 25, 2024

*/s/* Charles H. Kennedy
CHARLES H. KENNEDY
D.C. Bar No. 461636
THE KENNEDY PRIVACY LAW FIRM
1050 30TH Street, NW
Washington, DC 20007
(202) 450-0708
ckennedy@kennedyonprivacy.com
*Counsel for Plaintiff*

*/s/* Glen Allen
GLEN ALLEN
D.C. Bar No. 1013290
GLEN ALLEN LAW
5423 Springlake Way
Baltimore, MD 21212
(410) 802-6453
GlenAllenLaw@Protonmail.com
*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NEW CENTURY FOUNDATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 24-1612 (TNM) |
| THE UNITED STATES SMALL BUSINESS | ) | |
| ADMINISTRATION, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page(s)**

**INTRODUCTION**................................................................................1

**STATUTORY BACKGROUND**.............................................................2

**STATEMENT OF FACTS**...................................................................3

**ARGUMENT**....................................................................................6

   **I.**     Legal Standards.....................................................................6

   **II.**    **SBA's Decision is Arbitrary, Capricious, an Abuse of**
           **Discretion and Contrary to Law**..........................................8

      **A. SBA's Decision Is Unsupported by the Record and**
          **Based upon Inadequate Reasoning**.................................8

         **1. SBA Did not Cite a Single Act of Unlawful**
            **Discrimination by NCF**.........................................8

           **a. NCF Did not Deny Access to its Conferences**......................8

           **b. NCF Did not Engage in Employment**
             **Discrimination**.........................................................11

                **i.**     *The Record Shows that NCF's Job Posting*
                    *was no Longer Active when NCF*
                    *Applied for its Loan*.....................................12

                **ii.**    *NCF's Job Posting Does not Violate the*
                      *Civil Rights Laws*.........................................13

      **B. SBA Ignored NCF's Demonstration that It Did Not**
          **Practice Unlawful Discrimination**.................................15

      **C. SBA's Decision is Contrary to Constitutional Right,**
          **Power, Privilege or Immunity**.......................................16

      **D. SBA's Decision Is not Mandated by Congress or SBA's**
          **Regulations and Exceeds SBA's Statutory Authority**......................18

   **III.**    **NCF Is Entitled to a Declaratory Judgment**................................19

**IV.**    **NCF is Entitled to a Permanent Injunction**……………………………20

**V.**    **NCF is Entitled to an Award of its Attorney's Fees and Costs**………..23

**PRAYER FOR RELIEF**…………………………………………………………..23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v American Civil Liberties Union,*
    542 U.S. 656 (2004)…………………………………………………………18

*Brennan v. United States,*
    No. 4:20-cv-00505-KGB (E.D. Ark. July 13, 2020)……………………………22

*Burlington Truck Lines v. United States,*
371 U.S. 156, 168 (1962)………………………………………………………………..7

*Citizens to Preserve Overton Park. Inc. v. Volpe,*
    401 U.S. 402, 416 (1971)……………………………………………………………..7

*Deerfield Med. Ctr. v. City of Deerfield Beach*,
    661 F.2d 328, 338 (5th Cir. 1981)…………………………………………………...21

*eBay Inc. v. MercExchange*, LLC,
    547 U.S. 388, 391 (2006)……………………………………………………………8, 21

*Gateway Radiology Consultants, P.A. v. Jovita Carranza*
*in her capacity as Administrator for the U.S. Small*
*Business Administration,*
    616 B.R. 833, 836 (U.S. Bankruptcy Court, Md. Fla. 2020)……………………3

*Henry v. Sec'y of Treasury,*
    266 F. Supp. 3d 80, 86 (D.D.C. 2017)………………………………………………..6

*Ho-Chunk, Inc. v. Sessions,*
    253 F. Supp. 3d 303, 307 (D.D.C. 2017)………………………………………6

*Loyd v. Phillips Bros., Inc.,*
    25 F.3d 518 (7th Cir. 1994)……………………………………………………10

*Marsh v. Oregon Natural Resources Council,*
    490 U.S. 360, 378 (1989)………………………………………………………...7

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792, 802 (1973)……………………………………………………10

*Mission Trace Investments, Ltd. v. Small Business Administration,*
    622 F.Supp. 687, 700 (D. Colo. 1985)………………………………………18

*Motor Vehicle Manufacturers Association of U.S., Inc. v. State Farm*
*Mutual Automobile Insurance Co.,*
    436 U.S. 29, 43 (1983)…………………………………………………………….7

*Mutual Automobile Insurance Co.,*
    436 U.S. 29, 43 (1983)…………………………………………………………..7

*Pol'y & Rsch., LLC v. U.S. Dep't of Health & Human Servs.,*
    313 F. Supp. 3d 62, 74 (D.D.C. 2018)………………………………………….6

*Reed v. Town of Gilbert,*
    576 U.S. 155, 163-64 (2015)………………………………………………..17

*Regan v. Taxation with Representation of Washington, et al.,*
    461 U.S. 540 (1983)…………………………………………………………17

*Silva v. St. Anne Catholic School,*
    595 F.Supp.2d 1171, 1183 (D. Kan. 2009)………………………………10 n.1

*Southeastern Promotions, Ltd. v. Conrad,*
    420 U.S. 546 (1975)…………………………………………………………18

*Springfield Hospital, Inc. v. Guzman,*
    28 F.4th 403, 415 N. 16 (2d Cir. 2022)…………………………………………22

*Troupe v. May Dept. Stores,*
    20 F.2d 734 (7th Cir. 1994)……………………………………………..10

*Ulstein Maritime, Ltd. v. U.S.,*
    833 F.2d 1052, 1057 (1st Cir. 1987)…………………………………………22

**Statutes**

Coronavirus Aid, Relief and Economic Security Act
    Pub. L. No. 116-136, 134 Stat. 281 (2020)………………………………………1

134 Stat. 281 § 1102; 15 U.S.C. § 636…………………………………………...2

42 U.S.C. 2000d, 2000d-1…………………………………………………….2, 5, 19

Pub. L. No. 116-142, 134 Stat. 641 (2020)………………………………………3

16 U.S.C. § 636m(b), (d)…………………………………………………………3

5 U.S.C. § 706(2)…………………………………………………………………7

15 U.S.C. § 706(A)…………………………………………………………………8

42 USC § 2000e-3(b)…………………………………………………………12

15 U.S.C. § 636(a)(37)(A)(iv)(III)(aa)…………………………………………..19

28 U.S.C. § 2201……………………………………………………...7, 20

5 U.S.C. § 504………………………………………………………...23

28 U.S.C. § 2412………………………………………………………...23

**Regulations**

13 CFR Title 13, Parts 112, 113, and 117……………………………………1, 2

13 C.F.R. §§112.10, 113.6…………………………………………………5

13 C.F.R. § 120.110………………………………………………………..19

**Other Authorities**

Civil Rights Division, Department of Justice, Title VI Legal Manual
    DOJ Title VI Legal Manual………………………………………10 n. 1, 11 n. 2

Small Business Administration Standard Operating Procedures,
50 10 5(J), Subpart B (Apr. 1, 2018), p 108,
    Lender and Development Company Loan Programs……………………………16

## INTRODUCTION

This is an action for review of a final decision of the Small Business Administration ("SBA" or "Defendant") denying forgiveness of a loan obtained by Plaintiff New Century Foundation ("NCF" or "Plaintiff") under the Paycheck Protection Program ("PPP") established by the Coronavirus Aid, Relief and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) ("CARES Act").

SBA's denial of loan forgiveness was based upon NCF's supposed failure to comply with the Civil Rights Requirements listed in SBA Form 2483, which require the loan applicant to attest that it is in compliance with 13 CFR Parts 112, 113, and 117, prohibiting acts of discrimination on the basis of race, sex, national origin and other grounds. SBA's orders denying loan forgiveness did not cite a single instance of such discrimination on NCF's part, but relied entirely on expressions of opinion protected by the First Amendment to the United States Constitution.

NCF duly appealed the SBA decision to SBA's Office of Hearings and Appeals, which appeal was denied. A timely petition for reconsideration of that decision also was denied, and a letter from NCF to Administrator Guzman, asking her to exercise her discretion to reverse the denial of loan forgiveness, went unanswered.

On May 31, 2024, NCF filed the present suit challenging SBA's decision.  NCF's complaint alleged that SBA's findings had no factual basis, ignored submissions by NCF establishing its lack of discriminatory conduct, exceeded SBA's statutory authority, were unsupported by adequate reasoning, and violated NCF's First Amendment rights.  NCF's complaint asked that SBA's decision be reversed and vacated under section 706 of the

Administrative Procedure Act. NCF also requested declaratory judgment, injunctive relief and an award of fees and costs under the Equal Access to Justice Act, on the ground that SBA's action was without substantial justification.

On September 6, 2024, SBA and Administrator Isabella Casillas Guzman filed their answer to SBA's complaint.

Because the record shows no issue of material fact concerning the soundness of NCF's claims against SBA, NCF requests summary judgment in its favor on all requests for relief set out in its complaint.

**STATUTORY BACKGROUND**

In response to the widespread economic hardship caused by the COVID-19 pandemic, Congress enacted the CARES Act. The CARES Act includes the PPP, which provides SBA with the authority and funding to operate a loan program designed to assist small businesses with their cash-flow during the pandemic. PPP loans are granted and administered by private financial institutions according to SBA regulations.  *See* 134 Stat. 281 § 1102; 15 U.S.C. § 636a.

PPP loan eligibility is subject to certain statutory and regulatory requirements applicable to all SBA loans. As relevant to the present action, 42 U.S.C. 2000d-1 requires all federal departments and agencies that confer grants, loans, or contracts to issue regulations intended to ensure compliance with 42 U.S.C. 2000d, which provides that "no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

SBA has adopted regulations to implement the non-discrimination provisions of 42 U.S.C. 2000d-1. Those regulations are set out at 13 CFR Title 13, Part 112.

PPP loans "are designed to be forgiven," which is why "both Congress and the SBA Administrator have dispensed with the underwriting typically required for SBA loans." *Gateway Radiology Consultants, P.A., v. Jovita Carranza in her capacity as Administrator for the U.S. Small Business Administration,* 616 B.R. 833, 836 (U.S. Bankruptcy Court, Md. Fla. 2020).

Section 1106 of the CARES Act, as amended by the Paycheck Protection Flexibility Act, Pub. L. No. 116-142, 134 Stat. 641 (2020), sets out the conditions for forgiveness of PPP loans. A loan recipient is eligible for forgiveness of indebtedness, provided that at least 60 percent of the PPP loan funds are used for certain payroll expenses. SBA is required to reimburse the private lender for any PPP loan deemed eligible for forgiveness. 16 U.S.C. § 636m(b), (d). SBA has no discretion, under the CARES Act or the Small Business Act ("SBA Act"), to deny loan forgiveness to entities that meet the statutory requirements for grant of a PPP loan and forgiveness of such a loan.

## STATEMENT OF FACTS

On or about June 10, 2020, NCF and Capital One, N.A. ("Capital One") executed a loan agreement for an SBA PPP loan in the amount of $51,600.00. AR SBA000021-SBA000037. In the time since the loan agreement was executed, NCF has made semi-annual payments to Capital One in the amount of $1,285.70. All outstanding principal amounts of the loan will be due and payable on June 9, 2025.

On September 21, 2021, NCF applied to Capital One for forgiveness of the PPP loan.

On November 2, 2021, Capital One advised NCF that its application for loan forgiveness had been denied. Administrative Record (hereinafter "AR") SBA000036. Capital One claimed to base its denial on violations by NCF of the Civil Rights Requirement listed in SBA Form 2483. In

denying loan forgiveness, Capital One did not cite a single act of unlawful discrimination by NCF against any person.

On November 5, 2021, NCF's counsel sent letters to Capital One's Chairman and General Counsel, demanding that Capital One approve NCF's loan forgiveness request or provide evidence that NCF, at any time and in any fashion, violated the Civil Rights laws of the United States. AR SBA000164. Capital One did not respond to NCF's letters.

SBA subsequently sent informational requests to Capital One, seeking further explanation and documentation of the denial of loan forgiveness to NCF. AR SBA000172-SBA000178.

On December 14, 2021, Capital One sent SBA a letter stating that NCF's loan forgiveness had been denied because NCF discriminated in employment and access to facilities on the basis of race.  AR SBA000050-SBA000138.

In support of its claim of employment discrimination, Capitol One stated, for the first time, that NCF "maintained" on its American Renaissance website a non-current notice soliciting employment applications from persons who shared NCF's objectives and beliefs. AR SBA000063. The job posting did not state that employment decisions would be made on the basis of protected characteristics, or that NCF ever had made any employment decisions on that basis.  NCF posted the notice in 2017 and deleted all links to the notice that same year, after hiring a new employee who met NCF's hiring criteria. AR SBA000003-SBA000004; SBA000205, Request for Reconsideration of New Century Foundation ("*Petition for Reconsideration*").  When SBA denied forgiveness of NCF's loan, the notice was "maintained" by NCF only in the sense that it could be found through a diligent search of megabytes of archived data on the American Renaissance website. *Id.*

In support of its claim that NCF discriminated in access to facilities, Capitol One referred to NCF's published criticisms of anti-discrimination laws.  According to Capitol One, these statements violated civil rights laws because they "broadly *promote* the exclusion of and discrimination against non-white persons." AR SBA000051 (*emphasis added*). Capital One's letter did not cite a single case in which NCF had denied access to a facility on the basis of race.

After receiving the response from Capital One, SBA made no effort to reach an informal resolution of its section 112 and 113 claims, as required by the Small Business Act and its own regulations.  42 U.S.C. § 2000d-1; 13 C.F.R. §§112.10, 113.6. Instead, on December 29, 2021, SBA notified Capital One by letter that no part of the NCF loan would be forgiven, and directed Capital One to communicate the decision to NCF. AR SBA000001-SBA000002. SBA subsequently advised NCF that NCF was ineligible for its PPP loan because of failure to comply with 13 CFR Parts 112, 113, and 117.

NCF duly appealed SBA's decision to SBA's Office of Hearings and Appeals ("OHA"). AR SBA000003-SBA000005. On June 16, 2022, Administrative Judge Raul Pardo issued a decision finding that "Appellant [NCF] is ineligible for the amount [of] PPP loan received due to discrimination despite certifying on the Form 2483 [that] its business agreed not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA regulations, rules, policy, federal statutes and case law." AR CBA000189-CBA000203 (*"Initial Order"*.)

Judge Pardo's decision adopts the rationale of Capital One's denial of forgiveness. Specifically, Judge Pardo's decision finds that NCF violated its certification made on Form 2483, and sections 112 and 113, when it "maintained" the 2017 job posting in its archives and

questioned the rationale of existing anti-discrimination laws. Judge Pardo's decision did not cite a single discriminatory act by NCF. AR SBA000199-SBA000200.

NCF filed a timely petition for reconsideration of the *Initial Order*. NCF's petition thoroughly explained the lack of factual and legal basis for Judge Pardo's order; and pointed out that in the absence of any claimed act or acts of discrimination, Judge Pardo had unlawfully denied NCF's loan forgiveness application on the basis of constitutionally-protected speech. AR SBA000204-SBA000211. SBA did not file a response to NCF's Petition for Reconsideration.

On July 8, 2022, Judge Pardo entered an order denying NCF's petition for reconsideration, reciting the same grounds set out in his *Initial Order*. AR SBA000211-SBA 000233 (*"Denial of Reconsideration"*). On July 19, 2022, NCF sent a letter asking Administrator Guzman to exercise her discretion to reverse Judge Pardo's denial of loan forgiveness. Administrator Guzman did not respond to NCF's request.

## ARGUMENT

### I.    Legal Standards

In a summary judgment motion under the Administrative Procedure Act ("APA"), "the reviewing court . . . reviews the [agency's] decision as an appellate court addressing an issue of law." *Pol'y & Rsch., LLC v. U.S. Dep't of Health & Human Servs.,* 313 F. Supp. 3d 62, 74 (D.D.C. 2018), quoting *Henry v. Sec'y of Treasury,* 266 F. Supp. 3d 80, 86 (D.D.C. 2017). "[T]he court must limit its review to the administrative record and the facts and reasons contained therein to determine whether the agency's action was 'consistent with the relevant APA standard of review.'" *Id.,* quoting *Ho-Chunk, Inc. v. Sessions,* 253 F. Supp. 3d 303, 307 (D.D.C. 2017), *aff'd,* 894 F. 3d 365 (D.C. Cir. 2018).

Under the APA, a court will set aside an agency decision if it is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, contrary to statute, or otherwise not in accordance with law. 5 U.S.C. § 706(2). In order for an agency decision to survive APA scrutiny, the agency "must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Manufacturers Association of U.S., Inc. v. State Farm Mutual Automobile Insurance Co.,* 436 U.S. 29, 43 (1983), citing *Burlington Truck Lines v. United States,* 371 U.S. 156, 168 (1962). An agency decision is "arbitrary and capricious if the agency has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* In making the "factual inquiry concerning whether an agency decision was 'arbitrary or capricious,' the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 378 (1989) quoting *Citizens to Preserve Overton Park. Inc. v. Volpe,* 401 U.S. 402, 416 (1971).

28 U.S.C. § 2201 gives this Court the authority to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

A permanent injunction may issue if the plaintiff shows: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be

disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391

(2006).

## II.    SBA's Decision is Arbitrary, Capricious, an Abuse of Discretion and Contrary to Law

When SBA denied NCF's application for loan forgiveness, it failed to base its decision on

the facts before it, engaged in inadequate reasoning and violated NCF's rights under the United

States Constitution.

### A.  SBA's Decision Is Unsupported by the Record and Based upon Inadequate Reasoning

SBA's decision denying loan forgiveness to NCF lacks a factual basis and relies upon

transparently inadequate reasoning. For these reasons, the order denying loan forgiveness to NCF

must be vacated as arbitrary, capricious and an abuse of discretion. 15 U.S.C. § 706(A).

#### 1.  SBA Did not Cite a Single Act of Unlawful Discrimination by NCF

SBA appears to find that NCF engaged in unlawful discrimination in two ways: (1) by

restricting access to its conferences; and (2) by refusing to hire employees based upon the

applicants' race.

Nothing in the record offers the slightest support for either of these conclusions.

#### a.  NCF Did not Deny Access to its Conferences

Judge Pardo found that NCF violates the prohibition against discrimination "with regard

to goods, services, or accommodations offered or provided by the aided business or enterprise,

whether or not operated for profit, because of race, color, religion, sex, handicap, or national

origin." AR SBA000193.  As his sole example of an accommodation in which NCF supposedly

discriminates, Judge Pardo mentions the annual conferences operated by American Renaissance.

*Id.*

8

Judge Pardo does not refer to a single case in which NCF barred or discouraged persons of any race from attending American Renaissance conferences. This is unsurprising: as NCF pointed out in its appeal to the OHA, anyone is free to register for those conferences and NCF has no way of knowing, and does not try to find out, the race of any registrant. Black, Hispanic and Asian persons have attended American Renaissance conferences, and no one has been turned away from an American Renaissance conference because of his or her race. AR SBA000004.

Instead of evidence of discriminatory conduct by NCF, Judge Pardo quotes four American Renaissance articles that question anti-discrimination laws and argue for a right of free association, including voluntary decisions to associate on the basis of race. AR SBA000193-SBA000194. These statements do, in fact, focus on the negative effects of forced association on white people, but they do not advocate race-based denials of access to public accommodations or other actions that violate the law as it exists. NCF argues only that anti-discrimination laws are misguided and should be changed. Whatever one thinks of those views, they are protected speech and do not constitute acts of discrimination.

Judge Pardo nevertheless claims that NCF's protected speech constitutes "circumstantial" evidence showing, not that NCF has committed acts of discrimination, but that it "would" do so. Specifically, in his *Denial of Reconsideration* of his *Initial Order,* Judge Pardo concludes that "[t]he inference of discrimination in [the cited articles] makes it clear that protected classes of individuals *would be* denied, excluded, discouraged, and restricted from applying, and thus NCF engaged in illegal discriminatory employment practices." AR SBA000225 (*emphasis added*).

There is no support in law for this argument. No amount of "circumstantial" evidence, derived from a person's or organization's opinions, can overcome the need to prove the commission of an adverse act. As the very judicial decisions SBA cites in support of its argument make clear, the courts avail themselves of indirect or circumstantial evidence in a civil rights case only *after* the *prima facie* case of adverse action has been made, and only as a means of establishing the intent underlying *that action*. Notably, in *Loyd v. Phillips Bros., Inc.,* 25 F.3d 518 (7th Cir. 1994), cited by SBA, the court stated that circumstantial evidence could be used to establish the employer's intent when it denied an employee a place in an apprenticeship program; similarly, in *Troupe v. May Dept. Stores,* 20 F.2d 734 (7th Cir. 1994), also cited by SBA, the court found that circumstantial evidence could be used to show that an employee was terminated from her job because of her pregnancy. In neither of the decisions cited by SBA, nor in any other case of which NCF is aware, does a court uphold the use of indirect or circumstantial evidence, not merely to show the intent with which an actual, adverse action was taken, but to show that an unspecified adverse action occurred (much less that it merely "would" occur).

Indeed, any such use of mere intent evidence to demonstrate a civil rights violation ignores the definitive guidance of the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (*"McDonnell Douglas"*). Under *McDonnell Douglas*, applying Title VII to a discrimination claim must begin with a *prima facie* showing that an individual, belonging to a racial minority or other protected class, suffered from adverse action of the defendant.[1] Only when this *prima facie* case has been made does the burden shift to the

---

[1] Most of the caselaw applicable to discrimination claims has been developed under Title VII, but those principles are applied in cases brought under both Title VI and Title VII. *See Silva v. St. Anne Catholic School*, 595 F.Supp.2d 1171, 1183 (D. Kan. 2009); Civil Rights Division, Department of Justice, Title VI Legal Manual, (*"DoJ Title VI Manual"*), DOJ Title VI Legal Manual.

defendant to articulate some legitimate, nondiscriminatory reason for its adverse action. Until the *prima facie* case has been made, the defendant's motives or intent, including inferences from expressions of opinion, may not be placed at issue.[2]

Because SBA's finding of unlawful discrimination in access to accommodations is contrary to the record and the law, NCF is entitled to summary judgment concerning those findings.

### b. NCF Did not Engage in Employment Discrimination

SBA finds that NCF "maintained" on its website language inviting applications from reporters with a "[s]trong commitment to race realism and white advocacy." AR SBA00021. The job posting, last accessible through a link on the American Renaissance website in 2017, also requested that applicants submit a cover letter with "[a] brief description of applicant's political views and how he came to them," and "why the applicant believes he would be a good fit for American Renaissance." *Id.* Judge Pardo concluded that the job posting alone "appears" to be a "discriminatory employment practice that violates SBA's civil rights requirements." AR, SBA 000199. SBA also suggested, without factual basis, that the language of the posting discouraged, or would have discouraged, non-white persons from applying for employment with NCF. AR SBA000216.

---

[2] Agencies have some discretion in their application of the *McDonnell Douglas* process. As the Department of Justice has pointed out, an agency's investigation of a Title VII claim "need not follow the same sequential process as courts, where a plaintiff first offers prima facie evidence and the defendant then offers rebuttal evidence." *DoJ Title VI Manual, supra.* For example, an agency might "choose to make a preliminary prima facie finding then require recipients to articulate defenses." *Id.* However, no matter which approach the agency chooses, the *prima facie* finding of adverse action must be made before intent may be examined and a violation can be established.

SBA's findings based upon the 2017 job posting fail on two grounds: first, because the posting was not published or reasonably accessible when or after NCF applied for its PPP loan; and second, because the language of the posting does not constitute employment discrimination.

### i.     *The Record Shows that NCF's Job Posting was no Longer Active when NCF Applied for its Loan*

Judge Pardo contends that by "maintaining" its job advertisement, NCF violated the law against employment discrimination. In support of this conclusion, Judge Pardo specifically cites portions of Title VII that prohibit acts of unlawful employment discrimination. AR SBA000200. Because Judge Pardo cites no such discriminatory acts, that conclusion has no support in the record.

Judge Pardo also quotes the text of, but not expressly rely upon, the Title VII provision stating that an employer may not "print or publish or cause to be printed or published any notice or advertisement . . . indicating any preference, limitation, specification, or discrimination, based on race, color, religion, sex, or national origin, [unless such a category is] a bona fide occupational qualification for employment." AR SBA000198; quoting 42 USC § 2000e-3(b).

To the extent SBA intends to rely upon Section 2000e-3(b), it is telling that SBA contends, not that NCF printed or published a discriminatory job notice at the time it applied for its PPP loan, but merely that NCF "maintained" the posting at that time.  AR SBA000199. This choice of words tacitly acknowledges that NCF did not, in fact, print or publish the subject job advertisement at the time of its loan application or thereafter, and therefore did not violate 42 USC § 2000e-3(b) or the representations it made in 2020 on Form 2483.

The facts in the record support this conclusion. As NCF pointed out in its Appeal and its Request for Reconsideration, the job posting was last published by American Renaissance in

2017, and no link to that posting was available on the American Renaissance website after September of that year. AR SBA000205. The posting could only be found by searching through many megabytes of archived data. The text of the job posting still exists, unchanged, within the archive of the American Renaissance website, but it has not generated a single job-seeker inquiry since the link to it was removed in September 2017. *Id.*

On no reasonable reading of the words "printed" and "published" can NCF be said to have printed or published the job notice when it applied for its PPP loan in 2020, or during the subsequent term of the loan. Similarly, no reasonable person searching NCF's archives in 2020, when NCF applied for its loan, would have believed that an archived 2017 job advertisement constituted a current offer of employment.

ii.    ***NCF's Job Posting Does not Violate the Civil Rights Laws***

The 2017 job posting recited only legitimate, nondiscriminatory qualifications for a position with an educational and advocacy organization such as NCF. NCF is a 501(c)(3) non-profit, recognized since 1994 by the Internal Revenue Service as an educational organization chartered to educate the public on matters of immigration and race relations. It is no different from similar organizations that educate the public on questions of national interest. It is entirely reasonable, even essential, that prospective employees be expected to share the educational goals of the organization. In fact, educational and advocacy organizations that solicit employment applications routinely require that job applicants agree with the views of those organizations.

For example, as pointed out in NCF's *Petition for Reconsideration*, a current job posting for NARAL Pro-Choice America requires applicants to have a "commitment to reproductive freedom" and understand "the intersectional politics of race, class, gender, etc. and commitment to cross-movement building." AR SBA000205-SBA000206.

Similarly, a job posting for the Southern Poverty Law Center requires applicants to have a "commitment to fostering an anti-racist work culture and to anti-racist principles and learning." AR SBA000206.

NCF's interest in hiring employees who favor "white advocacy" does not change this result. Many respected organizations advocate the interests of specific races, religions and genders and encourage job applications from persons who share those commitments.

For example, the Anti-Defamation League, which is also a 501(c)(3) non-profit organization, has as its "immediate object" to stop "the defamation of the Jewish people." AR SBA000206.

ADL job postings routinely contain a statement of that mission, and ADL's careers page states that a "full 50 percent of everyone's performance rating, starting at the top of the organization, is determined by demonstration of the ADL Values." *See* Careers | ADL.

The ADL is not practicing unlawful discrimination when it requires employees to serve the interests of the Jewish community. An educational or advocacy organization has every right to select for employees who share its mission.  This most probably narrows the field of job applicants. For example, there is a likelihood that a majority – perhaps even a large majority – of ADL's employees are Jewish. But neither that fact, nor ADL's insistence on its employees' agreement with its mission, could be used to charge ADL with discrimination against non-Jews: a job applicant need not be Jewish in order to feel strongly that the defamation of the Jewish people should be stopped.

NCF is in a perfectly analogous position. The bulk of its work is in the fields of race realism and white advocacy, so it is (1) reasonable to expect employees to share those goals, and (2) people of any race can share these goals. Over the years, as NCF demonstrated in its filings with SBA, NCF has published on its website many articles by people of color who share NCF's principles and goals. AR SBA000206. In some cases, the titles of the articles themselves demonstrate the authors' sympathy with NCF's mission. *Id.*

The fact that NCF seeks persons sympathetic to white interests does not establish that it will hire only white persons, any more than an organization that advocates the rights of women can be assumed, without evidence of discriminatory employment decisions, to deny employment to men.

This court must reject Judge Pardo's finding that it can be unlawful for an organization to state its goals, including advocacy of the interests of particular races, religions and genders, and ask that its employees agree with those goals. Such a doctrine would chill the protected speech, not only of NCF, but of many organizations that operate without any intent to discriminate.

### B. SBA Ignored NCF's Demonstration that It Did Not Practice Unlawful Discrimination

SBA's failure to make a *prima facie* case of adverse action taken by NCF against anyone, at any time, makes SBA's claims of NCF's discriminatory intent irrelevant under the teaching of *McDonnell Douglas*. Nonetheless, in the proceedings before Judge Pardo, NCF presented substantial arguments and evidence to show that American Renaissance's job posting and published articles, as cited by SBA, did not reflect an intention to engage in any unlawful, discriminatory acts; and that NCF, in fact, has not engaged in any such acts. AR SBA000211-SBA000233.

NCF's submissions to SBA went much further, and included links to articles on American Renaissance written by persons of color, identification of prominent non-white speakers at American Renaissance conferences, and a short biography of a key NCF employee of Hispanic heritage and Chilean citizenship. AR SBA2000209-SBA000211. Those materials established beyond any doubt that NCF has not discriminated against any protected group of persons in employment or in access to NCF services and events.

As Judge Pardo pointed out, SBA's Standard Operating Procedures ("SOP") implicitly acknowledge that the agency must take such evidence of non-discriminatory purpose into account. The SOP cites the example of a fitness center that markets to one gender, but will be eligible for SBA financial assistance if it furnishes evidence that it is open to both men and women. AR SBA000193, citing SOP 50 10 5(K), "Lender and Development Company Loan Programs," p. 108. As this example shows, it is improper for SBA simply to infer from a business's public statements (such as an advertisement or a job posting) that it practices unlawful discrimination. The SBA must take explanatory evidence, such as the extensive factual submissions offered by NCF, into account.

Unfortunately, although it reproduced substantial portions of NCF's responsive submissions in its *Initial Order* and *Denial of Reconsideration*, those orders include no suggestion that the agency seriously considered those submissions, or gave them any weight at all. SBA's disregard for evidence in NCF's favor is typical of the agency's arbitrary and capricious handling of NCF's case, and compels entry of summary judgment in NCF's favor.

## C.  SBA's Decision is Contrary to Constitutional Right, Power, Privilege or Immunity

Stripped of its unavailing references to non-existent violations of sections 112 and 113, SBA's denial of loan forgiveness to NCF is nothing more than an attack upon opinions that SBA

finds offensive. The order therefore violates NCF's rights under the First Amendment to the Constitution of the United States, and must be rejected as abusive and unlawful.

When a regulation or order burdens lawful speech, a court must determine: (1) whether the regulation or order is content-based or content-neutral; and (2) if the regulation or order is content-based, the appropriate level of scrutiny to be applied. *See Reed v. Town of Gilbert,* 576 U.S. 155, 163-64 (2015) ("*Reed*"). Content-based restrictions on speech are presumptively unconstitutional and receive strict scrutiny, which places the burden on the Government to show that the regulation is narrowly tailored to serve a compelling governmental interest. *Reed,* 576 U.S. at 171.

It cannot be questioned that SBA's loan forgiveness decision is a content-based restriction on lawful speech. SBA's *Initial Order* and *Denial of Reconsideration* quote NCF's published opinions on political and cultural questions at length, including NCF's advocacy of reform of anti-discrimination laws and restoration of lawful freedom of association. SBA characterizes those views as "discriminatory" in themselves, even in the absence of unlawful actions by NCF. In SBA's view, NCF must be denied loan forgiveness not because it *practices* discrimination, but because it "supports discrimination. " AR SBA 000199.

A clearer case for application of strict scrutiny could hardly be imagined. SBA nonetheless argues that its denial of loan forgiveness should be subject to "intermediate" scrutiny under the rationale of *Regan v. Taxation with Representation of Washington, et al.,* 461 U.S. 540 (1983) (*"Regan"*). Under *Regan,* strict scrutiny will not apply to a congressional refusal to subsidize certain expressive activities, so long as that refusal is not based upon the viewpoints expressed by the entity that is refused the subsidy. *Regan* also makes clear that strict scrutiny *would apply* if the government "were to discriminate invidiously in its subsidies in such a way as

to 'aim[] at the suppression of dangerous ideas.'" *Regan,* 461 U.S. 540, 548. That is precisely what SBA has done here.

Application of strict scrutiny to SBA's decision requires the agency to show that denial of loan forgiveness to NCF serves a compelling, or very strong interest in the law, and that the action is either very narrowly tailored or is the least restrictive means available to the government. *See, e.g., Ashcroft v American Civil Liberties Union,* 542 U.S. 656 (2004).

SBA does not attempt to show that its decision serves a compelling governmental interest and is narrowly tailored to serve that interest. Instead, it argues that only a "rational relation to a legitimate government purpose need be shown" in this case, and that SBA's denial of loan forgiveness is rationally connected to Congress's intention to ensure that funds lent to businesses are used for the purposes Congress approves. AR SBA000196. Even if this lower level of scrutiny were applied, SBA's argument would fail: as one court has pointed out in a case involving the same agency, "[t]he SBA does not have a legitimate interest in preventing government sponsorship of speech that it views as offensive to the public welfare." *Mission Trace Investments, Ltd. v. Small Business Administration,* 622 F.Supp. 687, 700 (D. Colo. 1985), citing *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546 (1975).

### D.  SBA's Decision Is not Mandated by Congress or SBA's Regulations and Exceeds SBA's Statutory Authority

Judge Pardo contended in his *Initial Order* and *Denial of Reconsideration* that his decision was mandated by the SBA Act and SBA's regulations, which left him no discretion to forgive SBA's loan to NCF. In support of this conclusion, SBA cites cases in which the courts applied SBA restrictions, adopted by Congress, that prohibit certain PPP loans to more than a dozen types of businesses. AR SBA000198, citing 15 U.S.C. § 636(a)(37)(A)(iv)(III)(aa), incorporating 13 C.F.R. § 120.110. NCF falls in none of the listed categories, which do not

18

prohibit loans to organizations that engage in racial advocacy. In the absence of such a regulation, which in any case would not withstand constitutional scrutiny, Judge Pardo cannot simply supply his own notion of activities or opinions that SBA may refuse to subsidize. As the *Initial Decision* correctly points out, administrative law judges have "no constitutionally based judicial power" and are limited to application of the "policy rules and directives promulgated by their agency . . ." AR SBA000202.

Judge Pardo's references to non-applicable statutory and regulatory prohibitions of subsidies to certain businesses notwithstanding, SBA's decision is squarely and expressly based upon the SBA Act provisions that prohibit discrimination on the basis of race, color, or national origin in programs or activities receiving Federal financial assistance. 42 U.S.C. § 2000d. As already demonstrated, those civil rights provisions do not confer statutory authority for SBA's action in this case, and certainly do not compel SBA to act as it did. Title VI does not authorize SBA to find discriminatory acts where none occurred, or to adopt and enforce regulations that deny program participation and benefits on the basis of protected speech.

Accordingly, SBA's decision must be vacated and set aside as in excess of SBA's statutory authority.

### III.    NCF Is Entitled to a Declaratory Judgment

28 U.S.C. § 2201 gives this Court the authority to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

There exist actual, justiciable controversies among the parties to this action, which present issues within the jurisdiction of this Court.

An actual controversy exists on the issue of whether the SBA failed to offer any factual support for its finding that NCF practices unlawful discrimination.

An actual controversy exists on the issue of whether SBA unlawfully relied upon what it called "circumstantial" and "indirect" evidence when it found that NCF committed unlawful acts of discrimination.

An actual controversy exists on the issue of whether SBA arbitrarily ignored NCF's factual demonstration that NCF did not practice unlawful discrimination.

An actual controversy exists on the issue of whether SBA's denial of forgiveness of NCF's loan is contrary to constitutional right, power, privilege or immunity.

An actual controversy exists as to whether SBA's denial of forgiveness of NCF's loan was in excess of statutory authority.

Accordingly, NCF respectfully prays that this Court issue a Declaration: (1) that SBA failed to offer any factual support for its finding that NCF practiced unlawful discrimination; (2) that SBA unlawfully relied upon so-called circumstantial and indirect evidence when it found that NCF had engaged in discrimination; (3) that SBA arbitrarily ignored NCF's factual demonstration that NCF did not practice unlawful discrimination; (4) that SBA's denial of forgiveness of NCF's loan is contrary to constitutional right, power, privilege or immunity; (5) that SBA's denial of forgiveness of NCF's loan exceeded SBA's statutory authority; and (6) granting NCF all other relief that is just and proper.

### IV.    NCF is Entitled to a Permanent Injunction

In addition to the other relief requested, NCF respectfully asks the Court to enter a permanent injunction prohibiting SBA from engaging in or permitting any further efforts to collect any principal or interest amounts due under NCF's PPP loan.

In order for a permanent injunction to issue, a plaintiff must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange,* LLC, 547 U.S. 388, 391 (2006).

The facts of this case meet all elements of this standard.

First, NCF has suffered an irreparable injury for which remedies at law are unable to compensate. The courts have defined an irreparable injury as one which "cannot be undone through monetary remedies." *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). In this case, monetary relief in the form of a refund, with interest, of payments NCF has already made on the PPP loan will be inadequate unless SBA also is enjoined from collecting or permitting the collection of any semi-annual amounts supposedly due in the future, or from demanding payment of the entire principal amount outstanding. Further collection efforts on the part of SBA also will burden NCF's constitutional right of protected expression – a harm that cannot be remedied by eventual monetary relief.

The balance of hardships in this case also favors NCF. In the absence of a permanent injunction, NCF will continue to be liable for payments of amounts due under the PPP loan and will continue to suffer a burden on its right to freedom of expression under the United States Constitution. SBA, on the other hand, will merely be required to cease actions that are unlawful and that confer no rightful benefit on SBA.

Also, entry of a permanent injunction on NCF's behalf will not harm, and in fact will advance, the public interest. Specifically, the public benefits when government is required to

follow the law, including its own statutes and regulations and the Constitution of the United States.

Finally, NCF anticipates that SBA will argue that injunctive relief may not be ordered against SBA. Although some courts have taken this position (*see, e.g., Brennan v. United States,* No. 4:20-cv-00505-KGB (E.D. Ark. July 13, 2020)), we urge this court to follow the reasoning of the First Circuit Court of Appeals, finding that any bar to injunctive relief is appropriate only where such relief will "interfere with internal agency operations," especially through attachment of agency funds. *Ulstein Maritime, Ltd. v. U.S.,* 833 F.2d 1052, 1057 (1st Cir. 1987); *see also Springfield Hospital, Inc. v. Guzman,* 28 F.4th 403, 415 n. 16 (2d Cir. 2022). Granting injunctive relief to NCF will in no way interfere with SBA's internal operations, and should be no obstacle to such relief in this case.

Accordingly, NCF respectfully asks this Court to enter a permanent injunction providing: (1) that SBA rescind its finding that NCF is not entitled to forgiveness of its PPP loan; (2) that SBA cease any efforts to collect any amounts supposedly due under the PPP loan and refund any amounts already paid, with interest; (3) that SBA advise Capital One that NCF's loan has been forgiven; and (4) for such other relief as this Court deems appropriate.

## V.    NCF is Entitled to an Award of its Attorney's Fees and Costs

An award of attorneys' fees and costs to NCF is proper pursuant to 5 U.S.C. § 504 and 28 U.S.C. § 2412, because SBA's conduct was arbitrary and capricious and because the position taken by the SBA in this matter is without substantial justification.

Accordingly, NCF will file a motion for an award of attorney's fees can costs, as the prevailing party in this litigation, at the appropriate time.

**PRAYER FOR RELIEF**

WHEREFORE, New Century Foundation respectfully requests that this Court:

(a) Enter the accompanying order of summary judgment in NCF's favor on all claims of its complaint.

(b) Vacate and set aside SBA's decision as arbitrary, capricious, an abuse of discretion, in excess of statutory authority and otherwise contrary to the requirements of the Administrative Procedure Act;

(c) Enter a declaratory judgment setting aside or vacating SBA's denial of forgiveness of NCF's loan;

(d) Enter a permanent injunction preventing any further efforts to collect amounts supposedly due under NCF's loan, and directing a full refund of any amounts paid by NCF under that loan, plus interest as permitted by law;

(e) Find that SBA's position in the matter is not substantially justified, and award NCF its attorneys' fees and costs for maintaining this action pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, pursuant to motion filed by NCF at the appropriate time; and

(f)  Grant such other relief as this Court deems appropriate.

Dated: November 25, 2024

/s/ Charles H. Kennedy
CHARLES H. KENNEDY
D.C. Bar No. 461636
THE KENNEDY PRIVACY LAW FIRM
1050 30TH Street, NW
Washington, DC 20007
(202) 450-0708
ckennedy@kennedyonprivacy.com
*Counsel for Plaintiff*


/s/ Glen Allen
GLEN ALLEN
D.C. Bar No. 1013290
GLEN ALLEN LAW
5421 Springlake Way
Baltimore, MD 21212
(410) 802-6453
GlenAllenLaw@Protonmail.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this date, he filed this Motion for Summary Judgment

with the CM/ECF system, which constitutes service upon all parties pursuant to LCvR 5.4(d).

Dated: November 25, 2024

*/s/* Charles H. Kennedy
CHARLES H. KENNEDY
D.C. Bar No. 461636
