**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| NEW CENTURY FOUNDATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 24-1612 (SLS) |
| THE UNITED STATES SMALL BUSINESS | ) |
| ADMINISTRATION, *et al.,* | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**PLAINTIFF'S MOTION FOR WITHDRAWAL OF COURT'S**
**MINUTE ORDER OF JULY 29, 2025**

By its undersigned counsel, Plaintiff New Century Foundation ("NCF") moves the Court

to withdraw the Minute Order of July 29, 2025, directing Defendants Small Business

Administration, *et al.* ("SBA") to file a notice explaining the legal basis for SBA's claim that

NCF engaged in employment discrimination. Court's Minute Order of July 29, 2025 in Case No.

1:24-cv-01612-SLS (United States District Court for the District of Columbia).

NCF further requests that the Court permit no further filings addressed to the merits of

the parties' pending cross-motions for summary judgment.

**DISCUSSION**

This Court held oral argument on July 29, 2025 on the parties' cross-motions for

summary judgment. The Court addressed questions and comments to counsel for both parties. A

proposed order is filed concurrently with this motion. The Court Reporter's transcript of oral

argument is appended as Appendix A.

The Court questioned NCF's counsel at length concerning public statements, not alleged

to be unlawful, by authors and speakers associated with NCF's publication and conferences.

1

Appendix A, pp. 3-16. SBA alleges that those statements, along with a job ad that NCF withdrew years before its SBA loan was granted, show racial animus and support SBA's finding that NCF would have engaged in unspecified acts of unlawful employment discrimination in violation of Title VI of the Civil Rights Act. The Court stated that in its view, SBA had correctly characterized NCF's statements. Exhibit A, p. 14. The Court further stated that it was "shocked and appalled" by NCF's views, and later repeated that the Court found NCF's views "appalling." Exhibit A, pp. 21, 29.

In colloquy with SBA's Counsel, the Court expressed concern about the Government's failure to identify, with sufficient clarity, a cognizable theory on which to base its claim of employment discrimination. The Court's extended questioning of SBA's Counsel included the following exchange:

THE COURT: Okay. Will you file something letting me know whether you are, in fact, disclaiming any disparate impact theory or do you feel confident saying yes or no on that now?

MR. SILVERMAN: We are not making – our theory has always been intentional discrimination and that this ad is circumstantial, not direct evidence of intentional discrimination. And that those words you pointed to in the reply brief, that is all I meant by that, circumstantial evidence of intentional discrimination. We are not relying on a disparate impact theory. Appendix A, pp. 30-31.

After oral argument, on the same date, the Court entered the following Minute Order:

MINUTE ORDER: In light of the oral argument held on July 29, 2025, the Court ORDERS the Defendants to file a notice by August 12, 2025, explaining their legal theory for the Title VI violation in this case. "The Supreme Court has outlined three possible approaches to proving intentional discrimination as required by...

Title VI." *Smith v. Henderson*, 982 F. Supp. 2d 32, 49 (D.D.C. 2013). "First, a plaintiff may proffer a law or policy that explicitly classifies... on the basis of race." *Id.* (citation omitted). "Second, a plaintiff may claim that a facially neutral law or policy has been applied differently on the basis of race." *Id.* (citation omitted). And third, "a plaintiff may show that a facially neutral law or policy that is applied evenhandedly is, in fact, motivated by discriminatory intent and has a racially discriminatory impact." *Id.* at 49-50 (citations omitted). The Defendants' Notice should identify which of these three approaches they are relying on. The Notice should also explain why substantial evidence supports their relied-upon approach or approaches. The Plaintiff may respond to the Defendants' Notice by August 19, 2025. Signed by Judge Sparkle L. Sooknanan on 7/29/2025. (lcas)

NCF urges the Court to withdraw its Minute Order of July 29, 2025 as improper and unfairly prejudicial to Plaintiff, and asks that no further substantive filings on the pending cross-motions for summary judgement be permitted.

## I.    The Minute Order Improperly Gives Legal Advice to SBA

Canon 3 of the Code of Conduct for United States Judges states that a judge shall perform the duties of the office fairly, impartially, and diligently. code_of_conduct_for_united_states_judges_effective_march_12_2019.pdf. A judge violates the duty of impartiality when he or she offers legal advice to a party to a case. Even when presiding over a case in which a party is proceeding *pro se* and lacks familiarity with the law, a court may offer the party no more than procedural advice, and is not required even to do that. *See Pliler, Warden v. Ford,* 542 U.S. 225, 231-232 (2004) (stating that "[e]xplaining the details of federal habeas procedure and calculating statutes of limitations are tasks normally and properly performed by trained counsel as a matter of course. Requiring district courts to advise a *pro se* litigant in such a manner would undermine district judges' role as impartial decisionmakers.")

The Minute Order's coaching of experienced Government counsel is not merely procedural; it goes to the heart of SBA's substantive case. The Judge not only directs SBA to

"explain" its theory of the case, but presents three theories of liability that the Court apparently believes might, if supported by substantial evidence, compel a finding that NCF violated Title VI of the Civil Rights Act. The Court directs SBA to pick one or more of those theories and demonstrate why the theory or theories is, or are, supported by substantial evidence.

The Minute Order offers no convincing justification for coaching the Government on its Title VI claim. Contrary to the Court's implication, SBA's extensive filings in this case and remarks at oral argument require no explanation; they state the Government's legal position with perfect clarity. If that position is legally inadequate, the Court's proper course is to deny SBA's Motion for Summary Judgment and grant NCF's Cross-Motion: not to suggest how the Government's case might be improved.

## II.    The Minute Order Constitutes Improper Judicial Advocacy

The Minute Order goes beyond coaching; it involves the Court in impermissible advocacy in violation of Canon 3's requirement of impartiality. *See United States v. Filani,* 74 F.3d 378 (2d Cir. 1996). Rather than merely offer some legal theories SBA might adopt (an act that, itself, is improper), the Minute Order effectively directs SBA to adopt and argue one or more of those theories. This puts the Court in the position of supervising SBA's litigation team in its most fundamental decisions. Faced with the Court's directive, SBA's counsel must adopt and argue one or more of the suggested theories or risk ignoring a Court order.  It is difficult to imagine a plainer case of judicial involvement in a party's advocacy decisions.

## III.    The Minute Order Unfairly Prejudices NCF

For several months now, the parties have followed the scheduling order adopted by Judge McFadden before the transfer of this case to the present Judge. That order directed Plaintiff to file a motion for summary judgment not later than November 25, 2024, and gave Defendants 33

days in which to respond and file a cross-motion. The scheduling order then gave Plaintiff 31

days in which to prepare and file its combined reply and cross-response, and gave Defendants 33

days in which to prepare and file a cross-reply. Minute Entry for Proceedings before Judge

Trevor N. McFadden (Sep. 27, 2024).  The parties' compliance with the Court's scheduling order

permitted a thorough and careful briefing of the issues.

 The Minute Order threatens to undo the parties' many months of careful presentation of

their cases. According to the Minute Order, SBA *must* confront NCF with a newly-stated theory

of the Government's case, to which NCF will have only one week to respond. The effect of this

accelerated schedule would be to deny NCF sufficient opportunity to deal with arguments it has

not previously encountered. The Minute Order offers no justification for putting NCF at such a

crippling disadvantage.

## CONCLUSION

 The pending motions for summary judgment have been fully briefed and oral argument

on those motions has been held. They are ripe for decision. NCF asks the Court to withdraw its

improper Minute Order of July 29, 2025, permit no supplemental briefing of the issues, and

resolve the case on the record already made.

Dated: August 4, 2025

<div style="margin-left:40%">

*/s/* Charles H. Kennedy
CHARLES H. KENNEDY
D.C. Bar No. 461636
THE KENNEDY PRIVACY LAW FIRM
1050 30TH Street, NW
Washington, DC 20007
(202) 450-0708
ckennedy@kennedyonprivacy.com
*Counsel for Plaintiff*

</div>

/s/ Glen Allen
GLEN ALLEN
D.C. Bar No. 1013290
GLEN ALLEN LAW
5423 Springlake Way
Baltimore, MD 21212
(410) 802-6453
GlenAllenLaw@Protonmail.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on this date, he filed this Motion for Withdrawal of Court's Order of July 29, 2025 with the CM/ECF system, which constitutes service upon all parties pursuant to LCvR 5.4(d).

Dated: August 4, 2025                                    /s/ *Charles H. Kennedy*
                                                              Charles H. Kennedy
                                                              D.C. Bar No. 461636

**EXHIBIT A**

## Transcript Page 1

**1        IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

**2**

**3   NEW CENTURY FOUNDATION,     |**

**4**

**5 vs.**

**Plaintiff,**

**|    Civil Action**
**|      No 1: 24-1612**
**|**
**|    Washington, DC**
**|     July 29, 2025**

**6   SMALL BUSINESS ADMINISTRATION, |**
**et al,                 |**
**7                          |**
**Defendants.     |**
**8 ___|**
**9**

**2:03 p.m.**

**10**
**11**
**12 APPEARANCES:**

**TRANSCRIPT OF MOTION HEARING BEFORE THE HONORABLE SPARKLE SOOKNANAN**
**        UNITED STATES DISTRICT JUDGE**

**13        For the Plaintiff:   Charles H. Kennedy**
**Glen K. Allen**
**14        THE KENNEDY PRIVACY LAW FIRM**
**1050 30th Street, NW**
**15        Washington, DC 20007**

16      **For the Defendant:    Bradley Silverman**
   **DOJ-USAO**
17      **Civil Division**
   **601 D Street NW**
18      **Washington, DC 20001**
   19
   20
   21
   22
**Court Reporter    Sherry Lindsay**
   **23             Official Court Reporter**
**U.S. District & Bankruptcy Courts**
   **24             333 Constitution Avenue, NW**
**Room 6710**
   **25             Washington, DC 20001**


## Transcript Page 2

1 <u>**P R O C E E D I N G S**</u>

2              **THE COURTROOM DEPUTY: Good afternoon, Your Honor.**

3              **This is 24-cv-1612, *New Century Foundation versus Small***

4              ***Business Administration, et al.***

5              **Parties, please approach and state your name for the**

6              **record, starting with plaintiffs's counsel.**

7              **MR. KENNEDY: I am Charles Kennedy. I am here for**

8              **plaintiff, New Century Foundation. With me is Mr. Jerry Taylor**

9              **and my cocounsel, Glen Allen.**

10             **THE COURT: Good afternoon, Mr. Kennedy.**

11             **MR. KENNEDY: Good afternoon, Your Honor.**

12             **MR. SILVERMAN: Good afternoon, Your Honor. Bradley**

13             **Silverman, for the Small Business Administration and the**

14             **administrator.**

15          THE COURT: Good afternoon, Mr. Silverman.

16          Okay. We are here for argument on the motions that

17          have been filed by both sides for summary judgment. Why don't

18          we start with the plaintiff, Mr. Kennedy.

19          MR. KENNEDY: Thank you. Good afternoon again, Your

20          Honor, as I said, I am Charles Kennedy.

21          THE COURT: Good afternoon.

22          MR. KENNEDY: I am here for New Century Foundation.

23          THE COURT: Thank you. So before you begin with your

24          argument, have there been any updates on the loan that, based

25          on the papers I understand that the outstanding principal


**Transcript Page 3**


1   amount was due on June 9th; is that right?

2           MR. KENNEDY: It was, Your Honor. And it has been

3           paid. The principle on the loan have all been paid.

4           THE COURT: Okay. What is the total? It was a

5           little over 51,000.

6           MR. KENNEDY: It was a $51,600 loan.

7           THE COURT: Okay.

8           MR. KENNEDY: We paid interest on the loan in a

9           timely fashion while it was in place. After the request for

10     forgiveness of the loan was denied, it matured on June 9th and

11     we paid it.

12     THE COURT: Okay. Thank you. So I have some

13     questions for you that I will start with and then you can go

14     ahead and say anything else you want, if that works for you.

15     MR. KENNEDY: Certainly.

16     THE COURT: So let me start with your APA claim. The

17     government claims the SBA decision as finding three things:

18     That New Century views non-white people as inferior, believes

19     that white and non-white people generally should remain

20     separate and applies those beliefs in the context of making

21     hiring decisions. So putting the third to the side because

22     there is a lot of briefing on that from you, based on the

23     record, do you agree with me that the first two facts are

24     pretty well supported?

25     MR. KENNEDY: No, we disagree with both. We quoted


**Transcript Page 4**


1  extensively. The government, of course, quoted extensively

2     from things that were said by writers and speakers at NCF. And

3     we responded appropriately as well. The notion that we just --

4     or NCF just comprehensively regards non-white people as

5    inferior is simply wrong, not only an over simplification but

6    wrong. But you comb through many things on our website, you

7    comb through many articles and you comb through many statements

8    by speakers and you get statements such as, one race is better

9    at one thing on average than another. We never say, all

10    members of one race or ethnicity share the same qualities. We

11    say that members of some ethnicities on average are better and

12    more capable than others. We certainly never said that whites

13    are superior to everybody else. On more than one occasion we

14    have pointed out that science shows that Asians tend to be

15    smarter and we find no problem with that.

16    So I think that these statements, which are lovingly

17    quoted at great length by the government are out of context and

18    just don't represent the full subtlety of our views.

19    THE COURT: So I do agree that the government cites a

20    bunch of statements that are not in the actual administrative

21    record, which I am not going to consider because my view is

22    limited to the administrative record. Just based on what is in

23    the administrative record, your position is that there isn't

24    enough to support those findings and instead, New Century's

25    view is that different races are superior in different


**Transcript Page 5**


1    categories of things and not that non-white people are

2      generally inferior?

3      MR. KENNEDY: Yes, that is right, Your Honor. I

4      mean, we -- when I say we, I mean New Century Foundations does

5      have some statements of its views, but mostly what you are

6      talking about are statements made by speakers at NCF

7      conferences, articles that are written by contributors to the

8      NCF website. We aren't a membership organization. We are just

9      a nonprofit that publishes articles and sponsors a conference

10     every year. So we don't have official doctrine. We don't --

11     we don't necessarily endorse everything everybody says.

12     But we would have to say, Your Honor -- and I know

13     your question discretely aimed at this claim, so I want to

14     confine it to that.

15     THE COURT: Yeah. I am trying to work through the

16     different points.

17     MR. KENNEDY: Sure.

18     THE COURT: And I am focused right now just on the

19     first two findings based on my review of the administrative

20     record seems pretty well supported. And so I just want to give

21     you a chance to convince me otherwise, again, based only on

22     what is in the administrative record.

23     MR. KENNEDY: Uh-huh. Well, the record, of course,

24     we have said that it doesn't consist of the entire universe of

25     statements. We try to confine ourselves to what the ALJ relied

**1** on.

**2**

**Transcript Page 6**

**THE COURT: But the universe of statements doesn't**

**3**     **matter for my review. And I am not going to rely on**

**4**     **nonadministrative record statements. So I am looking at the**

**5**     **administrative record. Tell me why these factual findings are**

**6**     **incorrect?**

**7**     **MR. KENNEDY: Well, we haven't actually looked at the**

**8**     **providence of everything that the government quotes at length.**

**9**     **Let's stipulate that --**

**10**    **THE COURT: You haven't looked at the entire**

**11**    **administrative record?**

**12**    **MR. KENNEDY: Yes, we have looked at the record, Your**

**13**    **Honor. But there are pages and pages of statements that the**

**14**    **government quotes from our website. And I can't tell you**

**15**    **standing here if they have accurately quoted everything but I**

**16**    **am willing to stipulate to that.**

**17**    **THE COURT: Again, I am not talking about the**

**18**    **website. And anything that is not in the -- I am talking about**

**19**    **the discrete administrative record that was filed in this case**

**20**    **that I have, that you have. I am not -- whatever is out there**

**21**    **in the world. Because in reviewing an agency's decision it**

**22**    **would not be proper for me to look at everything that is out**

**23**    **there in the world. I am looking at the administrative record.**

24    I am looking at statements in the administrative record. And

25    that is my only question for now, which is, based on what is in

## Transcript Page 7

1    the record, do you think that those two facts are not

2    supported?

3                        MR. KENNEDY: Yes. Oh, no, Your Honor, I don't think

4                        that the --

5                        THE COURT: Because you think, based on the

6                        administrative record, what is supported is the view that

7                        non-white people are inferior only in certain ways?

8                        MR. KENNEDY: We have -- and we are talking about an

9                        average and we are talking about not all. We say that, for

10                       example, on average certain ethnic groups do better than white

11                       people.

12                       THE COURT: So in which ways are non-white people

13                       inferior in New Century's view?

14                       MR. KENNEDY: In New Century's view, I don't -- I

15                       hate to testify, Your Honor.

16                       THE COURT: I am not asking you to testify. I am

17                       asking you to rely on what is in the administrative record,

18                       which is what I am reviewing.

19                       MR. KENNEDY: We --

20          **THE COURT: I am not here to judge what I think New**

21          **Century's views are based on what is out there in the world.**

22          **Looking at the administrative record, the government describes**

23          **the SBA's decision as finding three things. The first that New**

24          **Century views non-white people as inferior. I am just asking**

25          **you, based on the administrative record, is that fact**


**Transcript Page 8**


1  **well-supported or not? And you told me, it is not well**


2          **supported because what the record supports is that non-white**

3          **people are inferior only in certain ways because different**

4          **races are superior and inferior in certain ways. So I am just**

5          **trying to understand where you are getting that from in the**

6          **administrative record and in which ways are non-white people**

7          **inferior, according to the administrative record, as opposed to**

8          **all of the time?**

9          **MR. KENNEDY: Well, it is a gross simplification,**

10         **Your Honor, that first statement or premise that they quoted.**

11         **I mean, there are many ethnic groups. Whites are only one of**

12         **them. And we have never made a blanket statement, ever, that**

13         **everybody who is not white is inferior to everybody who is.**

14         **THE COURT: But so what -- looking at the**

15         **administrative record, why is that factual finding not**

16      supported? And that is -- tell me why that is so and where are

17      you relying on the administrative record? Because my job is to

18      look at that factual finding and look at the administrative

19      record and review the agency's decision. And I am trying to

20      figure out why you disagree with that finding, what you're

21      relying on in the administrative record and what you think

22      about everything the government catalogs in its brief, not the

23      stuff that is outside the record, but that is in the record to

24      support this finding.

25      MR. KENNEDY: Well, the record --


**Transcript Page 9**


1       THE COURT:  And I hear you saying a bunch of

2       different things and I just -- I do oral argument to sort of

3       zero in on issues I find most difficult and give you an

4       opportunity to weigh in and direct me in the right places and

5       to make sure I understand your arguments.

6       MR. KENNEDY: Sure.

7       THE COURT: So help me understand your argument on

8       those first two findings.

9       MR. KENNEDY: Well, the record includes a lot of

10      things that we included as well.

11    THE COURT: That you don't what?

12    MR. KENNEDY: That we also included in the record.

13    We also quoted quite a bit of material from NCF showing that in

14    certain ways, we regard certain races and ethnic groups as on

15    average statistically in the aggregate, not individually, as

16    perhaps more accomplished or capable than others.

17    And I mean, if you look at intelligence testing,

18    which you might find controversial in itself, but which is

19    science, you find Asians doing better, perhaps versions of

20    Jewish extraction doing better than whites. You would find

21    white people doing better than black people. And these studies

22    are replicable and have been replicated. And we are merely

23    stating fact, but never do we suggest that there should be any

24    oppression or mistreatment --

25    THE COURT: I am not talking about oppression. The

## Transcript Page 10

1    finding is New Century views non-white people as inferior.

2    Everything you just said to me seems to support that.

3    Where in the record would you point me to say that

4    the SBA acted unlawfully or, you know, in reaching that finding

5    that such a finding was arbitrary and capricious?

6    MR. KENNEDY: Well, we just disagree, Your Honor.

7       **THE COURT: Based on what? You can't just disagree.**

8       **MR. KENNEDY: Well, based on what I have told the**

9       **Court about what we say.**

10      **THE COURT: Everything you just told me seems to**

11      **support some idea that non-whites are inferior. You just**

12      **quoted me science and other testing that you think shows that**

13      **as a general matter.**

14      **MR. KENNEDY: Well, science is where we get it, Your**

15      **Honor, with all due respect.**

16      **THE COURT: So you agree that non-white people are**

17      **inferior because science shows that?**

18      **MR. KENNEDY: We do not. We do not.**

19      **THE COURT: So what are you saying?**

20      **MR. KENNEDY: We do not say as a general matter that**

21      **non-white people are inferior.**

22      **THE COURT: You say on average non-white people are**

23      **inferior because science says so and that is different than --**

24      **MR. KENNEDY: In certain qualities. Inferior is a**

25      **word -- a broad-based word. I don't think any sensible person**

## Transcript Page 11

1      **would say a whole group is inferior without specifying what you**

2      **mean. We said in our --**

3      **THE COURT: You don't understand the definition of**

4          inferior?

5          **MR. KENNEDY: Well, here is an interview --**

6          **THE COURT: Answer my question. I understand you**

7          **want to say what you want to say.**

8          **MR. KENNEDY: Of course.**

9          **THE COURT: What do you mean inferior is a word that**

10         **is difficult to understand?**

11         **MR. KENNEDY: Inferior covers or can cover any number**

12         **of meanings, inferior with respect to what? Inferior with**

13         **respect to athletic ability, that would be different. You have**

14         **to specify.**

15         **THE COURT: I mean, the government's brief points to**

16         **in the administrative record on page 84, a speech from New**

17         **Century's founder that says, "The best possible citizenship**

18         **policy is the idea that only free white persons of good**

19         **character could become Americans. How did we go wrong?"**

20         **MR. KENNEDY: Yeah, that was the Colonial Period**

21         **Immigration Act, yes. And obviously Mr. Taylor was saying that**

22         **would have been a good idea. Advocating a position, not**

23         **advocating defiance of existing laws.**

24         **THE COURT: We are not talking about that. I am**

25         **asking you, whether you think the government is wrong when it**


**Transcript Page 12**

1     says that the SBA found, based on this record that I have that

2     New Century views non-white people as inferior. I hear you

3     saying a lot of things, some of what you are saying actually

4     sounds like you agree with that, just not that categorically.

5     You said that non-white people are inferior on average in

6     different ways and that science shows that to be true. So I

7     can't figure out whether you are defending that view or not.

8     Like, because if you are not, I am not really sure what

9     argument you are making and what you are pointing me to argue

10    that the government is wrong as to that point.

11    MR. KENNEDY: Well, sticking to the premise we are

12    talking about and I want to do that, even though it is

13    protected speech and has nothing to do with the finding the ALJ

14    made against us ultimately. Mr. Taylor we quote in our

15    opposition to the defendant's cross motion, consistently

16    argues, that Mr. Taylor does, that different racial groups

17    exhibit different distributions of physical and behavioral

18    traits and that it is not generally meaningful to call any race

19    superior or inferior. That is quoting Mr. Taylor. However,

20    when pressed to name a superior race, well, he explained his

21    views to a reporter from "The Washington Post". Quoting, "East

22    Asians have higher average IQs, lower crime rates, fewer

23    illegitimate children" --

24    THE COURT REPORTER: Sir, you need to slow down.

25    MR. KENNEDY: Yeah.

**Transcript Page 13**

"East Asians have higher average IQs, lower crime rates, fewer illegitimate children. They are superior to whites in lots of ways." Taylor likewise explained to black scholar Carol Swain, "I think Asians are objectively superior to whites by just about any measure you can come up with."

And in another writing of his he says, "Ultimately we must ask ourselves the most unpleasant question of all, is the white race even fit to survive?"

THE COURT: So what do you think that supports exactly? It supports the view that you think, Asians are superior to whites and whites are superior to blacks, is that the view based on your testing? I am just trying to understand your argument.

MR. KENNEDY: Yeah, only in certain ways. Only in certain ways.

THE COURT: When I start speaking, it would be great

0

1

2

3

4

5

6

if          could stop speaking so as not to have the transcript be

7   you

hard        for the court reporter.

8   er

MR. KENNEDY: Oh, sure.

9

THE COURT: Thank you.

0

MR. KENNEDY: I will certainly slow down.

1

Also --

**THE COURT: Okay. I was asking a question. I am not**

**just asking you to slow down. I am asking you to stop speaking**

**when I start asking you a question.**

**Transcript Page 14**

1    MR. KENNEDY:  Very well.

2            **THE COURT: So I started with the three findings that**

3            **the SBA made that the government is defending, the first and**

4            **the second, which one is about non-white people being inferior.**

5            **The second is about white and non-white people generally**

6            **remaining separate. I see ample evidence in the record**

7            **supporting that as New Century's views and I wanted to give you**

8            **a chance to tell me why I am wrong. And a lot of what you said**

9            **actually seems to cut against that and support the government's**

10            **arguments just in different ways. And so I will give you one**

11            **last chance to tell me why that is wrong based on all of the**

12            **extensive evidence in the administrative record and then we'll**

13                              move on.

14                              MR. KENNEDY: Okay. Well, respectfully, Your Honor,

15                              I think I have done that. The claim that whites and other

16                              races don't get on so well together when they are forced into

17                              association, yes, that is something that New Century

18                              Foundation, its writers and speakers, have pointed out. These

19                              are presented as matters of fact. Not prescriptions. NCF does

20                              not say that people of different races should be prevented from

21                              associating freely with each other. Mr. Taylor has repeatedly

22                              said that it is up to individual choice, not necessarily to

23                              government compulsion.

24                              THE COURT: So are you conceding the second finding?

25                              MR. KENNEDY: In the way I stated, yes. But that we


**Transcript Page 15**


1       have said --

2       THE COURT: Stop.

3       MR. KENNEDY: We have said --


4                              THE COURT: Again, when I start speaking, you should

5                              stop speaking. That is --

6                              MR. KENNEDY: Of course, Your Honor.

7                              THE COURT: -- is how it works.

8          It is yes or no. New Century believes that white and

9          non-white people generally should remain separate. And I see a

10         lot of statements in here saying exactly that. And based on

11         what you just said, it sounds like you are conceding that

12         point. So are you conceding that point, yes or no? Because I

13         am not seeing any daylight between the finding and what you

14         just said.

15         MR. KENNEDY: Uh-huh. No, we don't concede that

16         point entirely for the reasons I have started.

17         THE COURT: Why not? Tell me the reason. Tell me

18         that again because that did not come across.

19         MR. KENNEDY: NCF has taken the position more than

20         once that diversity is not always a strength. That is

21         unfortunate.

22         THE COURT: Diversity is not what?

23         MR. KENNEDY: Always a strength. It can be a source

24         of strife. And we see that all over the world. And we don't

25         say that whites and other people cannot associate, do not

**Transcript Page 16**

1          successfully associate, but that problems do arise. And if I

2          may, I will stick with that, Your Honor.

3          THE COURT: Okay. Well, I mean, the record is

4       replete with many statements with New Century attacking racial

5       integration and the governmental concept of racial integration.

6       And so, again, a lot of what you said to me thus far is

7       actually quite consistent with what is in the record. And I

8       hear you trying to walk back from that a little, but not in

9       ways that are meaningful and not in ways that are consistent

10      with this administrative record. So let's turn to the third

11      finding, which is about your hiring decisions.

12      So based on the factual record here, this job posting

13      was removed in 2017; is that right?

14      MR. KENNEDY: Yes, Your Honor, that is right.

15      THE COURT: Is it right that you never hired anyone

16      in response to the posting?

17      MR. KENNEDY: That is true, we did not.

18      THE COURT: Okay. So I read SBA's decision relying

19      on the regs implementing Title VI as the source of law. And as

20      you know, under Title VI, you can have facial discrimination,

21      discriminatory application or disparate impact. Tell me why

22      the disparate impact theory does not hold up here, given the

23      content of the posting, that it was online for years, why

24      couldn't a reasonable conclude -- the reasonable person

25      conclude that someone from a protected class was deterred from

**Transcript Page 17**

1    applying, particularly given all of New Century's views that

2    have been communicated, some of which I read today and which is

3    throughout this administrative record. So a prospective job

4    applicant surfing the internet looks at this job posting who is

5    non-white, well aware of New Century's stated views that

6    non-whites are inferior, that whites and non-whites generally

7    should remain separate and should not mix, that that is not the

8    vision of America that is the best one. Why wouldn't such a

9    person be deterred from applying from that job?

10    MR. KENNEDY: Well, back in 2017, of course, we had

11    not applied for the SBA loan.

12    THE COURT: We are not talking about that. I am just

13    talking about the ad.

14    MR. KENNEDY: I think what we are really talking

15    about here because the ad was gone --

16    THE COURT: We are not -- I understand that is what

17    you are talking about.

18    MR. KENNEDY: Well, the government's --

19    I'm sorry, Your Honor.

20    THE COURT: Answer my question. I am not talking

21    about the timing of the ad. I am not talking about whether it

22    existed when the loan was made or when the decision not to

23    forgive the loan was made or the timing. I am just asking the

24    question of looking at the ad, why doesn't a disparate impact

25    theory along the lines that I just laid out hold up?

**Transcript** Page 18

1      MR. KENNEDY:  A person reading that ad I think

2      reasonably would say, I do or do not agree with those views.

3      You can have people of color who do agree with those views.

4      Our ad is not aimed a discouraging them on the basis of race.

5      We are like any advocacy organization, National Organization

6      For Women, the ADL, NAACP --

7      THE COURT: Why would a person who is black --

8      MR. KENNEDY: Yes.

9      THE COURT: -- who you view as inferior to white --

10     and that is made pretty clear all over your website and based

11     on your work -- why would that black person apply for a job

12     with you, given your known views, because that -- why would you

13     ever hire a black person, since blacks are inferior to white?

14     It sounds like you would hire an Asian based on what you told

15     me. But based on what is in the record and what you told me

16     today, why would you hire a black person who is inferior to a

17     white person based on science and testing?

18     MR. KENNEDY: There are black people --

19     THE COURT: According to you, to be clear.

20     MR. KENNEDY: There are black people that NCF would

21    love to have on board.

22    **THE COURT: Why would you hire someone who in your**

23    **view is inferior to every other non-black person?**

24    **MR. KENNEDY: Your Honor, because we have no such**

25    **view. We don't think that every single black person is**


**Transcript Page 19**


1   **inferior to every white person.**

2              **THE COURT: Oh, you just think average black people**

3              **are inferior to white people?**

4              **MR. KENNEDY: But when you are hiring, you are**

5              **talking about the person who comes before you. If it were**

6              **Walter Williams, the economist, some other black people with**

7              **whom we agree, it would be our honor.**

8              **THE COURT: Why wouldn't that -- so based on what is**

9              **written and what is in the record and assuming I accept the**

10             **first two findings, which are -- and you're trying to put**

11             **glosses on them. Assuming I accept New Century's views are**

12             **that non-white people are inferior and that white and non-white**

13             **people generally should remain separate, that is best for**

14             **America. If I accept those two findings that the SBA made,**

15             **right, why would a black person looking at your job posting not**

16          be deterred from applying to work? Why would they think you

17          would hire them given your views?

18                    MR. KENNEDY: They might or might not be.

19                    THE COURT: So you are saying they might be deterred?

20                    MR. KENNEDY: They might be, because of lawful

21          speech. The government has conceded that the job posting is

22          not unlawful on its face. It is not unlawfully discriminatory.

23                    THE COURT: Correct. I don't understand them to be

24          making a facial discrimination claim. They are, however,

25          making a disparate impact claim, I think. I will ask them.

---

**Transcript Page 20**

          But that doesn't answer my question about why this isn't a valid disparate impact

theory, if you concede that a black person looking at your job posting might well be deterred

from

          applying because of the posting and because of New Century's

          prett      well documented views.

y

                    MR. KENNEDY: Yes, it might happen.

                    THE COURT: Okay.

                    MR. KENNEDY: But it is protected speech. May I say

just          little more?

a

           THE COURT: Sure, go ahead.

0

           MR. KENNEDY: It is obviously protected speech. The

1

government concedes --

2           THE COURT: We are not talking about your First Amendment claim. I am talking

about your APA claim.

3           MR. KENNEDY: Sticking to that, yes. Or a white person might feel that we like

Asians better. Who knows?

4           THE COURT: Okay. Let me ask you about the remedy, you are asking me to issue a

permanent injunction against the SBA. And I have seen cases going both ways on whether I

5  can enter injunctive relief against the SBA. The typical remedy in any agency review case

under the APA is to remand to the agency. So why is this the rare case where you should win

6  and that I should not only remand to the agency but should enter a permanent injunction?

           MR. KENNEDY: Your Honor, the -- frankly, we can do

7

8

9

0

1

2

3

4

5

**Transcript Page 21**

1      without the injunction. We have asked for it. An adequate

2      remedy would be simply to send this case -- this decision back,

3      vacate it and direct the SBA to refund our loan and pay us

4      interest.

5      THE COURT: Okay.

6      MR. KENNEDY: An injunction might discourage them

7      from future unlawful behaviors, such as they engaged in in this

8      case, but injunction is not a critical remedy.

9      THE COURT: Okay. Thank you, Mr. Kennedy.

10     MR. KENNEDY: Okay. Your Honor.

11     THE COURT: Okay. Mr. Silverman.

12     MR. SILVERMAN: Good afternoon, Your Honor.

13     THE COURT: Okay. Good afternoon.

14     So I will start by saying the SBA decision is not

15     really a model of clarity.

16     MR. SILVERMAN: Agreed.

17     THE COURT: I have spent a lot of time with it. Your

18     brief, as I have just said to Mr. Kennedy, describes the

19     decision as finding three things. And as I said to

20     Mr. Kennedy, I think the first two facts are pretty well

21     supported by the record. And I will say, I was pretty shocked

22     and appalled as to what I read in the record about this

23     plaintiff's views on race. But let's focus on the third,

24     because I am trying to figure out why that is supported by

25     substantial evidence. So I have the job posting in front of

**Transcript** Page 22

1   me. And you argue at various times in your brief that New

2      Century applied its views of racial inferiority. What does it

3      mean to apply those views? Because at first I thought you were

34

4    saying the ad was facially discriminatory and then you said you

5    were not. And I don't see anything in the record at all

6    suggesting that they made any hiring decisions based on the ad.

7    And so why did they -- you say this a lot. Why did they apply

8    those racial beliefs to hiring decisions?

9    MR. SILVERMAN: So maybe I was not clear in what I

10    meant when I said they apply that. So let me try to better

11    explain what I meant.

12    THE COURT: Okay.

13    MR. SILVERMAN: What I intended to say by that is

14    that this ad does make clear their racial views are essentially

15    a factor in the calculus of the hiring decision. They are a

16    criteria, not in the sense that, you know -- I don't think the

17    ad itself makes obvious on its face that they would not hire a

18    non-white person. What it does show is that their racial

19    attitudes is something that is intensely at the top of their

20    mind in the decision-making process, the mix and that it is

21    something that they are thinking about, that they are applying

22    as they are making hiring decisions. And I think that is clear

23    given the fact that they say the, quote, ideal applicant will

24    have a strong commitment to race realism and white advocacy.

25    They ask that the cover letter mention a description of the

**Transcript** Page 23

1    applicant's political views and how he came to them. So they

2    are very much thinking about this and about these racial

3    attitudes in the course of making hiring decisions. As

4    contrasted to, I don't know, let me just give a fanciful

5    illustrative, you know, example. Your favorite Beatles song.

6    That is clearly not something they are thinking about when they

7    are making hiring decisions or at least their ad does not

8    suggest that. Whereas in contrast, the ad does suggest that

9    they are very much thinking about their racial attitudes when

10    they are making these decisions.

11    THE COURT: But did they actually make any hiring

12    decisions? Did they actually apply those racial beliefs to any

13    hiring decisions?

14    MR. SILVERMAN: I do not believe that the

15    administrative record shows that they did. And that is not our

16    argument.

17    THE COURT: Okay. Okay. Because and I didn't see

18    the SBA saying -- I didn't see the SBA making a finding either

19    that they applied their racial beliefs to hiring decisions.

20    So is it a disparate impact theory? You seem to be

21    relying on the regs implementing Title VI. Is it -- when you

22    say they have, you know -- they have applied those beliefs in

23    the context of hiring decisions or they violated a reg, what

24    are you grounding that in? And if it is Title VI, are you

25    grounding that in a disparate impact theory?

**Transcript** Page 24

1      MR. SILVERMAN:  Not a disparate impact theory.

2      Candidly I am not entirely sure if the government is arguing

3      disparate impact theories at all right now, but that is not our

4      position.

5      THE COURT: Okay. So what is your position then?

6      Because I -- that is where -- that is where I get a little

7      confused. So you seemed to be relying on the regs implementing

8      Title VI in your brief. Your brief references Title VI. And

9      if you are saying, it is not facial discrimination and there is

10     no discriminatory application and the government isn't arguing

11     disparate impact anymore, then what is your source of law?

12     MR. SILVERMAN: It is just Title VI. And it is not a

13     disparate impact theory.

14     THE COURT: Which of the three is it? Title VI is

15     one of the three. So what is -- how did they discriminate? If

16     it is not facial discrimination and it is not disparate impact

17     and you just told my they didn't apply the ad in any hiring,

18     what is the discrimination under Title VI?

19     MR. SILVERMAN: We would say it is intentional

20     discrimination and it doesn't rely on being a particular person

21    against whom they discriminated. It relies on the fact that

22    they generally do not and would not and would be less likely --

23    even if I could not say absolutely would not, I can say would

24    be less likely to, would hold someone's race against them,

25    would be harder to, if not impossible to hire a minority.


**Transcript Page 25**


1         Let me offer a hypothetical to illustrate the point.

2         Let's say you had a business owner get out in front of his

3         store stand on a milk box, get out a megaphone and say, we will

4         hire nobody who is not white, we will never hire a non-white

5         person under any circumstance, forget it. I think in that

6         circumstance you would not need to point to a particular

7         person --

8         THE COURT: You would -- you would sue them under

9         Title VI saying what? What would be the source of law?

10        MR. SILVERMAN: Title VI.

11        THE COURT: What is the theory under Title VI?

12        Because I -- the only theory I see and I thought I was pulling

13        together from different paragraphs in your brief, which it

14        sounds like might not be the brief you would file today and

15        that would be helpful for me to know -- is, okay, a bunch of

16        people walked by, they hear that statement and they are

17  **deterred from applying for that job because they now know that**

18  **that person would never hire them. But that sounds like a**

19  **theory you are not willing to embrace. I guess I don't**

20  **understand -- I don't understand where that would fit within**

21  **the different -- the different paths under Title VI.**

22  **MR. SILVERMAN: So maybe it is a matter of**

23  **nomenclature or speaking past each other a little bit. I**

24  **wouldn't necessarily disclaim the theory you set out. It**

25  **wasn't what I was primarily trying to get at.**

## Transcript Page 26

1  **THE COURT: So is it discriminatory application? Is**

2  **it back to --**

3  **MR. SILVERMAN: I guess the way I would think of it**

4  **is this: Let's start at the beginning. Title VI prohibits**

5  **discrimination in -- well prohibits, among other things**

6  **discrimination in employment.**

7  **THE COURT: Yes. I am familiar with Title VI and**

8  **there are three paths; right? So which path are we taking?**

9  **MR. SILVERMAN: I would characterize this as**

10  **intentional discrimination. And what they -- the**

11  **discrimination is not necessarily rooted in any particular**

12  **employment decision, but in a general discriminatory process**

13          that is extant.

14                    THE COURT: Okay. I am a little confused about where

15          that fits in the analysis as I think about this. And I am -- I

16          am even a little more confused hearing you saying the

17          government wouldn't embrace a disparate impact theory, because

18          it sure sounds from some of your briefing that you were doing

19          that.

20                    So I am not sure this has been very helpful in

21          helping me figure out where we are on this issue of what you're

22          relying on, but --

23                    MR. SILVERMAN: What I would say is, if -- and I know

24          it doesn't say this, but let's just pretend, that there was

25          a -- that there was something that said, we would not hire a

**Transcript Page 27**

1          non-white person. We think that would support a finding of a

2          Title VI violation whether or not that is conducted to any

3          particular individualized employment decision and we think that

4          the ad that actually is in the record, while it doesn't say

5          that, it is circumstantial evidence along with the two other

6          categories of evidence in the record that this is what they do.

7                    THE COURT: See, that is what I thought you were

8          arguing in your brief and that sounds like that is facial

9      discrimination. On its face the ad says, I am not going to

10     hire white people. I am not going to hire black people, but

11     then you disclaim any facial discrimination.

12     MR. SILVERMAN: I didn't mean to do that. I --

13     THE COURT: You didn't mean to do that? Because your

14     brief says that it says -- I mean, I am going to -- it says

15     that pretty explicitly. I don't think that I guessed that

16     from -- that was one thing that was pretty clear in your brief.

17     MR. SILVERMAN: Can I ask which page you are

18     referring to?

19     THE COURT: I will go look at that now. And --

20     But just to be clear, you are talking about -- you

21     are talking -- you are talking about a facial discrimination

22     theory then?

23     MR. SILVERMAN: Yes, I believe -- so, yes, if you --

24     THE COURT: It was in your reply brief. Let me see

25     if I can find it.


**Transcript** Page 28


1              MR. SILVERMAN: I think I might have just tripped

2              over my tongue before and if so, I apologize.

3              THE COURT: Okay. So in your reply brief on page 5,

4              you say -- let me -- "SBA does not contend that the posting is

5          facially discriminatory."

6          MR. SILVERMAN: Well, it doesn't say, we would not

7          hire a member of a certain race.

8          THE COURT: But that is -- okay. You just told me

9          the theory you were relying on. So is it facial

10         discrimination? It is discriminatory application? Is it

11         disparate impact. You have said in the brief that you don't

12         contend it is facially discriminatory. And you have said that

13         the government isn't arguing disparate impact at this time. So

14         then, is it discriminatory application? Because it has got to

15         be one of those three.

16         MR. SILVERMAN: I think I might see where the

17         difference is here. What we would characterize as

18         circumstantial, but not direct evidence of facial

19         discrimination.

20         THE COURT: Even though your brief says SBA does not

21         contend that the posting is facially discriminatory?

22         MR. SILVERMAN: What I meant by that is direct

23         evidence of intentional discrimination. It is circumstantial

24         evidence. That was the intent in that statement. And it -- I

25         did not mean anything else by that. Circumstantial.


**Transcript** Page 29

1          **THE COURT: So SBA's argument is that the ad violates**

2          **Title VI, because it is facially discriminatory, because if it**

3          **had said, we do not hire blacks because they are inferior, do**

4          **not apply, that would be facial discrimination. And this ad,**

5          **by not saying it in those words, but saying that they are**

6          **committed to race realism and white advocacy and asking an**

7          **applicant to explain how he would be a good fit for American**

8          **Renaissance in context with all of the appalling statements**

9          **that this organization has made, equates this ad to that type**

10         **of ad. So it is actually facially discriminatory.**

11         **MR. SILVERMAN: I think that is true, Your Honor.**

12         **That is not our primary argument.**

13         **THE COURT: What is your primary argument then?**

14         **MR. SILVERMAN: That this shows that this is**

15         **circumstantial evidence that they would not hire or would**

16         **discriminate against, hold to a higher standard, be less likely**

17         **to hire non-white people.**

18         **THE COURT: And that -- and that you think is facial**

19         **discrimination?**

20         **MR. SILVERMAN: Yes.**

21         **THE COURT: Okay. Okay. Let me ask you on the First**

22         **Amendment claim --**

23         **MR. SILVERMAN: Uh-huh.**

24         **THE COURT: -- if you lose under the APA, do you also**

25         **lose under the First Amendment? So your argument is that you**

**Transcript Page 30**

```
1        relied on a finding of employment discrimination in denying

2        loan forgiveness, not their views and their opinions, but if I

3        find that the employment discrimination finding was arbitrary

4        and capricious, you lose on the First Amendment as well?

5        MR. SILVERMAN: No. As a threshold matter, if we

6        lose on the APA claim, I think the Court could just stop right

7        there and remand and there would be no need to go on to the

8        First Amendment claim. And that -- which is what I would

9        encourage the Court to do if that is what it were to do on the

10       APA claim. But let's just say that you are to go ahead and

11       proceed to the First Amendment issue nonetheless, I would say

12       there is still not a First Amendment violation because the

13       reason for SBA's decision was not retaliation based on speech.

14       The reason was it thought that it saw employment

15       discrimination.

16       Now you can say that SBA was wrong about that, but

17       the fact is the reason is still something other than

18       retaliation against speech.

19       THE COURT: Okay. Will you file something letting me

20       know whether you are, in fact, disclaiming any disparate impact

21       theory or do you feel confident saying yes or no on that now?

22       MR. SILVERMAN: We are not making -- our theory has
```

23    always been intentional discrimination and that this ad is

24    circumstantial, not direct evidence of intentional

25    discrimination. And that those words you pointed to in the


**Transcript Page 31**


1   reply brief, that is all I meant by that, circumstantial

2        evidence of intentional discrimination. We are not relying on

3        a disparate impact theory.

4        THE COURT: Okay. Okay. Thank you.

5        Mr. Kennedy, is there anything you would like to add

6        before we close?

7        MR. KENNEDY: Yes, if I may, Your Honor.

8        THE COURT: Of course.

9        MR. KENNEDY: Could I go over basically our view of

10       what the administrative record says and why it is inadequate?

11       Not at any great length. I will say at the bottom line if we

12       would like to get to that is that we are being punished, if you

13       will, for expressions of opinion and nothing else. There is no

14       evidence in the record that NCF committed a discriminatory act

15       against anyone. And the government seems to say that under

16       Title VI you don't need that. They have already said, this is

17       not facially discriminatory, so they need something. They need

18    some evidence --

19    THE COURT: I just heard the statement saying

20    something different, that they did not intend to say that this

21    was not facially discriminatory. I think you heard

22    Mr. Silverman saying exactly that, didn't you?

23    MR. KENNEDY: Well, I heard that, Your Honor. I

24    can't say it made any sense to me. They say, it is

25    discriminatory facially if we supplement it with circumstantial

**Transcript Page 32**

1   evidence. That is a contradiction. It is either

2    discriminatory on its face or it is not. And if you need to

3    bring in circumstantial evidence, as they say, to show its

4    discriminatory effect, then that is not facial discrimination.

5    So I don't see how they can say both things.

6    Now, the government, if I may, they claim that they

7    don't have to have an act of discrimination against anyone,

8    because they are standing on Title VI. And Title VI they say

9    does not require discrimination against actual persons, Title

10    VII does. But let me point out, Your Honor, that Title VI, by

11    its terms repeatedly refers to acts of discrimination against

12    individuals and persons.

13    Now, if it was Congress' intent that the evidentiary

14    standards of Title VII, which does require under the McDonald

15    Douglas case that there be an actual person, that there be an

16    adverse act and so forth. If Congress believed that that

17    should not apply to Title VI, that would be a big statement,

18    quite a radical statement. Congress did not say that. And the

19    government has not cited a single judicial decision that stands

20    for that proposition that Title VI is somehow different. They

21    just say so, no support at all.

22    We can't agree with that, Your Honor. This statute,

23    Title VI, is about racial discrimination in public programs

24    either by an agency or by a beneficiary. And it says, we are

25    trying to prevent discrimination in access to facilities,


**Transcript Page 33**


1    discrimination in employment against persons, against

2    individuals. We cite that and the regulations of the SBA

3    repeat that language.


4    So to come in and say, well, people must have been

5    discouraged by this ad, but we can't find evidence that anybody

6    else was. Even in Title VII cases on facial discrimination,

7    there was at least someone that comes in and says, I would have

8      applied for that job, but that ad put me off. You simply

9      cannot say, as they do here that, okay, there is no daylight

10     between the policy we express and employment discrimination.

11     There is no intervening act that they try to prove. There are

12     just saying -- in effect they are saying, anyone with our

13     views, protected speech, is guilty of employment

14     discrimination. That is all you need.

15     THE COURT: I don't think that is what they are

16     saying, but you can finish your point.

17     MR. KENNEDY: Well, it is where they end up, Your

18     Honor. They have abandoned some positions. If you recall, the

19     ALJ said at great length that NCF practiced discrimination in

20     access to facilities. We spoke back in our summary judgment

21     motion and said, that is true. The ALJ did not cite a single

22     such instance. And people of all races and ethnicities come to

23     conference and we don't know who they are and we don't turn

24     them away.

25     After we talked about that in our summary judgment

**Transcript Page 34**

1     motion, because it was a big charge against us, the government

2     dropped it. Their opposition to our summary judgment motion

3     doesn't even mention it. We have to bring it up now, because

4      deep sixing it as the government seems to have done, does not

5      mean that we aren't entitled to summary judgment on that claim

6      that was made by the administrative law judge. We are.

7      On the employment discrimination claim, actually the

8      ALJ did say at one point that the ad itself is discriminatory.

9      Well, that position seems to have been abandoned by government

10     as well. They now say expressly on page 5 of their February

11     filing that they do not claim that it is facially

12     discriminatory. Again, the ALJ's finding is still part of the

13     record and we are entitled to summary judgment.

14     THE COURT: You just heard me read that very sentence

15     to Mr. Silverman and heard his response, so I am not sure of

16     your point. You are ignoring the back and forth we just had

17     about that. But, please, go on and finish your point,

18     Mr. Kennedy.

19     MR. KENNEDY: Well, Your Honor, as I said before --

20     the government's response was self contradictory to say that

21     you are taking the position that something is discriminatory on

22     its face and we are going to prove it by bringing in extrinsic

23     evidence.

24     THE COURT: Okay. Do you have any -- I hear you and

25     I understand what you are saying.


Transcript Page 35

1            Do you have anything else you would like to say

2            before we close?


3            MR. KENNEDY: May I say one thing about the remedy

4            here, Your Honor, if I may?

5            THE COURT: Sure.

6            MR. KENNEDY: We had pointed out in our complaint and

7            in our summary judgment motion that the SBA failed to follow

8            its own rules. According to the Title VI, and its own rules,

9            it may not deny loan forgiveness on the basis of Title VI until

10           it has had a conference -- an informal conference with us and

11           made an affirmative finding that no informal resolution was

12           possible. They didn't do that. We pointed that out. An

13           agency must follow its own rules. Now, the government has

14           said, that we waived that argument by not explicitly asking for

15           relief on that ground in our summary judgment motion, but we

16           did talk about it in our summary judgment motion as further

17           evidence of --

18           THE COURT: Where did you? Because I didn't see you

19           do that in your summary judgment papers.

20           MR. KENNEDY: Where we mentioned it?

21           THE COURT: Yeah, you said you did make that

22           argument.

23           MR. KENNEDY: Well, yes, for example --

24           THE COURT: I didn't see it.

25          MR. KENNEDY: For example, we said that some of these

**Transcript** Page 36

1          **problems could have been resolved if the SBA had followed its**

2          **own rules and had the informal conference.**

3          **THE COURT: That is not the same thing as making the**

4          **argument though.**

5          **MR. KENNEDY: Not the same thing and there is a**

6          **reason for that, although the Court can take judicial notice of**

7          **an agency's failure to follow its rules. But put that aside,**

8          **we do not want the Court to decide that this case should merely**

9          **be remanded for an informal conference with an agency whose**

10         **hostility to us has already been demonstrated, would waste more**

11         **time, bring us right back here. So although we mention it in**

12         **our complaint, we ask for relief on that ground, we do not**

13         **insist on that. We don't think that would be a good use of**

14         **time for anyone.**

15         **THE COURT: Okay. Thank you.**

16         **MR. KENNEDY: Thank you, Your Honor.**

17         **(Proceedings concluded at 2:54 p.m.)**

18

19

20

21

22

23

24

25

**Transcript Page 37**

1 <u>**C E R T I F I C A T E**</u>

2

3      **I, SHERRY LINDSAY, Official Court Reporter, certify**

4  **that the foregoing constitutes a true and correct transcript of**

5  **the record of proceedings in the above-entitled matter. 6**

7

8

9

10          **Dated this 2nd day of August, 2025. 11**

12

**Sherry Lindsay, RPR**

13          **Official Court Reporter**

14

15

16

17

18

19

20

21

22

23

24

25



| MR. KENNEDY: [78] | actually [9] 6/7 12/3 14/9 16/7 23/11 23/12 27/4 29/10 | any [21] 2/24 9/23 10/25 11/11 12/18 13/5 15/13 18/5 |

MR. SILVERMAN: [27] 2/12

21/12 21/16 22/9 22/13 23/14

24/1 24/12 24/19 25/10 25/22

26/3 26/9 26/23 27/12 27/17

27/23 28/1 28/6 28/16 28/22

29/11 29/14 29/20 29/23 30/5

30/22

THE COURT REPORTER: [1]

12/24

THE COURT: [102]

THE COURTROOM DEPUTY: [1]

2/2

**$**

| $ | 3/6 |
| 51,600 | 1] |

**1**

1050 [1] 1/14

1612 [2] 1/4 2/3

**2**

20001 [2] 1/18 1/25

20007 [1] 1/15

2017 [2] 16/13 17/10

2025 [2] 1/5 37/10

24-1612 [1] 1/4

24-cv-1612 [1] 2/3

29 [1] 1/5

2:03 [1] 1/7

2:54 [1] 36/17

2nd [1] 37/10

**3**

30th [1] 1/14

333 [1] 1/24

**5**

| 5 | 3/5 |
| 1,000 | 1] |

**6**

601 [1] 1/17

6710 [1] 1/24

**8**

84 [1] 11/16

34/7

ad [23] 17/13 17/15 17/21 17/24 18/1 18/4 22/4 22/6 22/14 22/17 23/7 23/8 24/17 27/4 27/9 29/1 29/4 29/9 29/10 30/23 33/5 33/8 34/8

add [1] 31/5

adequate [1] 21/1

ADL [1] 18/6

ADMINISTRATION [3] 1/6 2/4 2/13

administrative [27] 4/20 4/22 4/23 5/19 5/22 6/5 6/11 6/19 6/23 6/24 7/6 7/17 7/22 7/25 8/6 8/7 8/15 8/17 8/18 8/21 11/16 14/12 16/10 17/3 23/15 31/10 34/6

administrator [1] 2/14

adverse [1] 32/16

advocacy [3] 18/5 22/24 29/6 advocating [2] 11/22 11/23

affirmative [1] 35/11

After [2] 3/9 33/25

afternoon [9] 2/2 2/10 2/11 2/12 2/15 2/19 2/21 21/12 21/13

again [7] 2/19 5/21 6/17 15/4 15/18 16/6 34/12

against [15] 12/14 14/9 20/18 20/20 24/21 24/24 29/16 30/18 31/15 32/7 32/9 32/11 33/1 33/1 34/1

agency [6] 20/21 20/22 20/23 32/24 35/13 36/9

agency's [3] 6/21 8/19 36/7

aggregate [1] 9/15

agree [8] 3/23 4/19 10/16 12/4 18/2 18/3 19/7 32/22

Agreed [1] 21/16

ahead [3] 3/14 20/10 30/10

aimed [2] 5/13 18/4

al [2] 1/6 2/4

ALJ [5] 5/25 12/13 33/19 33/21 34/8

20/21 22/6 23/11 23/12 24/17

25/5 26/11 27/2 27/11 30/20

31/11 31/24 34/24

anybody [1] 33/5

anymore [1] 24/11

anyone [5] 16/15 31/15 32/7 33/12 36/14

anything [6] 3/14 6/18 22/5 28/25 31/5 35/1

APA [6] 3/16 20/14 20/21 29/24 30/6 30/10

apologize [1] 28/2

appalled [1] 21/22

appalling [1] 29/8

APPEARANCES [1] 1/12

applicant [3] 17/4 22/23 29/7

applicant's [1] 23/1

application [5] 16/21 24/10 26/1 28/10 28/14

applied [5] 17/11 22/2 23/19 23/22 33/8

applies [1] 3/20

apply [8] 18/11 22/3 22/7 22/10 23/12 24/17 29/4 32/17

applying [6] 17/1 17/9 19/16 20/4 22/21 25/17

approach [1] 2/5

appropriately [1] 4/3

arbitrary [2] 10/5 30/3 are [115] aren't [2] 5/8 34/5 argue [2] 12/9 22/1 argues [1] 12/16

arguing [4] 24/2 24/10 27/8 28/13

argument [14] 2/16 2/24 9/2 9/7 12/9 13/13 23/16 29/1 29/12 29/13 29/25 35/14 35/22 36/4

arguments [2] 9/5 14/10

arise [1] 16/1

articles [3] 4/7 5/7 5/9

as [42]

Asian [1] 18/14

Asians [7] 4/14 9/19 12/22 13/1 13/4 13/10 20/16

aside [1] 36/7

ask [7] 13/7 19/25 20/17 22/25 27/17 29/21 36/12

9

9th [2] 3/1 3/10

A

abandoned [2] 33/18 34/9
ability [1] 11/13
about [41]
above [1] 37/5
above-entitled [1] 37/5
absolutely [1] 24/23
accept [3] 19/9 19/11 19/14
access [2] 32/25 33/20
accomplished [1] 9/16
according [3] 8/7 18/19 35/8
accurately [1] 6/15
across [1] 15/18
act [5] 11/21 31/14 32/7 32/16 33/11
acted [1] 10/4
Action [1] 1/3
acts [1] 32/11
actual [3] 4/20 32/9 32/15

ALJ's [1] 34/12
all [17] 3/3 4/9 7/9 8/8 10/15 13/7 14/11 15/24 17/1 18/10 22/5 24/3 29/8 31/1 32/21 33/14 33/22
Allen [2] 1/13 2/9 along [2] 17/25 27/5 already [1] 31/16 36/10
also [4] 9/12 9/13 13/22 29/24
although [2] 36/6 36/11
always [3] 15/20 15/23 30/23 am [46]
Amendment [7] 20/14 29/22 29/25 30/4 30/8 30/11 30/12
America [2] 17/8 19/14
American [1] 29/7
Americans [1] 11/19
among [1] 26/5
amount [1] 3/1
ample [1] 14/6
analysis [1] 26/15
another [2] 4/9 13/6
answer [3] 11/6 17/20 20/1

asked [1] 21/1
asking [12] 7/16 7/17 7/24 11/25 13/23 13/24 13/24 13/25 17/23 20/18 29/6 35/14
associate [2] 15/25 16/1
associating [1] 14/21
association [1] 14/17
assuming [2] 19/9 19/11 athletic [1] 11/13
attacking [1] 16/4
attitudes [3] 22/19 23/3 23/9
August [1] 37/10
Avenue [1] 1/24
average [10] 4/9 4/11 7/9 7/10 9/15 10/22 12/5 12/22 13/1 19/2
aware [1] 17/5

A

33/24

B

back [7] 16/8 17/10 21/2 26/2 33/20 34/16 36/11
Bankruptcy [1] 1/23
based [24] 2/24 3/22 4/22 5/19 5/21 6/25 7/5 7/21 10/7 10/8 10/25 12/1 13/12 14/11 15/10 16/12 18/10 18/14 18/15 18/17 19/8 30/13
basically [1] 31/9
basis [2] 18/4 35/9
be [38]
Beatles [1] 23/5
because [35] 3/21 4/21 7/5 8/2 8/3 8/17 10/17 12/8 15/12 15/18 17/15 18/24 19/20 20/4 20/4 22/3 23/17 24/6 25/12 26/17 27/13 28/14 29/2 29/3 30/12 32/8 34/1 34/3 35/18
become [1] 11/19
been [13] 2/17 2/24 3/2 9/22 11/22 17/2 26/20 33/4 34/9 36/1 36/10
before [7] 1/10 2/23 19/5 28/2 31/6 34/19 35/2
begin [1] 2/23

bunch [3] 4/20 9/1 25/15
business [4] 1/6 2/4 2/13 25/2

C

calculus [1] 22/15
call [1] 12/18
came [1] 23/1
can [15] 3/13 11/11 13/5 15/23 16/20 18/3 20/19 20/25 24/23 27/17 27/25 30/16 32/5 33/16 36/6
can't [6] 6/14 10/7 12/7 31/24 32/22 33/5
Candidly [1] 24/2 cannot [2] 15/25 33/9 capable [2] 4/12 9/16
capricious [2] 10/5 30/4
Carol [1] 13/4
case [7] 6/19 20/21 20/22 21/2 21/8 32/15 36/8
cases [2] 20/19 33/6
catalogs [1] 8/22

33/22
comes [2] 19/5 33/7
commitment [1] 22/24
committed [2] 29/6 31/14
communicated [1] 17/2
complaint [2] 35/6 36/12
comprehensively [1] 4/4
compulsion [1] 14/23
concede [2] 15/15 20/2 conceded [1] 19/21
concedes [1] 20/12
conceding [3] 14/24 15/11 15/12
concept [1] 16/5 conclude [2] 16/24 16/25 concluded [1] 36/17
conducted [1] 27/2
conference [6] 5/9 33/23 35/10 35/10 36/2 36/9
conferences [1] 5/7
confident [1] 30/21
confine [2] 5/14 5/25 confused [3] 24/7 26/14 26/16

beginning [1] 26/4
behavioral [1] 12/17
behaviors [1] 21/7
being [5] 14/4 24/20 31/12
beliefs [5] 3/20 22/8 23/12
23/19 23/22
believe [2] 23/14 27/23
believed [1] 32/16
believes [2] 3/18 15/8
beneficiary [1] 32/24
best [3] 11/17 17/8 19/13
better [8] 4/8 4/11 7/10
9/19 9/20 9/21 20/16 22/10
between [2] 15/13 33/10
big [2] 32/17 34/1
hit [2] 9/13 25/23
black [15] 9/21 13/3 18/7
18/13 18/16 18/16 18/18
18/20 18/23 18/25 19/2
19/15 20/2 27/10
blacks [3] 13/11 18/13
blanket [1] 8/12
board [1] 18/21
both [4] 2/17 3/25 20/19
32/5
bottom [1] 31/11
box [1] 25/3
Bradley [2] 1/16 2/12
brief [16] 8/22 11/15
22/1 24/8 24/8 25/13 25/14
27/7 27/14 27/16 27/24
28/11 28/20 31/1
briefing [2] 3/22 26/18
bring [3] 32/3 34/3 36/11
bringing [1] 34/22
broad [1] 10/25
broad-based [1] 10/25

categorically [1] 12/4
categories [2] 5/1 27/6
CENTURY [13] 1/3 2/3 2/8
2/22 3/18 5/4 7/24 10/1
12/2
14/17 15/8 16/4 22/2
Century's [10] 4/24 7/13
7/14 7/21 11/17 14/7 17/1
17/5 19/11 20/4
certain [10] 7/7 7/10 8/3
8/4 9/14 9/14 10/24 13/14
13/15 28/7
certainly [3] 3/15 4/12
13/21
certify [1] 37/3
chance [3] 5/21 14/8 14/11
character [1] 11/19 characterize
[2] 26/9 28/17 charge [1] 34/1
Charles [3] 1/13 2/7 2/20
children [2] 12/23 13/2 choice [1]
14/22 circumstance [2] 25/5 25/6
circumstantial [9] 27/5
28/18 28/23 28/25 29/15
30/24 31/1 31/25 32/3
cite [2] 33/2 33/21
cited [1] 32/19
cites [1] 4/19
citizenship [1] 11/17
Civil [2] 1/3 1/17
claim [15] 3/16 5/13 14/15

Congress [2] 32/16 32/18
Congress' [1] 32/13
consider [1] 4/21
consist [1] 5/24 consistent
[2] 16/7 16/9 consistently [1]
12/15
constitutes [1] 37/4
Constitution [1] 1/24
contend [3] 28/4 28/12 28/21
content [1] 16/23
context [4] 3/20 4/17
23/23 29/8
contradiction [1] 32/1
contradictory [1] 34/20
contrast [1] 23/8
contrasted [1] 23/4
contributors [1] 5/7
controversial [1] 9/18
convince [1] 5/21
correct [2] 19/23 37/4
could [6] 11/19 13/17
24/23 30/6 31/9 36/1
couldn't [1] 16/24

**D**

Dated [1] 37/10
day [1] 37/10
daylight [2] 15/13 33/9
DC [4] 1/5 1/15 1/18 1/25
decide [1] 36/8
decision [15] 3/17 6/21

**D**

decision... [12] 8/19 16/18
17/22 21/2 21/14 21/19 22/15
22/20 26/12 27/3 30/13
32/19
decision-making [1] 22/20
decisions [12] 3/21 16/11 22/6
22/8 22/22 23/3 23/7
23/10 23/12 23/13 23/19
23/23
deep [1] 34/4
Defendant [1] 1/16
defendant's [1] 12/15
Defendants [1] 1/7
defending [2] 12/7 14/3 defiance
[1] 11/23
definition [1] 11/3
demonstrated [1] 36/10

26/17 28/11 28/13 30/20
31/3
distributions [1] 12/17
DISTRICT [4] 1/1 1/1
1/10 1/23
diversity [2] 15/20 15/22
Division [1] 1/17
do [38]
doctrine [1] 5/10
documented [1] 20/5
does [15] 5/4 12/16 14/19
16/22 22/2 22/14 22/18 23/7
23/8 28/4 28/20 32/9 32/10
32/14 34/4
doesn't [9] 5/24 6/2 17/24
20/1 24/20 26/24 27/4 28/6
34/3

21/25 27/5 27/6 28/18
28/23
28/24 29/15 30/24 31/2
31/14
31/18 32/1 32/3 33/5 34/23
35/17
evidentiary [1] 32/13
exactly [3] 13/10 15/10
31/22
example [4] 7/10 23/5
35/23 35/25
exhibit [1] 12/17
existed [1] 17/22
existing [1] 11/23 explain
[2] 22/11 29/7 explained [2]
12/20 13/3
explicitly [2] 27/15 35/14
express [1] 33/10

**F**

denied [1] 3/10
deny [1] 35/9
denying [1] 30/1
describes [2] 7/22 21/18
description [1] 22/25 deterred
[6] 16/25 17/9
    19/16 19/19 20/3 25/17
did [17] 11/19 15/18 16/17
22/7 22/7 23/11 23/12 23/15
    24/15 28/25 31/20 32/18
    33/21 34/8 35/16 35/18
35/21
didn't [9] 23/17 23/18
24/17 27/12 27/13 31/22 35/12
    35/18 35/24
difference [1] 28/17
different [17] 4/25 4/25
5/16 8/3 9/2 10/23 11/13
    12/6 12/16 12/17 14/10
14/20
    25/13 25/21 25/21 31/20
    32/20
difficult [2] 9/3 11/10
direct [5] 9/4 21/3 28/18
28/22 30/24
disagree [4] 3/25 8/20
10/6 10/7
disclaim [2] 25/24 27/11
disclaiming [1] 30/20
discourage [1] 21/6
discouraged [1] 33/5
discouraging [1] 18/4
discrete [1] 6/19
discretely [1] 5/13
discriminate [2] 24/15 29/16
discriminated [1] 24/21

doing [4] 9/19 9/20 9/21
26/18
    DOJ [1] 1/16
    DOJ-USAO [1] 1/16
    don't [29] 2/17 4/18 5/10
5/10 5/11 7/3 7/14 9/11

E
    each [2] 14/21 25/23 East
[2] 12/21 13/1 economist [1] 19/6
effect [2] 32/4 33/12
    either [3] 23/18 32/1
32/24
    else [6] 3/14 4/13 28/25
31/13 33/6 35/1
    embrace [2] 25/19 26/17
    employment [10] 26/6
26/12 27/3 30/1 30/3 30/14 33/1
    33/10 33/13 34/7
    encourage [1] 30/9
    end [1] 33/17
    endorse [1] 5/11
    engaged [1] 21/7
    enough [1] 4/24
    enter [2] 20/20 20/23
entire [2] 5/24 6/10 entirely [2]
15/16 24/2
    entitled [3] 34/5 34/13
37/5
    equates [1] 29/9
    essentially [1] 22/14
    et [2] 1/6 2/4
    ethnic [3] 7/10 8/11 9/14
ethnicities [2] 4/11 33/22
ethnicity [1] 4/10
    even [7] 12/12 13/8 24/23
26/16 28/20 33/6 34/3

face [5] 19/22 22/17 27/9
32/2 34/22
    facial [13] 16/20 19/24
24/9 24/16 27/8 27/11 27/21 28/9
    28/18 29/4 29/18 32/4 33/6
28/12 28/21 29/2 29/10 31/17
    31/21 31/25 34/11
    facilities [2] 32/25 33/20
    fact [7] 7/25 9/23 14/19
22/23 24/21 30/17 30/20
    factor [1] 22/15
    facts [3] 3/23 7/1 21/20
16/12
    factual [4] 6/5 8/15 8/18
16/12
    failed [1] 35/7
    failure [1] 36/7
    familiar [1] 26/7
    fanciful [1] 23/4
    far [1] 16/6
    fashion [1] 3/9
    favorite [1] 23/5
    February [1] 34/10 feel
[2] 20/16 30/21 fewer [2] 12/22
13/2
    figure [4] 8/20 12/7 21/24
26/21
    file [2] 25/14 30/19 filed
[2] 2/17 6/19 filing [1] 34/11
    find [8] 4/15 9/3 9/18 9/19
9/20 27/25 30/3 33/5
    finding [20] 3/17 7/23
8/15 8/18 8/20 8/24 10/1 10/4
    10/5 12/13 14/24 15/13
16/11
    21/19 23/18 27/1 30/1 30/3

| F | guilty [1] 33/13 | 24/7 |
| fit [3] 13/8 25/20 29/7 | H | impossible [1] 24/25 |

fits [1] 26/15
focus [1] 21/23
focused [1] 5/18
follow [3] 35/7 35/13 36/7
followed [1] 36/1
forced [1] 14/16
foregoing [1] 37/4
forget [1] 25/5
forgive [1] 17/23
forgiveness [3] 3/10 30/2 35/9
forth [2] 32/16 34/16
found [1] 12/1
FOUNDATION [5] 1/3 2/3 2/8 2/22 14/18
Foundations [1] 5/4
founder [1] 11/17
frankly [1] 20/25

**G**

general [3] 10/13 10/20 26/12
generally [8] 3/19 5/2 12/18 14/5 15/9 17/6 19/13 24/22
get [8] 4/8 10/14 14/16 24/6 25/2 25/3 25/25 31/12
getting [1] 8/5
give [5] 5/20 9/3 14/7 14/10 23/4
given [5] 16/22 17/1 18/12 19/17 22/23
Glen [2] 1/13 2/9
glosses [1] 19/11
go [8] 3/13 11/19 20/10 27/19 30/7 30/10 31/9 34/17
going [7] 4/21 6/3 20/19 27/9 27/10 27/14 34/22
gone [1] 17/15
good [13] 2/2 2/10 2/11 2/12 2/15 2/19 2/21 11/18 11/22 21/12 21/13 29/7 36/13
got [1] 28/14
government [25] 3/17 4/1 4/17 4/19 6/8 6/14 7/22 8/22 11/25 12/10 14/3 14/23 19/21 20/12 24/2 24/10 26/17 28/13 31/15 32/6 32/19 34/1 34/4 34/9 35/13

had [8] 17/10 25/2 29/3 34/16 35/6 35/10 36/1 36/2
happen [1] 20/6
harder [2] 13/18 24/25
has [13] 3/2 12/13 14/21 15/19 19/21 26/20 28/14 29/9 30/22 32/19 35/10 35/13 36/10
hate [1] 7/15
have [56]
have higher [1] 12/22
haven't [2] 6/7 6/10
he [4] 12/20 13/6 23/1 29/7
hear [5] 9/1 12/2 16/8 25/16 34/24
heard [5] 31/19 31/21 31/23 34/14 34/15
hearing [2] 1/9 26/16
help [1] 9/7
helpful [2] 25/15 26/20
helping [1] 26/21
here [14] 2/7 2/16 2/22 6/15 7/20 11/5 15/10 16/12 16/22 17/15 28/17 33/9 35/4 36/11
higher [3] 12/22 13/1 29/16
hire [17] 18/13 18/14 18/16 18/22 19/17 22/17 24/25 25/4 25/4 25/18 26/25 27/10 27/10 28/7 29/3 29/15 29/17
hired [1] 16/15
hiring [14] 3/21 16/11 19/4 22/6 22/8 22/15 22/22 23/3 23/7 23/11 23/13 23/19 23/23 24/17

**I**

I'm [1] 17/19
idea [3] 10/11 11/18 11/22
ideal [1] 22/23
ignoring [1] 34/16
illegitimate [2] 12/23 13/2
illustrate [1] 25/1
illustrative [1] 23/5
Immigration [1] 11/21

inadequate [1] 31/10
included [2] 9/10 9/12 includes [1] 9/9
incorrect [1] 6/6
individual [1] 14/22
individualized [1] 27/3
individually [1] 9/15
individuals [2] 32/12 33/2
inferior [35] 3/18 4/5 5/2 7/7 7/13 7/24 8/3 8/4 8/7 8/13 10/1 10/11 10/17 10/21 10/23 10/24 11/1 11/4 11/9 11/11 11/12 11/12 12/2 12/5 12/19 14/4 17/6 18/9 18/13 18/16 18/23 19/1 19/3 19/12 29/3
inferiority [1] 22/2
informal [4] 35/10 35/11 36/2 36/9
injunction [5] 20/18 20/24 21/1 21/6 21/8
injunctive [1] 20/20
insist [1] 36/13
instance [1] 33/22
instead [1] 4/24
integration [2] 16/5 16/5
intelligence [1] 9/17
intend [1] 31/20
intended [1] 22/13
intensely [1] 22/19
intent [2] 28/24 32/13
intentional [6] 24/19 26/10 28/23 30/23 30/24 31/2
interest [2] 3/8 31/4

**J**

Jerry [1] 2/8
Jewish [1] 9/20
job [12] 8/17 16/12 17/3 17/4 17/9 18/11 19/15 19/21 20/3 21/25 25/17 33/8
judge [3] 1/10 7/20 34/6
judgment [10] 1/7 17/33/20 33/25 34/2 34/5 34/13 35/7 35/15 35/16 35/19
judicial [2] 32/19 36/6
July [1] 1/5

**K**

| | | |
|---|---|---|
| government's [4] 11/15 14/9 17/18 34/20 | impact [17] 16/21 16/22 17/24 19/25 20/2 23/20 23/25 | Kennedy [11] 1/13 1/14 2/7 |

**K**

Kennedy... [8] 2/10 2/18 2/20 21/9 21/18 21/20 31/5 34/18
know [12] 5/12 10/4 16/20 22/16 23/4 23/5 23/22 25/15 25/17 26/23 30/20 33/23

**L**

laid [1] 17/25
language [1] 33/3
last [1] 14/11
law [5] 1/14 16/19 24/11 25/9 34/6
lawful [1] 19/20
laws [1] 11/23
least [2] 23/7 33/7
length [4] 4/17 6/8 31/11 33/19
less [3] 24/22 24/24 29/16
let [9] 3/16 20/17 22/10 23/4 25/1 27/24 28/4 29/21 32/10
let's [7] 6/9 16/10 21/23 25/2 26/4 26/24 30/10
letter [1] 22/25
letting [1] 30/19
like [12] 12/4 12/8 15/11 18/5 18/14 20/16 25/14 25/18 27/8 31/5 31/12 35/1
likely [3] 24/22 24/24 29/16
likewise [1] 13/3
limited [1] 4/22
Lindsay [3] 1/22 37/3 37/12
line [1] 31/11
lines [1] 17/25
little [7] 3/5 16/8 20/9 24/6 25/23 26/14 26/16
loan [11] 2/24 3/3 3/6 3/8 3/10 17/11 17/22 17/23 21/3 30/2 35/9
look [5] 6/22 8/18 8/18

**M**

16/4
material [1] 9/13
matter [6] 6/3 10/13 10/20 25/22 30/5 37/5
matters [1] 14/19
matured [1] 3/10
may [7] 16/2 20/8 31/7 32/6 35/3 35/4 35/9
maybe [2] 22/9 25/22
McDonald [1] 32/14
me [40]
mean [14] 5/4 5/4 8/11 9/17 11/2 11/9 11/15 16/3 22/3 27/12 27/13 27/14 28/25 34/5
meaningful [2] 12/18 16/9
meanings [1] 11/12
meant [4] 22/10 22/11 28/22 31/1
measure [1] 13/5
megaphone [1] 25/3
member [1] 28/7
members [2] 4/10 4/11
membership [1] 5/8
mention [3] 22/25 34/3 36/11
mentioned [1] 35/20
merely [2] 9/22 36/8
might [12] 9/18 19/18 19/18 19/19 19/20 20/3 20/6 20/16 21/6 25/14 28/1 28/16
milk [1] 25/3
mind [1] 22/20
minority [1] 24/25
mistreatment [1] 9/24
mix [2] 17/7 22/20 model [1] 21/15
more [7] 4/12 4/13 9/16 15/19 20/9 26/16 36/10
most [2] 9/3 13/7
mostly [1] 5/5
motion [8] 1/9 12/15 33/21 34/1 34/2 35/7 35/15 35/16
motions [1] 2/16
move [1] 14/13

**N**

31/16 31/17 31/17 32/2 33/14
never [7] 4/9 4/12 8/12 9/23 16/15 25/4 25/18
NEW [23] 1/3 2/3 2/8 2/25 3/18 4/24 5/4 7/13 7/14 7/20 7/23 10/1 11/16 12/2 14/7 14/17 15/8 16/4 17/1 17/5 19/11 20/4 22/1
no [17] 1/4 3/25 4/15 7/3 15/8 12/15 15/15 18/24 24/10 30/5 30/7 30/21 31/13 32/21
33/9 33/11 35/11
nobody [1] 25/4
nomenclature [1] 25/23
non [29] 3/18 3/19 4/4 5/1 7/7 7/12 7/24 8/2 8/6 10/1 10/11 10/16 10/21 10/22 12/2
12/5 14/4 14/5 15/9 17/5 17/6 17/6 18/23 19/12 19/12
22/18 25/4 27/1 29/17
non-black [1] 18/23
non-white [25] 3/18 3/19 4/4 5/1 7/7 7/12 7/24 8/2 8/6 10/1 10/16 10/21 10/22
12/5 14/4 14/5 15/9 17/5 19/12 19/12 22/18 25/4

**O**

objectively [1] 13/4
obvious [1] 22/17
obviously [2] 11/21 20/11
occasion [1] 4/13
off [1] 33/8
offer [1] 25/1
official [4] 1/23 5/10 37/3 37/13
Oh [3] 7/3 13/19 19/2
okay [31] 2/16 3/4 3/7 3/12 13/23 14/14 16/3 16/18 20/7 20/17 21/5 21/9 21/10 21/11

**made [13]** 5/6 8/12 12/14 14/3 17/22 17/23 18/10 19/14 22/6 29/9 31/24 34/6 35/11
**make [4]** 9/5 22/14 23/11 35/21
**makes [1]** 22/17
**making [12]** 3/20 12/9 19/24 19/25 22/20 22/22 23/3 23/7 23/10 23/18 30/22 36/3

**NAACP [1]** 18/6
**name [2]** 2/5 12/20
**National [1]** 18/5
**NCF [10]** 4/2 4/4 5/6 5/8 9/13 14/19 15/19 18/20 31/14 33/19
**necessarily [4]** 5/11 14/22 25/24 26/11
**need [8]** 13/24 25/6 29/7

21/13 22/12 23/17 23/17 24/5
25/15 26/14 28/3 28/8 29/21
29/21 30/19 31/4 31/4 33/9 34/24 36/15
**once [1]** 15/20
**one [13]** 4/8 4/9 4/10 4/13 8/11 14/4 14/10 17/8 24/15

**O**

**opposed [1]** 8/7
**opposition [2]** 12/15 34/2
**oppression [2]** 9/24 9/25 **oral [1]** 9/2
**organization [4]** 5/8 18/5 18/5 29/9
**other [10]** 10/12 14/15 14/21 15/25 18/23 19/6 25/23 26/5 27/5 30/17
**others [2]** 4/12 9/16
**otherwise [1]** 5/21
**our [22]** 4/6 4/18 6/14 11/2 12/14 18/4 19/7 21/3 23/15 24/3 29/12 30/22 31/9 33/12
33/20 33/25 34/2 35/6 35/7 35/15 35/16 36/12
**ourselves [2]** 5/25 13/7
**out [17]** 4/14 4/17 6/20 6/22 7/21 8/20 12/7 14/18 17/25 21/24 25/2 25/3 25/24

**P**

**plaintiff's [1]** 21/23
**plaintiffs's [1]** 2/6
**please [2]** 2/5 34/17
**point [12]** 10/3 12/10 15/12 15/12 15/16 25/1 25/6 32/10 33/16 34/8 34/16 34/17
**pointed [5]** 4/14 14/18 30/25 35/6 35/12
**pointing [1]** 12/9 **points [2]** 5/16 11/15 **policy [2]** 11/18 33/10 **political [1]** 23/1 **position [7]** 4/23 11/22 15/19 24/4 24/5 34/9 34/21
**positions [1]** 33/18
**possible [2]** 11/17 35/12 **Post [1]** 12/21
**posting [11]** 16/12 16/16 16/23 17/4 19/15 19/21 20/3 20/4 21/25 28/4 28/21
**practiced [1]** 33/19
**premise [2]** 8/10 12/11
**prescriptions [1]** 14/19
**presented [1]** 14/19

**R**

**race [11]** 4/8 4/10 12/18 12/20 13/8 18/4 21/23 22/24 24/24 28/7 29/6
**races [6]** 4/25 8/4 9/14 14/16 14/20 33/22
**racial [12]** 12/16 16/4 16/5 22/2 22/8 22/14 22/18 23/2 23/9 23/12 23/19 32/23
**radical [1]** 32/18
**rare [1]** 20/22
**rates [2]** 12/22 13/2
**reaching [1]** 10/4
**read [4]** 16/18 17/2 21/22 34/14
**reading [1]** 18/1
**realism [2]** 22/24 29/6
**really [3]** 12/8 17/14 21/15
**reason [5]** 15/17 30/13 30/14 30/17 36/6
**reasonable [2]** 16/24 16/24

p.m [2] 1/7 36/17
page [4] 11/16 27/17 28/3 34/10
pages [2] 6/13 6/13
paid [4] 3/3 3/3 3/8 3/11
papers [2] 2/25 35/19
paragraphs [1] 25/13
part [1] 34/12
particular [4] 24/20 25/6 26/11 27/3
particularly [1] 17/1
Parties [1] 2/5
past [1] 25/23
path [1] 26/8
paths [2] 25/21 26/8
pay [1] 21/3
people [37] 3/18 3/19 4/4 5/1 7/7 7/11 7/12 7/24 8/3 8/6 9/21 9/21 10/1 10/16 10/21 10/22 12/2 12/5 14/4 14/5 14/20 15/9 15/25 18/3 18/18 18/20 19/2 19/3 19/6 19/12 19/13 25/16 27/10 27/10 29/17 33/4 33/22
perhaps [2] 9/16 9/19
Period [1] 11/20 permanent [2] 20/18 20/24
person [23] 10/25 16/24 17/9 18/1 18/7 18/11 18/13 18/16 18/17 18/23 18/25 19/1 19/5 19/15 20/3 20/16 22/18

pressed [1] 12/20
pretend [1] 26/24
pretty [8] 3/24 5/20 18/10 20/5 21/20 21/21 27/15 27/16
prevent [1] 32/25
prevented [1] 14/20
primarily [1] 25/25
primary [2] 29/12 29/13
principal [1] 2/25
principle [1] 3/3
PRIVACY [1] 1/14
problem [1] 4/15
problems [2] 16/1 36/1 proceed [1] 30/11
proceedings [2] 36/17 37/5 process [2] 22/20 26/12
programs [1] 32/23 prohibits [2] 26/4 26/5 proper [1] 6/22
proposition [1] 32/20

Q
qualities [2] 4/10 10/24
question [9] 5/13 6/25 11/6 13/7 13/23 13/25 17/20 17/24 20/1
questions [1] 3/13
quite [3] 9/13 16/7 32/18
quote [2] 12/14 22/23 quoted [7] 3/25 4/1 4/17 6/15 8/10 9/13 10/12
quotes [2] 6/8 6/14
quoting [2] 12/19 12/21

reasonably [1] 18/2
reasons [1] 15/16
recall [1] 33/18
record [54]
references [1] 24/8
referring [1] 27/18
refers [1] 32/11
refund [1] 21/3
reg [1] 23/23
regard [1] 9/14
regards [1] 4/4
regs [3] 16/19 23/21 24/7
regulations [1] 33/2 relied [2] 5/25 30/1
relief [3] 20/20 35/15 36/12
relies [1] 24/21
rely [3] 6/3 7/17 24/20
relying [8] 8/17 8/21 16/18 23/21 24/7 26/22 28/9 31/2
remain [4] 3/19 15/9 17/7 19/13
remaining [1] 14/6
remand [3] 20/21 20/23 30/7
remanded [1] 36/9
remedy [5] 20/17 20/20 21/2 21/8 35/3
removed [1] 16/13
Renaissance [1] 29/8
repeat [1] 33/3
repeatedly [2] 14/21

R
review [4] 5/19 6/3 8/19 20/21
reviewing [2] 6/21 7/18
right [12] 3/1 5/3 5/18 9/4 16/13 16/14 16/15 19/15 24/3 26/8 30/6 36/11
Room [1] 1/24
rooted [1] 26/11
RRR [1] 37/12
S

side [1] 3/21
sides [1] 2/17
Silverman [6] 1/16 2/13 2/15 21/11 31/22 34/15
simplification [2] 4/5 8/9
simply [3] 4/5 21/2 33/8 since [1] 18/13
single [3] 18/25 32/19 33/21
Sir [1] 12/24
sixing [1] 34/4

store [1] 25/3
Street [2] 1/14 1/17
strength [2] 15/20 15/23 strife [1] 15/24
strong [1] 22/24
studies [1] 9/21
stuff [1] 8/23
substantial [1] 21/25
subtlety [1] 4/18
successfully [1] 16/1

said [29] 2/20 4/2 4/12 5/24 10/2 11/2 12/5 14/8 14/22 15/1 15/3 15/11 15/14 16/6 21/18 21/19 22/4 22/10 26/25 28/11 28/12 29/3 31/16 33/19

33/21 34/19 35/14 35/21 35/25

same [3] 4/10 36/3 36/5
saw [1] 30/14
say [52]
saying [22] 9/1 10/19 11/21 12/3 12/3 15/10 19/19 21/14 22/4 23/18 24/9 25/9 26/16 29/5 29/5 30/21 31/19 31/22

33/12 33/12 33/16 34/25
says [13] 5/11 10/23 11/17 12/1 13/6 27/9 27/14 27/14 27/14 28/20 31/10 32/24 33/7

SBA [18] 3/17 10/4 12/1 14/3 17/11 19/14 20/19 20/20 21/3 21/14 23/18 23/18 28/4 28/20

30/16 33/2 35/7 36/1
SBA's [4] 7/23 16/18 29/1 30/13

scholar [1] 13/4
science [8] 4/14 9/19 10/12 10/14 10/17 10/23 12/6 18/17

second [3] 14/4 14/5 14/24
see [13] 14/6 15/9 15/24 22/5 23/17 23/18 25/12 27/7 27/24 28/16 32/5 35/18 35/24

seeing [1] 15/13
seem [1] 23/20
seemed [1] 24/7
seems [7] 5/20 10/2 10/10 14/9 31/15 34/4 34/9
seen [1] 20/19

slow [3] 12/24 13/21 13/24
SMALL [3] 1/6 2/3 2/13
smarter [1] 4/15
so [63]
some [11] 3/12 4/11 5/5 10/11 12/3 17/2 19/6 26/18 31/18 33/18 35/25
somehow [1] 32/20
someone [3] 16/25 18/22 33/7 someone's [1] 24/24 something [10] 14/17 22/19 22/21 23/6 26/25 30/17 30/19

31/17 31/20 34/21
song [1] 23/5
SOOKNANAN [1] 1/10
sorry [1] 17/19
sort [1] 9/2
sounds [7] 12/4 15/11 18/14 25/14 25/18 26/18 27/8
source [4] 15/23 16/19 24/11 25/9

SPARKLE [1] 1/10
speakers [4] 4/2 4/8 5/6 14/18

speaking [6] 13/16 13/17 13/24 15/4 15/5 25/23
specify [1] 11/14
specifying [1] 11/1
speech [8] 11/16 12/13 19/21 20/8 20/11 30/13 30/18 33/13

spent [1] 21/17
spoke [1] 33/20
sponsors [1] 5/9
stand [1] 25/3
standard [1] 29/16
standards [1] 32/14 standing [2] 6/15 32/8 stands [1] 32/19

start [8] 2/18 3/13 3/16 13/16 13/25 15/4 21/14 26/4
started [2] 14/2 15/16
starting [1] 2/6

such [6] 4/8 10/5 17/8 18/24 21/7 33/22
sue [1] 25/8
suggest [3] 9/23 23/8 23/8 suggesting [1] 22/6 summary [10] 2/17 33/20

33/25 34/2 34/5 34/13 35/7 35/15 35/16 35/19
superior [9] 4/13 4/25 8/4 12/19 12/20 13/2 13/4 13/11 13/11

supplement [1] 31/25
support [7] 4/24 8/24 10/2 10/11 14/9 27/1 32/21
supported [9] 3/24 5/20

T

take [1] 36/6
taken [1] 15/19 taking [2] 26/8 34/21 talk [1] 35/16
talked [1] 33/25
talking [20] 5/6 6/17 6/18 7/8 7/9 9/25 11/24 12/12 17/12 17/13 17/14 17/17 17/20 17/21 19/5 20/13 20/14

27/20 27/21 27/21
Taylor [7] 2/8 11/21 12/14 12/16 12/19 13/3 14/21
tell [8] 6/5 6/14 8/16 14/8 14/11 15/17 15/17 16/21
tend [1] 4/14
terms [1] 32/11
testify [2] 7/15 7/16
testing [4] 9/17 10/12 13/12 18/17

than [10] 4/9 4/12 4/13 7/10 9/16 9/20 9/21 10/23 15/19 30/17
Thank [8] 2/19 2/23 3/12 13/20 21/9 31/4 36/15 36/16
that [322]
their [10] 22/14 22/18 22/19 23/7 23/9 23/19 30/2 30/2 34/3 34/10

| T | try [3] 5/25 22/10 33/11 | walked [1] 25/16 |

theories [1] 24/3
theory [17] 16/22 17/25
20/2 23/20 23/25 24/1 24/13 25/11
25/12 25/19 25/24 26/17
27/22 28/9 30/21 30/22
31/3
there [27] 2/24 3/22 4/23
6/13 6/20 6/23 7/21 8/11
9/23 18/18 18/20 24/9 26/8
26/24 26/25 30/7 30/7
30/12
31/5 31/13 32/15 32/15
33/7
33/9 33/11 33/11 36/5
these [7] 4/16 6/5 9/21
14/18 23/2 23/10 35/25
they [67]
thing [5] 4/9 27/16 35/3
36/3 36/5
things [11] 3/17 4/2 4/6
5/1 7/23 9/2 9/10 12/3 21/19
26/5 32/5
think [36] 4/16 7/1 7/3 7/5
7/20 8/21 10/12 10/25 11/25
13/4 13/9 13/10 14/15
17/14
18/1 18/25 19/2 19/16
19/25
21/20 22/16 22/22 25/5
26/3
26/15 27/1 27/3 27/15 28/1
28/16 29/11 29/18 30/6
31/21
33/15 36/13
thinking [4] 22/21 23/2
23/6 23/9
third [3] 3/21 16/10 21/23
this [38]
those [14] 3/20 4/24 7/1
9/8 18/2 18/3 19/14 22/3 22/8
23/12 23/22 28/15 29/5
30/25
though [3] 12/12 28/20
36/4
thought [4] 22/3 25/12
27/7 30/14
three [8] 3/17 7/23 14/2
21/19 24/14 24/15 26/8 28/15
threshold [1] 30/5

trying [9] 5/15 8/5 8/19
13/12 16/8 19/10 21/24 25/25
32/25
turn [2] 16/10 33/23
two [8] 3/23 5/19 7/1 9/8
19/10 19/14 21/20 27/5

U
U.S [1] 1/23
Uh [3] 5/23 15/15 29/23
Uh-huh [3] 5/23 15/15
29/23 ultimately [2] 12/14 13/6
under [11] 16/20 20/21 24/18
25/5 25/8 25/11 25/21
29/24
29/25 31/15 32/14
understand [13] 2/25 8/5
9/5 9/7 11/3 11/6 11/10 13/12
17/16 19/23 25/20 25/20
34/25
unfortunate [1] 15/21
UNITED [2] 1/1 1/10
universe [2] 5/24 6/2
unlawful [2] 19/22 21/7
unlawfully [2] 10/4 19/22
unpleasant [1] 13/7
until [1] 35/9

V
vacate [1] 21/3
valid [1] 20/2
various [1] 22/1
versions [1] 9/19
versus [1] 2/3
very [5] 14/1 23/2 23/9
26/20 34/14
VI [26] 16/19 16/20 23/21
23/24 24/8 24/8 24/12 24/14
24/18 25/9 25/10 25/11
25/21
26/4 26/7 27/2 29/2 31/16
32/8 32/8 32/10 32/17
32/20
32/23 35/8 35/9
view [12] 4/21 4/25 7/6
7/13 7/14 12/7 13/10 13/12 18/9
18/23 18/25 31/9
views [24] 3/18 4/18 5/5
7/21 7/24 10/1 12/2 12/21
14/7 17/1 17/5 18/2 18/3
18/12 18/11 19/17 20/5

W

Walter [1] 19/6
want [7] 3/14 5/13 5/20
11/7 11/7 12/12 12/36/8
wanted [1] 14/7
was [40]
Washington [5] 1/5 1/15
1/18 1/25 12/21
wasn't [1] 25/25
waste [1] 36/10
way [2] 14/25 26/3
ways [14] 7/7 7/12 8/3 8/4
8/6 9/14 12/6 13/3 13/14
13/15 14/10 16/9 16/9
20/19
we [112]
we'll [1] 14/12
website [5] 4/6 5/8 6/14
6/18 18/10
weigh [1] 9/4
well [37] 3/24 4/3 5/20
5/23 6/7 8/1 8/1 8/9 8/25 9/9
9/10 10/6 10/8 10/14 11/5
12/11 12/20 14/1 14/14
14/16
16/3 17/5 17/10 17/18 20/3
20/5 21/20 26/5 28/6 30/4
31/23 33/4 33/17 34/9
34/10
34/19 35/23
well-supported [1] 8/1
were [8] 4/2 19/5 22/3
22/5 26/18 27/7 28/9 30/9
what [69]
whatever [1] 6/20
when [14] 5/4 11/25 12/20
13/16 13/25 14/16 15/4 17/22
17/22 19/4 22/10 23/6 23/9
23/21
where [14] 8/5 8/16 10/3
10/14 20/22 24/6 24/6 25/20
26/14 26/21 28/16 33/17
35/18 35/20
Whereas [1] 23/8
whether [6] 11/25 12/7
17/21 20/19 27/2 30/20
which [19] 4/16 4/21 6/25
7/12 7/18 8/6 9/18 9/18 14/4
16/11 17/2 17/2 19/10
24/14

| through [4] 4/6 4/7 4/7 | waived [1] 35/14 | 25/13 26/8 27/17 30/8 |
| 5/15 | walk [1] 16/8 | 32/14 |
| throughout [1] 17/3 | | while [2] 3/9 27/4 |

| W | | |
|---|---|---|
| win [1] 20/22 | | |
| within [1] 25/20 without | | |
| [2] 11/1 21/1 Women [1] 18/6 | | |
| word [3] 10/25 10/25 11/9 | | |
| words [2] 29/5 30/25 | | |
| work [3] 5/15 18/11 19/16 | | |
| works [2] 3/14 15/7 | | |
| world [4] 6/21 6/23 7/21 | | |
| 15/24 | | |
| would [58] | | |
| wouldn't [4] 17/8 19/8 | | |
| 25/24 26/17 | | |
| writers [2] 4/2 14/18 | | |
| writing [1] 13/6 written [2] 5/7 | | |
| 19/9 wrong [8] 4/5 4/6 11/19 | | |
| 11/25 12/10 14/8 14/11 | | |
| 30/16 | | |
| **Y** | | |
| Yeah [5] 5/15 11/20 12/25 | | |
| 13/14 35/21 | | |
| year [1] 5/10 | | |
| years [1] 16/23 | | |
| yes [19] 5/3 6/12 7/3 11/21 | | |
| 14/17 14/25 15/8 15/12 16/14 | | |
| 18/8 20/6 20/15 26/7 27/23 | | |
| 27/23 29/20 30/21 31/7 | | |
| 35/23 | | |
| you [182] | | |
| you're [3] 8/20 19/10 | | |
| 26/21 | | |
| your [71] | | |
| **Z** | | |

**zero [1] 9/3**