UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NEW CENTURY FOUNDATION,<br><br>    Plaintiff,<br><br>    v.<br><br>SMALL BUSINESS ADMINISTRATION, et al.,<br><br>    Defendants. | Civil Action No. 24-1612 (SLS) |

## **NOTICE**

Pursuant to this Court's Minute Order (July 19, 2025), Defendants Small Business Administration ("SBA") and Administrator Kelly Loeffler, by and through undersigned counsel, respectfully file this notice to further explain "their legal theory for the Title VI violation in this case." Defendants' theory of Title VI liability, which they contend substantial evidence supports, is that Plaintiff has an actual policy of discriminating in employment against non-white persons by treating non-white persons worse in its hiring process—by either refusing to hire them at all, or else at a minimum being less willing or likely to hire them than similarly situated white persons.

An entity violates Title VI if it has a "policy that explicitly classifies . . . on the basis of race." *Smith v. Henderson*, 982 F. Supp. 2d 32, 49 (D.D.C. 2013); *see also Adams v. Demopolis City Sch.*, 80 F.4th 1259, 1268 (11th Cir. 2023) (entity violates Title VI if it "maintain[s] a policy or practice" reflecting "an intent to discriminate"); *Sudduth v. Donnelly*, 367 F. App'x 703, 705 (7th Cir. 2010) (entity violates Title VI if it "maintain[s] a policy that intentionally discriminated against any racial group"). Defendants' Title VI theory is that Plaintiff has a policy of intentionally discriminating in employment against non-white persons by treating non-white persons worse than white persons in its hiring process, by refusing to hire them or holding them to a higher standard.

Defendants make no claim as to whether Plaintiff treats non-white persons worse by (1) refusing to hire them outright or (2) merely being less likely to hire them than similarly-situated white persons, e.g., by holding them to a higher standard in its hiring decisions than it to which it white persons. *See Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 158 (7th Cir. 1996) (an employer violates Title VI if it "retains black workers who are in the top quarter of its labor force, but keeps any white in the top half," such that "[a] black employee ranked in the 60th percentile of the staff according to supervisors' evaluations is let go, while all white employees similarly situated are retained"). Any such distinction would be immaterial—either approach would violate Title VII.

Defendants likewise make no claim as to whether Plaintiff applies its discriminatory policy inflexibly, with no deviations whatsoever, or whether it may make an occasional exception for a non-white person whom it regards as "one of the good ones." *MacDougall v. Banner Health*, Civ. A. No. 19-3456, 2021 WL 4307092, at *2 (D. Colo. Sept. 21, 2021); *accord Thomas v. Helms Robison & Lee, P.A.*, Civ. A. No. 16-0139, 2016 WL 7173797, at *1 (W.D.N.C. Dec. 8, 2016), *R. & R. adopted*, 2017 WL 382244 (W.D.N.C. Jan. 26, 2017) (same). Any such distinction likewise is irrelevant, as an employer violates Title VI by maintaining a discriminatory policy even if it may sometimes make an exception for a particular person. *See, e.g.*, *Graham v. Long Island R.R.*, 230 F.3d 34, 43 (2d Cir. 2000) ("an employer may not escape liability for discriminating against a given employee on the basis of race simply because it can prove it treated other members of the employee's group favorably"); *United States v. Lee Way Motor Freight, Inc.*, 625 F.2d 918, 950 (10th Cir. 1979) ("The employer is not excused from discriminating simply because he hired a member of one or more minorities."); Defs.' Mem. at 20-23, ECF No. 26-1; *cf. Wendt Corp. v. NLRB*, 26 F.4th 1002, 1011 (D.C. Cir. 2022) ("An employer's failure to discriminate against every union supporter does not disprove a conclusion that it discriminated against one of them.").

Lest there by doubt, Defendants do not argue that the *American Renaissance* job posting, Administrative Record 56, itself constitutes a freestanding Title VI violation. Rather, Defendants' theory is that the job posting is circumstantial evidence that Plaintiff has a policy, albeit perhaps an unstated and/or unwritten policy, of discriminating in employment against non-white persons by treating them worse in its hiring process than white persons. Although Defendants' moving papers contain a "cf." citation to 42 U.S.C. § 2000e-3(b) and 13 C.F.R. § 112.7(a), which prohibit discriminatory job postings, *see* Defs.' Mem. at 14, and assert that the job posting "demonstrates that [Plaintiff] applied its racial beliefs in the specific context of making hiring decisions," Defs.'s Reply at 5, Defendants did not intend, in offering this citation and/or statement to argue that the job posting itself constitutes a freestanding Title VI violation. To the extent that this citation and/or statement may have created such a misimpression, Defendants clarify that they intended to argue no such thing. The significance of the job posting, in Defendants' view, is not that it constitutes a freestanding Title VI violation, but rather, that it is circumstantial or indirect evidence that Plaintiff has a policy of discriminating against non-white persons in employment. *See* Defs.' Mem. at 8-9, 15 (explaining that circumstantial or indirect evidence is sufficient to satisfy the substantial evidence test, and arguing that the job posting is circumstantial or indirect evidence that Plaintiff discriminates against non-white persons "in the specific context of making hiring decisions").

Contra Plaintiff's argument, nothing in Title VI requires Defendants to identify a specific individual against whom Plaintiff discriminated. Rather, the existence of a discriminatory policy itself constitutes a complete and freestanding Title VI violation, wholly separate and apart from the question of whom—if anyone—Plaintiff has subjected to that policy. *See Smith*, 982 F. Supp. 2d at 49; *Adams*, 80 F.4th at 1268; *Sudduth*, 367 F. App'x at 705. The fact that a Title VII claim necessarily entails identifying a specific victim of discrimination is immaterial. That aspect of Title

VII is an artifact of Title VII's specific statutory language, under which a Title VII suit must be in the name of a specific "aggrieved person" (typically the plaintiff herself, although the Attorney General or Equal Employment Opportunity Commission may sue on a specific person's behalf). 42 U.S.C. § 2000e-16(c); *see also* Defs.' Reply at 7-8. But Title VI, in contrast, contains no such language—nothing in Title VI requires an agency to identify a particular victim of discrimination in order to find that an entity has violated Title VI. *See* 42 U.S.C. § 2000d *et seq.* For that reason, Plaintiff's reliance on Title VII case law for the proposition that establishing a Title VI violation requires identifying a particular victim of discrimination simply is a non-sequitur.

Three pieces of evidence in the administrative record collectively constitute substantial evidence that Plaintiff has an actual policy of discriminating against non-white persons in making employment decisions. *First*, the record shows that Plaintiff believes certain races are superior to other races—i.e., that white people are superior to black people. *See* Defs.' Mem. at 9-14 (record citations); Defs.' Reply at 10 (same). This rationally supports a finding that Plaintiff has a policy of discriminating against non-white persons in making its employment decisions for the following reason: "[b]ecause [Plaintiff] views non-white people as inferior to white people, a reasonable person can infer that [Plaintiff] would fear that a non-white job applicant's attitude, level of effort, and work product would be inferior to those of a white applicant." Defs.' Mem. at 15.

*Second*, the record shows that Plaintiff believes different racial groups—e.g., white and black people—generally should remain separate, and that it is bad when they mix. *See* Defs.' Mem. at 9-14 (record citations); Defs.' Reply at 10 (same). This rationally supports a finding that Plaintiff has a policy of discriminating against non-white persons in making employment decisions for the following reason: "Because [Plaintiff] believes that non-white people and white people generally

should remain separate, a reasonable person could infer that [it] would not want its employees to interact on a regular basis with a non-white person in a professional setting." Defs.' Mem. at 15.

*Third*, the job posting shows that Plaintiff uses its racial beliefs as a criterion for making hiring decisions. Based on that fact, a reasonable person could infer that Plaintiff makes its hiring decisions in accordance with its professed racial views—i.e., its views that some races are superior or inferior to others and that different racial groups generally should remain separate—and thus, that it does not hire or at least is less willing to hire persons who belong to certain racial groups.[1]

| | |
|---|---|
| Dated: August 12, 2025 | Respectfully submitted, |
| | JEANINE FERRIS PIRRO<br>United States Attorney |
| | By:   */s/ Bradley G. Silverman*<br>BRADLEY G. SILVERMAN, D.C. Bar #1531664<br>Assistant United States Attorney<br>601 D Street, NW<br>Washington, DC 20530<br>(202) 252-2575<br>bradley.silverman@usdoj.gov |
| | *Attorneys for the United States of America* |

---

[1]  Defendants intend to oppose Plaintiff's motion to vacate the July 29, 2025, minute order, *see* ECF No. 36, by August 18, 2025, *see* LCvR 7(b) (fourteen-day response period).