UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| NEW CENTURY FOUNDATION, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Civil Action No. 24-1612 (SLS) |
| THE UNITED STATES SMALL BUSINESS ADMINISTRATION, *et al.*, | ) ) ) |
| Defendants. | ) ) ) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' NOTICE**

By its undersigned counsel, Plaintiff New Century Foundation ("NCF") files this Response to the Notice submitted to this Court by Defendants Small Business Administration ("SBA") and Administrator Kelly Loeffler on August 12, 2025. CM/ECF 40 ("Notice").

**DISCUSSION**

SBA's Notice was filed in response to the Court's Minute Order of July 29, 2025 ("Minute Order") directing SBA to make a clearer presentation of its case. The Minute Order, CM/ECF 40, directed SBA to choose among three possible discrimination theories and show why its theory is supported by substantial evidence.[1]

The Notice fails to comply with the Court's mandate. Instead of picking a theory and supporting it with record evidence, the Notice appears to blend two theories and to offer no meaningful legal and evidentiary support for either.

---

[1] NCF continues to maintain that the Minute Order improperly gave legal advice to SBA and involved the Court in impermissible advocacy. *See* Motion for Withdrawal of Minute Order of July 29, 2025, CM/ECF 36 (filed Aug. 4, 2025) ("Motion for Withdrawal"). Because the Minute Order was not withdrawn as requested by NCF, and SBA has filed its Notice as ordered, NCF has no practical alternative but to respond to SBA's arguments.

1

One of NCF's theories is that NCF adopted a "discriminatory policy," and that adoption of this policy alone, without proof of any adverse acts based upon that policy, constitutes employment discrimination. Notice, p. 3.

The other theory is that NCF's policy was implemented in actual employment decisions, which SBA does not identify, that discriminated against non-white candidates and employees. This second theory, unlike the first, does not rely upon NCF's policy alone as proof of discrimination. *Id.*

Because SBA's Notice is so confusingly written, it is difficult to tell when SBA is arguing for one theory and when it is arguing for the other. That obstacle notwithstanding, the following responds to both theories.

**I.    NCF DOES NOT HAVE A POLICY THAT CONSTITUTES EMPLOYMENT DISCRIMINATION**

SBA contends that NCF has "a discriminatory policy [that] itself constitutes a complete and freestanding Title VI violation, wholly separate and apart from the question of whom – if anyone – Plaintiff has subjected to that policy." Notice, p. 3. The supposed policy, in turn, is based upon the following views:

1. ". . . Plaintiff believes certain races are superior to other races – *i.e.,* that white people are superior to black people." Notice, p. 4.

2. ". . . Plaintiff believes different racial groups – *e.g.,* white and black people – generally should remain separate, and that it is bad when they mix." *Id.*

SBA's characterizations of NCF's opinions are grossly inaccurate. Even if accurately stated, those views cannot constitute a "complete and freestanding" Title VI violation in the absence of adverse employment actions.

### A. NCF Does Not Hold the Views Attributed to It by SBA

Contrary to SBA's claim, not a single NCF statement cited in the Notice uses the word "inferior" to describe any racial or ethnic group. NCF never maintained that any race is comprehensively inferior or superior to another. NCF does say that certain traits and behaviors are differently distributed among the races; and that partly because of these aggregate differences, people of different races often do not live together in harmony. NCF points out these differences, the conflicts they create, and the burden racial strife places on the United States. NCF urges that those realities be taken into account when addressing issues such as civil rights legislation, racial preferences, diversity initiatives, and immigration policy.

That said, NCF recognizes that even if there are *average* racial differences – in traits such as height, body type, bone density, IQ, or serum testosterone levels – there is a great deal of overlap in these traits. Consequently, no one would deny that there are individuals of all non-white races who are, for example, vastly more intelligent and conscientious than the average white person. Any hiring policy that pretended otherwise would be a very foolish policy. NCF does not have such a policy, and SBA has not cited facts to show that it does.

### B. NCF's Views Cannot Support an Employment Discrimination Claim in the Absence of an Adverse Employment Action

Even if correctly characterized by SBA, the beliefs it attributes to NCF cannot support a discrimination claim without proof of an adverse employment action. As the Department of Justice has stated, "[a] Title VI discriminatory intent claim alleges that a recipient intentionally treated persons differently or otherwise knowingly caused them harm because of their race, color, or national origin." Civil Rights Division, Department of Justice, Title VI Legal Manual, Section VI. An employer's statements of opinion, unaccompanied by proof of discriminatory treatment of or harm to anyone, cannot satisfy this standard.

SBA's argument to the contrary is based upon four judicial decisions, none of which provides the slightest support for SBA's interpretation of Title VI. Notably, all the cited cases allege adverse acts that caused actual harm. *Smith v. Henderson,* 982 F.Supp.2d 32 (D.D.C. 2013) (parents and guardians of students in District of Columbia claimed harm from school closings that allegedly violated Title VI and other statutes); *Adams v. Demopolis City Schools,* 80 F.4th 1259) (11th Cir. 2023) (mother and grandmother of deceased student alleged that school system failed to protect student from bullying, leading to her suicide); *Sudduth v. Donnelly,* 367 F. App'x 703 (7th Cir. 2010) (designated by court as non-precedential) (plaintiff alleged that he was denied access to the courts on grounds of race and disability); *Carson v. Bethlehem Steel Corp.,* 82 F.3d 157 (7th Cir. 1996) (former employee alleged that she was fired and replaced because of her race).[2] None of those decisions suggests that the court would have entertained the claims presented in the absence of an allegation of adverse action that caused cognizable harm. Those cases are not outliers; the long history of Title VI litigation discloses not a single case in which a court has upheld, or even entertained, SBA's claim that Title VI does not require proof of an adverse action.

The complete absence of judicial support for SBA's view is not surprising. Contrary to SBA's contention, the requirement of adverse action in Title VI employment discrimination cases is not an "artifact" of Title VII's private right of action, unrelated to Title VI claims. Title VI plainly states that:

> No *person* in the United States shall, on the ground of race, color, or national origin, be *excluded from participation in, be denied the benefits of, or be subjected to discrimination* under any program or activity receiving Federal financial assistance. 42 U.S.C. §2000d (*emphasis added*).

---

[2] Of the four cases cited by SBA, only one – *Carson v. Bethlehem Steel Corp.* – claimed employment discrimination.

The statutory language is plain. Exclusions from participation, denial of benefits, and discrimination are adverse actions – not statements of opinion. If Congress had intended otherwise – that is, if it wished to adopt SBA's radical theory of Title VI liability -- it could and would have said so.

Besides its lack of statutory support, SBA's theory of Title VI would permit courts to find that a defendant's lawful speech – and nothing more – is sufficient to subject the speaker to an enforcement action for employment discrimination. Courts would have to find, in defiance of a first principle of American jurisprudence, that the law punishes not just deeds, but ideas and words. Neither the Civil Rights laws, nor the First Amendment to the United States Constitution, permit the Court to accept this theory.[3]

## II. SBA HAS FAILED TO ALLEGE A SINGLE ADVERSE EMPLOYMENT ACTION BY NCF

SBA's second theory is that NCF *did* commit adverse, discriminatory acts against applicants and employees, and that the opinions expressed by NCF's authors and speakers are "circumstantial or indirect evidence" of those adverse acts. Notice, p. 3.

SBA does not cite any record evidence of any such adverse action by NCF. SBA does, however, speculate at length about what NCF could, would or might have done. Apparently, NCF might have treated non-white persons worse by refusing to hire them outright or merely by

---

[3] NCF recognizes that words may be punished in narrowly-defined circumstances that are not alleged here. Defamation is illegal, as are some incitements to violence. In the employment discrimination context, the law permits workplace statements *directed at identifiable employees* as evidence of a hostile environment. The law also prohibits job announcements that express a clear preference for candidates with certain racial, ethnic, or gender characteristics, or that discourage applications from persons with disabilities. SBA expressly does not claim that NCF's statements, including the job advertisement that was available in 2017, fall into one or more of these categories of unlawful speech. *See* Notice, p. 3: "Lest there by [sic] doubt, Defendants do not argue that the *American Renaissance* job posting, Administrative Record 56, itself constitutes a freestanding Title VI violation."

5

being less likely to hire them. (SBA admits that it does not know if NCF did either of those things.) Notice, p. 2. NCF might have applied its whites-only policy rigorously, or might have made exceptions for a non-white person it regarded as "one of the good ones." *Id.* It might have treated some non-white persons fairly while treating other non-white persons unfairly. *Id.* The court is urged to find that NCF must have done one, some or all of these things, without offering the slightest evidence that it did any of them.

SBA's rampant speculation about NCF's phantom misdeeds underscores the wisdom of the courts' refusal to permit discrimination claims based upon speculation, and the strict limitation of the use of circumstantial evidence in discrimination claims.

As to the first point, the D.C. Circuit Court of Appeals and other circuits have consistently found that no element of a discrimination claim – much less all elements – may be based upon speculation. For example, in *Holcomb v. Powell*, 433 F.3d 889 (D.C. Cir. 2006), the D.C. Circuit Court of Appeals rejected a plaintiff's claim that denial of a promotion was motivated by "discriminatory animus" when the lack of evidence for the claim would take the court "far beyond reasonable inference and into the realm of unfettered speculation." *Id*. at 901. Similarly, in *Walker v. Johnson,* 798 F.3d 1085 (D.C. Cir. 2015), an employee who was denied a promotion asked the court to find that her name was on a list of potential candidates, without offering evidence of this fact. The D.C. Circuit found that "Walker's mere speculation that [her supervisor] could also have had in front of him a list of GS–13 candidates with her name on it does not present a genuine dispute of material fact." *Id*. at 1094. *See also Evans v. Technologies Applications Services*, 80 F.3d 954, 960 (4th Cir. 1996) ("[w]hile a Title VII plaintiff may present direct or indirect evidence to support her claim of discrimination, unsupported speculation is insufficient"); *Khalik v. United Airlines*, 671 F.3d 1188, 1194 (10th Cir. 2012)

(finding "nothing other than sheer speculation to link [the actions complained of] to a discriminatory or retaliatory motive.")

As to the second point, SBA's appeal to indirect and circumstantial evidence does nothing to take its claims beyond the realm of prohibited speculation. NCF acknowledged in its Summary Judgment Motion that courts may avail themselves of indirect or circumstantial evidence in employment discrimination cases, typically as a means of proving the intent underlying an adverse action that was proved by direct evidence. Notably, in *Loyd v. Phillips Bros., Inc.,* 25 F.3d 518 (7th Cir. 1994), a case cited by the SBA Administrative Judge in his Reconsideration Order (AR 211-233, Reconsideration Order p. 18), the court stated that circumstantial evidence could be used to establish the employer's intent when it denied an employee a place in an apprenticeship program; similarly, in *Troupe v. May Dept. Stores*, 20 F.2d 734 (7th Cir. 1994), also cited by the Administrative Judge, the court found that circumstantial evidence could be used to show that an employee was terminated from her job because of her pregnancy.

The facts and reasoning of *Lloyd* and *Troupe* are a far cry from SBA's argument. In fact, SBA has not cited, and NCF has not found, a single case in which a court has relied upon indirect or circumstantial evidence to show, not that an adverse action was motivated by discrimination, but that the adverse action occurred. The Court should give no credence to SBA's attempt to do so here.

**CONCLUSION**

SBA's Notice should conclude the long cycle of legal arguments in this case. That history does no credit to the Government. SBA began by accusing NCF, without evidence, of denial of access to facilities and discrimination in employment. On appeal to this court, the Government

7

abandoned the former claim and continued to assert the latter, even though neither claim had any support in fact or law.

At oral argument in this case, the Court noted the incoherence and insufficiency of SBA's arguments and offered the Government a chance to do better. *See* Motion for Withdrawal, p. 2. The result is the Notice to which NCF is responding, which muddies the waters even more and is entitled to no consideration by the Court.

This is a simple case. SBA does not like NCF's opinions and denied forgiveness of NCF's Paycheck Protection Program loan for that reason alone. The baseless legal theories SBA has adopted – and in one case abandoned -- in service of that action are improvisations. The Government's slapdash performance in the summary judgment briefing cycle only confirms this impression. The time has come – indeed, is past due – to grant summary judgment on Plaintiff's behalf and bring this discreditable incident to an end.

*/s/* Charles H. Kennedy
CHARLES H. KENNEDY
D.C. Bar No. 461636
THE KENNEDY PRIVACY LAW FIRM
1050 30TH Street, NW
Washington, DC 20007
(202) 450-0708
ckennedy@kennedyonprivacy.com
*Counsel for Plaintiff*

*/s/* Glen Allen
GLEN ALLEN
D.C. Bar No. 1013290
GLEN ALLEN LAW
5423 Springlake Way
Baltimore, MD 21212
(410) 802-6453
GlenAllenLaw@Protonmail.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on this date, he filed this Response to Defendants' Notice with the CM/ECF system, which constitutes service upon all parties pursuant to LCvR 5.4(d).

Dated: August 19, 2025                    /s/ *Charles H. Kennedy*
                                                                           Charles H. Kennedy
                                                                          D.C. Bar No. 461636