UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NEW CENTURY FOUNDATION,

*Plaintiff*,

v.

SMALL BUSINESS ADMINISTRATION, *et al.*,

*Defendants*.

Civil Action No. 24-1612 (SLS)

Judge Sparkle L. Sooknanan

## MEMORANDUM OPINION

New Century Foundation (New Century or NCF) runs an online publication called "American Renaissance" that advocates for white supremacy and racial separation. The Court is shocked and appalled by the views espoused by New Century. The record before the Court shows that New Century "promotes pseudo-scientific studies and research that purport to show the inferiority of blacks to whites—although in hifalutin language that avoids open racial slurs and attempts to portray itself as serious scholarship." AR 70, ECF No. 34. Writers for American Renaissance have proclaimed that "[s]o long as blacks and whites continue to live together, whites will pay the high price of sharing their society with an inveterately violent racial minority." AR 225. They have written that America "achieved character and greatness precisely because of discrimination"; that "people and races are not interchangeable, and . . . failure to discriminate would produce a warring mix of incompetents and unassimilables." *Id.* And they have written that "[f]ar-seeing whites should think carefully about arguments against discrimination in principle because discrimination . . . is necessary to our survival." *Id.*

At oral argument, New Century shockingly said much of the same, telling this Court that science supports the organization's views about the general inferiority of blacks, that whites and other races do not get along when they are forced into association, and that diversity is not always a strength.  Mot. Hr'g Tr., ECF No. 39.  Such odious views have long been rejected as inconsistent with our Nation's fundamental constitutional design and as scientifically unsupportable. *See, e.g.*, President Abraham Lincoln, The Gettysburg Address (Nov. 19, 1863) (Our Nation was "conceived in liberty, and dedicated to the proposition that all men are created equal."); *Brown v. Bd. of Ed.*, 347 U.S. 483, 495 (1954) (holding that "in the field of public education the doctrine of 'separate but equal' has no place"); UNESCO, THE RACE QUESTION, at 8 (1950) https://unesdoc.unesco.org/ark:/48223/pf0000128291  [https://perma.cc/M3UW-492C]  ("For all practical social purposes 'race' is not so much a biological phenomenon as a social myth."). To state the obvious, racial discrimination and racial segregation are unlawful, and this Court is stunned to encounter an organization that so brazenly embraces and disseminates such abhorrent writings.

New Century is before the Court because it filed this lawsuit to recover $51,600 from the federal government. During the COVID-19 pandemic, New Century received a loan guaranteed by the Small Business Administration (SBA) pursuant to the Paycheck Protection Program and the Coronavirus Aid, Relief, and Economic Security Act. New Century later sought loan forgiveness but the SBA denied its application, finding that New Century had engaged in employment discrimination in violation of federal law. New Century argues that the SBA's loan forgiveness denial violates the Administrative Procedure Act and the First Amendment. While the views expressed by New Century are reprehensible and cannot be reconciled with our Constitution and bedrock Supreme Court precedent, the administrative record, as it exists currently before the

Court, does not support the agency's decision. Thus, the law mandates that this Court vacate and remand the decision to the SBA for further proceedings.

## BACKGROUND

### A.   Statutory and Regulatory Background

"In response to the COVID-19 'public health emergency,' Congress enacted the Coronavirus Aid, Relief, and Economic Security (CARES) Act." *Gordon Coll. v. U.S. SBA*, No. 23-cv-614, 2025 U.S. Dist. LEXIS 101165, at *1 (D.D.C. May 28, 2025) (cleaned up) (citing Pub. L. No. 116-136, 134 Stat. 281 (2020)). Congress enacted the CARES Act "to help address the severe economic consequences caused by the pandemic." *United States v. Adams*, 139 F.4th 931, 932-933 (D.C. Cir. 2025) (cleaned up). "One component of the Act was the Paycheck Protection Program," (PPP). *Id*. at 933 (citing 15 U.S.C. § 636(a)(36)). The PPP "provided loans administered by the Small Business Administration that were 'intended to provide economic relief to small businesses nationwide adversely impacted' by the pandemic." *Id.* (quoting *Paycheck Protection Program*, 85 Fed. Reg. 20,811, 20,811 (Apr. 15, 2020)). It did this by providing "potentially forgivable loans" to small businesses. *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1247 (11th Cir. 2020) (citing 15 U.S.C. § 636(a)(36)(D)(I)).

"Rather than create a loan program from scratch, the CARES Act established the PPP as a temporary amendment to § 7(a) of the Small Business Act." *35 State St. Hotel Partners, LLC v. Loeffler*, No. 24-cv-747, 2025 U.S. Dist. LEXIS 51653, at *5 (D.D.C. Mar. 20, 2025) (cleaned up). Section 7(a) gives the SBA the "general authority to issue loans to qualifying small businesses and sole proprietorships, including by guaranteeing loans made by private lenders." *WP Co. LLC v. U.S. SBA*, 502 F. Supp. 3d 1, 7 (D.D.C. 2020) (citing 15 U.S.C. § 636(a); 13 C.F.R. § 120.2(a)); *see also United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 719 n.3 (1979) ("The SBA prefers to guarantee private loans rather than to disburse funds directly."). And "[t]he PPP temporarily

expanded the types of entities to which SBA could make covered loans to include non-profit organizations, independent contractors, and self-employed individuals, and it permitted SBA to guarantee all such loans." *WP Co. LLC*, 502 F. Supp. 3d at 7 (citations omitted).

"Applicants could apply for a loan by submitting an online application form directly to an authorized lender or a lender service provider, which would process the loan application on behalf of the Administration." *Adams*, 139 F.4th at 933 (citing 15 U.S.C. § 636(a)(36)(F)(ii)(I); *Paycheck Protection Program*, 85 Fed. Reg. at 20,814). This application process "relied heavily on self-certifications by the applicants to determine eligibility." *Id.*; *see also* 15 U.S.C. § 636m(h)(2) ("A lender may rely on any certification or documentation submitted by an applicant for an initial or second draw PPP loan[.]"); *In re Gateway Radiology Consultants, P.A.*, 983 F.3d at 1249 (saying an SBA interim final rule "allowed lenders to rely on the borrower's certifications and assured them that the SBA would hold lenders harmless for any borrower error or misrepresentation" (citing *Paycheck Protection Program*, 85 Fed. Reg. at 20,812, 20,816)).

"On the back end, the PPP allowed a recipient to apply to have its loan forgiven." *35 State St. Hotel Partners, LLC*, 2025 U.S. Dist. LEXIS 51653, at *6. "To obtain forgiveness, a borrower must submit a PPP loan forgiveness application with supporting documentation to its lender." *Gordon Coll.*, 2025 U.S. Dist. LEXIS 101165 at *6 (citing 15 U.S.C. §§ 636m(e)–(f)). "Within 60 days of receiving the application, the lender must 'issue a decision on the . . . application.'" *Id.* (quoting 15 U.S.C. § 636m(g)). "If the borrower is determined to be entitled to loan forgiveness, the lender submits a request for payment to SBA, and SBA, within 90 days, must 'remit to the lender an amount equal to the amount of forgiveness, plus any interest accrued through the date of payment." *Id.* (quoting 15 U.S.C. § 636m(c)(3)).

"'In light of the structure of the PPP . . . , in which loans and loan forgiveness are provided based on the borrower's certifications and documentation provided by the borrower,' SBA established a series of 'procedures and criteria through which SBA will review' a borrower's eligibility for a PPP loan, calculation of the loan amount, use of loan proceeds, and entitlement to loan forgiveness 'to ensure that PPP loans are directed to the entities Congress intended, and that PPP loan proceeds are used for the purposes Congress required.'" *Id.* at *6-7 (quoting *Business Loan Program Temporary Changes; Paycheck Protection Program—SBA Loan Review Procedures and Related Borrower and Lender Responsibilities*, 85 Fed. Reg. 33,010, 33,012 (June 1, 2020)). "SBA may undertake a review at any time in SBA's discretion." *Business Loan Program Temporary Changes; Paycheck Protection Program*, 85 Fed. Reg. at 33,012; *see also* 15 U.S.C. § 636m(k) (SBA "shall issue guidance and regulations implanting" loan forgiveness). "'If SBA determines that a borrower is ineligible for the PPP loan, SBA will direct the lender to deny the loan forgiveness application,' and, '[f]urther, if SBA determines that the borrower is ineligible for the loan amount or loan forgiveness amount claimed by the borrower, SBA will direct the lender to deny the loan forgiveness application in whole or in part, as appropriate.'" *Gordon Coll.*, 2025 U.S. Dist. LEXIS 101165, at *7 (quoting *Business Loan Program Temporary Changes; Paycheck Protection Program—SBA Loan Review Procedures and Related Borrower and Lender Responsibilities*, 85 Fed. Reg. at 33,012).

When it comes to eligibility requirements, an SBA interim final rule "provides guidance that for purposes of the [PPP], nonprofits must meet their nondiscrimination obligations under existing Federal laws and Executive Orders." *Business Loan Program Temporary Changes; Paycheck Protection Program—Nondiscrimination and Additional Eligibility Criteria*, 85 Fed. Reg. 27,287, 27,288 (May 8, 2020); *see also* 15 U.S.C. § 9012 (providing that the SBA "shall issue

5

regulations to carry out" the PPP without undergoing prior notice and comment review). One such antidiscrimination law is Title VI of the Civil Rights Act of 1964, which provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Title VI also authorizes and directs federal agencies that "extend Federal financial assistance to any program or activity, by way of grant, loan, or contract" to issue "rules, regulations, or orders of general applicability" effectuating Title VI, with some limited exceptions. 42 U.S.C. § 2000d-1. The SBA has accordingly prohibited certain recipients of federal funding from engaging in various forms of race-based employment discrimination. *See* 13 C.F.R. §§ 112.1, 112.4, 112.7(a), 113.1, 113.3(b), 113.3(d).

### B.  Factual Background

Around June 10, 2020, New Century executed an agreement with Capital One, N.A. for a PPP loan totaling $51,600. Compl. ¶ 12, ECF No. 1; AR 33, ECF No. 34. On September 21, 2021, New Century applied to Capital One for forgiveness of that loan. Compl. ¶ 13. On November 1, 2021, Capital One informed New Century that its application for forgiveness had been denied because New Century had engaged in employment discrimination in violation of various SBA regulations. Compl. ¶ 14.

On November 3, 2021, New Century emailed the SBA to say that it disputed Capital One's denial. Compl. ¶ 15. The next day, the SBA told New Century that Capital One had forwarded New Century's loan forgiveness application and Capital One's decision to the SBA for review. Compl. ¶ 16. On November 5, 2021, New Century's counsel sent letters to officials at Capital One asking it to provide evidence of discrimination, but it never responded. Compl. ¶ 17. Later, the

SBA asked Capital One to further explain its denial, and Capital One responded by citing the text of a New Century job posting. Compl. ¶ 18. The job posting was "for a full-time reporter for its monthly online magazine." AR 228, 56–57. It sought "applicants with a '[s]trong commitment to race realism and white advocacy,'" and it requested "that applicants submit a cover letter with '[a] brief description of applicant's political views and how he came to them' and 'why the applicant believes he would be a good fit for American Renaissance.'" *Id*. New Century claims that "all links to the job posting were deleted not later than 2017—well before NCF applied for its PPP loan—and that the text itself was left on the website through inadvertence and could not be found through any ordinary form of site access and search." Compl. ¶ 18; AR 205.

On December 29, 2021, the SBA told Capital One that New Century's loan would not be forgiven. Compl. ¶ 19; AR 1–2. And on January 2, 2022, the SBA informed New Century that it was ineligible for forgiveness of its PPP loan because it failed to comply with 13 C.F.R. Parts 112, 113, and 117. Compl. ¶ 19; AR 189. New Century appealed the SBA's decision to the SBA's Office of Hearings and Appeals. Compl. ¶ 20; AR 3–5. On June 16, 2022, an administrative law judge (ALJ) found that New Century was "ineligible for the amount [of] PPP loan received due to discrimination despite certifying on the Form 2483 [that] its business agreed not to discriminate in any business practice, including employment practices and services to the public on the basis of categories listed in 13 C.F.R., Parts 112, 113, and 117 of SBA regulations, rules, policy, federal statutes and case law." Compl. ¶ 20; AR 189.

New Century filed a petition for reconsideration, arguing that the ALJ's order lacked any basis in fact or law and that it amounted to an unconstitutional restriction on protected speech. Compl. ¶ 22; AR 204. On July 8, 2022, the ALJ denied New Century's petition for reconsideration, largely on the same grounds cited in the initial opinion. Compl. ¶ 23; AR 212. On July 19, 2022,

New Century sent a letter to the Administrator of the SBA asking her to reverse the ALJ's denial. Compl. ¶ 23. The Administrator did not respond to the letter. *Id.*

    **C.**    **Procedural Background**

On May 31, 2024, New Century sued the SBA and its Administrator in this Court alleging that the SBA's denial should be vacated and set aside under Section 706 of the Administrative Procedure Act (APA) because it was arbitrary and capricious, 5 U.S.C. § 706(2)(A), and contrary to constitutional right, power, privilege, or immunity, *id.* § 706(2)(B). *See* Compl. ¶¶ 33–56.[1] Both Parties moved for summary judgment. *See* Pl.'s Mot. Summ. J., ECF No. 24; Defs.' Mot. Summ. J., ECF No. 26. And both motions are ripe and ready for review. *See* Defs.' Opp'n, ECF No. 27; Pl.'s Opp'n, ECF No. 28; Pl.'s Reply, ECF No. 29; Defs.' Reply, ECF No. 32; Defs.' Notice in Resp. to Order, ECF No. 40; Pl.'s Resp. to Defs.' Notice, ECF No. 42.

## LEGAL STANDARD

"Although Federal Rule of Civil Procedure 56 requires a court to grant summary judgment 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law,'" *Pol'y & Rsch., LLC v. U.S. Dep't of Health & Hum. Servs.*, 313 F. Supp. 3d 62, 74 (D.D.C. 2018) (quoting Fed. R. Civ. P. 56(a)), "in APA cases, the summary judgment standard functions slightly differently, because 'the reviewing court generally . . . reviews the [agency's] decision as an appellate court addressing issues of law,'" *id.* (quoting *Henry v. Sec'y of Treasury*, 266 F. Supp. 3d 80, 86 (D.D.C. 2017)). "In other words,

---

[1] The Complaint also alleges that the SBA failed to follow both statutory and regulatory procedures required by law, *see* Compl. ¶¶ 27–32, and that the SBA's denial exceeded its statutory authority, *see id.* ¶¶ 57–58. But neither of these claims are addressed in New Century's Motion for Summary Judgment. *See* Pl.'s Mot. Summ. J., ECF No. 24. So they have been waived. *See Oceana, Inc. v. Pritzker*, 24 F. Supp. 3d 49, 72 (D.D.C. 2014) ("[A] plaintiff's failure to raise arguments or theories in its motion for summary judgment results in waiver of those arguments.").

summary judgment 'serves as the mechanism for deciding, as a matter of law, whether the agency action is supported' by the record 'and otherwise consistent with the APA standard of review.'" *Henry*, 266 F. Supp. 3d at 86 (quoting *Remmie v. Mabus*, 898 F. Supp. 2d 108, 115 (D.D.C. 2012)). "Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (cleaned up).

## DISCUSSION

New Century argues that the SBA's decision denying loan forgiveness was arbitrary and capricious in violation of the APA. *See* Pl.'s Mot. 8; Compl. ¶ 33. Because the SBA appears to abandon its prior rationale for the decision and relies instead on post hoc explanations, the Court vacates and remands the matter to the agency for further proceedings.[2]

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Assn. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Courts "review the administrative record to determine whether the agency's decision was arbitrary and capricious, and whether its findings were based on substantial evidence." *New LifeCare Hospitals of N.C., LLC v. Becerra*, 7 F.4th 1215, 1222 (D.C. Cir. 2021). A reviewing court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1351–52 (D.C. Cir. 2014) (quoting *State Farm*, 463 U.S. at 43). But it "cannot uphold agency action based on

---

[2] Because the Court agrees that the SBA's decision violates the APA, it declines to address New Century's First Amendment arguments.

reasons or rationalizations 'other than that expressed by the agency,'" *Toledo Hosp. v. Becerra*, 621 F. Supp. 3d 13, 26 (D.D.C. 2021) (quoting *Catholic Healthcare W. v. Sebelius*, 748 F.3d 351, 354 (D.C. Cir. 2014)).

The SBA opinion is not a model of clarity. Its analysis section begins by identifying the issue presented as a purely legal question: "Can the CARES ACT, PPP policy, legislation/ statutes, rules, and regulations promulgated by Congress and implemented by the Small Business Administration (SBA) exclude, restrict, or otherwise deem ineligible certain businesses who discriminate or engage in illegal discriminatory activities to receive PPP loans and/or Forgiveness? The answer is yes." AR 224. It then immediately jumps to the proposition that New Century's articles "exhibit discrimination, as well as proclaiming and enforcing separation of the races." AR 225. To support this statement, it seems to point to New Century's job posting, hypothesizing about what would happen if a person of color were to apply:

> The inference of discrimination in the posting makes it clear that protected class individuals would be denied, excluded, discouraged, and restricted from applying, and thus NCF engaged in illegal discriminatory employment practices.

*Id.* It then pivots back to New Century's articles, providing bulleted summaries of four of them. *See id.* From there, the opinion begins discussing Title VI, Title VII, and Virginia antidiscrimination law. *See* AR 225–27. And then the opinion returns to the original issue presented by discussing a line of Spending Clause and First Amendment cases. *See* AR 227.

After those confusing opening pages, the SBA finally begins discussing the job posting that it claims "exhibit[ed] discrimination." AR 225; *see* AR 228–29. It explains that the posting sought applicants with a "[s]trong commitment to race realism and white advocacy" and asked for a cover letter with "[a] brief description of [the] applicant's political views and how he came to them" and "why the applicant believes he would be a good fit for American Renaissance." AR 228. After stating that New Century's mission of white advocacy makes it clear that it "supports

10

discrimination," the SBA concludes without any citation that "NCF if not by direct evidence, clearly has engaged in discriminatory employment practices." *Id.* It backs this up by stating that New Century's job posting "clearly aligned itself with the knowledge and beliefs consistent with the organization's mission." *Id.*

On the next page, the SBA begins to cite to case law and regulations. *See* AR 229. It begins by pointing to cases allowing plaintiffs to bring discrimination claims where they have been deterred from applying. *See id.* (citations omitted). It then states that "[t]hese cases are analogous to the similar scheme New Century Foundation perpetuated by its discriminatory job announcement" because of vague references to individuals who were deterred from applying—without ever actually finding that any individuals were so deterred. *Id.*; *see also id.* ("[T]he exclusion of other protected class individuals who were deterred from applying because of its insidious discriminatory job announcement language it attempted to mask that it applied to all individuals regardless of color, race, religion, sex, and similar protected class members, however, their inten[t] was otherwise and clearly illegal."). And it concludes without explanation that "New Century Foundation has violated the civil rights requirements that apply to recipients of PPP loans, including 13 C.F.R. 112 and 113." *Id.* This sentiment crescendos on the next page when the SBA finally identifies the regulations that were (maybe) violated by the job posting:

> This job posting seeking applicants with a "[s]trong commitment to race realism and white advocacy" appears to be a discriminatory employment practice that violates SBA's civil rights requirements. *See* 13 C.F.R. 112.4 (prohibiting employment discrimination); 13 C.F.R. 112.7 (prohibiting action that subjects an individual to discrimination on the ground of race, color, or national origin, "in any employment practice, including recruitment or recruitment advertising"); 13 C.F.R. 113.3(b) (prohibiting discrimination regarding employment practices and prohibiting the "use of employment tests or criteria that discriminate based on race, color, . . . or national origin[")].

*Id.* at 230.

11

In briefing before this Court, the Defendants repackage the above amalgamation of ideas and statements. According to the Defendants, the SBA concluded that NCF has "an actual policy of discriminating against non-white persons in making employment decisions." Defs.' Notice 4. They assert that three facts in the administrative record support that conclusion: (1) that NCF believes white people are superior to black people, (2) that NCF believes that white and non-white people generally should remain separate, and (3) that NCF's job posting shows that it applies its racial beliefs in its hiring decisions. *Id.*; *see also* Defs.' Mot. 14. Although the record supports these three facts, the Court cannot agree that the SBA reached the conclusion the Defendants now advance.

The SBA quoted several of NCF's own articles espousing its beliefs that non-whites are inferior and that it is best for society when races do not mix:

- "So long as black and whites continue to live together, whites will pay the high price of sharing society with an inveterately violent racial minority." AR 225.

- "Our nation achieved character and greatness precisely because of discrimination[.] *Id.*

- "Our ancestors understood that people and races are not interchangeable, and that failure to discriminate would produce a warring mix of incompetents and unassimilables[.]'" *Id.*

- "Far-seeing whites should think carefully about arguments against discrimination in principle because discrimination . . . is necessary to our survival." *Id.*[3]

---

[3] The SBA also cited publicly available reports by groups that had analyzed NCF's publications. AR 215. The Southern Poverty Law Center found that NCF "purport[s] to show the inferiority of blacks to whites." *See, e.g.*, AR 70. And the Anti-Defamation League found that NCF "promotes pseudoscientific studies that attempt to demonstrate the intellectual and cultural superiority of whites," AR 73; "promotes the work of other white supremacists," AR 79; "publishes articles on the supposed decline of American society because of integrationist social policies," AR 73; and "promotes the idea that racial segregation is 'natural' and society is best organized along racially homogenous lines," *id.*

The SBA also pointed to NCF's 2017 job posting as evidence that New Century relies on its views on race in making hiring decisions. That posting stated that an "ideal applicant" would have a "[s]trong commitment to race realism and white advocacy." AR 56, 230. It also requested that applicants submit a cover letter addressing the applicant's "political views and how he came to them," as well as "[w]hy [the] applicant believes he would be a good fit for American Renaissance." AR 56–57, 228.

    The problem for the Defendants is that the SBA's decision did not tie its three factual findings to the conclusion the Defendants now advance: that New Century has a policy of discriminating in employment. And that is fatal. According to the Defendants, the SBA considered the job posting in tandem with the robust evidence of NCF's discriminatory views and concluded that NCF "has an actual policy of discriminating in employment against non-white persons by treating non-white persons worse in its hiring process—by either refusing to hire them at all, or else at a minimum being less willing or likely to hire them than similarly situated white persons." Defs.' Notice 1. But the SBA did not articulate such a broad conclusion. Instead, the agency found that the job posting *itself* "appear[ed] to be a discriminatory employment practice that violate[d] SBA's civil rights requirements." AR 230, 232. And it followed that statement with only boilerplate recitations of SBA regulations, not factual or legal analysis plausibly linking that posting to a broader policy or specific hiring decisions. *Id.* The SBA perhaps came closest to drawing such a connection when it found that "NCF's posting of its employment job announcement and practices clearly aligned itself with the knowledge and beliefs consistent with the organization's mission, 'race-realism' and 'white advocacy' and separation of the races." AR 228. And the Court agrees that the job posting demonstrates New Century's commitment to its views. But noting alignment between NCF's views and hiring criteria in the job posting is not the

13

same as finding the existence or application of the sort of blanket discriminatory employment policy the Defendants now claim was the basis for the denial of loan forgiveness.

In reviewing the validity of the SBA's decision, the Court must assess the rationale the SBA articulated. *See Info Labs Inc. v. U.S. Citizenship & Immigr. Servs.*, 613 F. Supp. 3d 415, 424 (D.D.C. 2020) ("[I]t is well-established that an agency cannot fill the holes of [its] decision by providing post hoc explanations in its briefs." (cleaned up)); *State Farm*, 463 U.S. at 50 ("[C]ourts may not accept . . . counsel's *post hoc* rationalizations for agency action." (citation omitted)); *id.* ("It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself."). Here, the SBA concluded that NCF's job posting was itself a discriminatory practice that rendered NCF ineligible for loan forgiveness. *See* AR 232 (NCF's "job posting . . . is determined to be a discriminatory employment practice that violates SBA's civil rights policy, rules, and regulations."). The Defendants, however, have since disclaimed that argument, Defs.' Notice 3 ("Defendants do not argue that the *American Renaissance* job posting . . . itself constitutes a freestanding Title VI violation."); Defs.' Reply 5 (the Defendants do "not contend that the posting is facially discriminatory"), so the Court need not address it.[4]

The Court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Amerijet*, 753 F.3d at 1351–52. But it is not reasonably discernible from

---

[4] In addition to concluding that NCF's job posting was a "discriminatory employment practice," the SBA found that NCF "also appears to be ineligible for a PPP loan because it restricts patronage for any reason other than capacity." AR 230. The Defendants do not address this finding in their Motion for Summary Judgment, *see* ECF No. 26, nor have they responded to NCF's assertion that the finding is an insufficient basis for upholding the SBA's denial, Pl.'s Mot. 24. They have thereby conceded the argument. *See Oceana*, 24 F. Supp. 3d at 72 ("[F]ailure to raise arguments or theories in [a] motion for summary judgment results in waiver of those arguments."); *see also* Local Rule 7(b); *Texas v. United States*, 798 F.3d 1108, 1110 (D.C. Cir. 2015) ("[Local Rule 7(b)] is understood to mean that if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded." (cleaned up)).

14

the SBA's analysis that NCF violated Title VI because it "has an actual policy of discriminating in employment against non-white persons." Defs.' Notice 1. Again, the language in the SBA's decision linking the single job posting to any broader discriminatory policy is too scant. *See Spirit Airlines, Inc. v. U.S. Dep't of Transp.*, 997 F.3d 1247, 1255 (D.C. Cir. 2021) ("Although our review is inherently deferential, it is not satisfied by an agency decision that ignores an important aspect of the problem before it or relies upon a threadbare explanation."). Given that New Century views non-white people as inferior and endorses and advocates for racial segregation, it may well be that the organization does have a policy of discriminating in employment. Indeed, the SBA may reach that conclusion and sufficiently articulate a basis for doing so on remand. But that conclusion cannot "reasonably be discerned" from the SBA decision currently before the Court. *See Amerijet*, 753 F.3d at 1351-52. And it would be improper for the Court to uphold the SBA's decision based on "reasons or rationalizations other than th[ose] expressed by the agency." *See Toledo Hosp.*, 621 F. Supp. 3d at 26 (cleaned up).[5]

## REMEDY

New Century seeks both vacatur and a "permanent injunction preventing any further efforts to collect amounts supposedly due under NCF's loan, and directing a full refund of any amounts paid by NCF under that loan, plus interest as permitted by law[.]" Compl., Prayer for Relief. ¶ (c). The Defendants argue that 15 U.S.C. § 634(b)(1) prohibits courts from issuing injunctions against the SBA. *See* Defs.' Mot. 27. That statute provides that "no attachment, injunction, garnishment,

---

[5] The Court rejects New Century's argument that the SBA could only find a Title VI violation with "proof of an adverse employment action" or harm to a specific individual, *see* Pl.'s Resp. to Defs.' Notice 3. *Cf. Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365 (1977) (where an employer has "a sign reading 'Whites Only' on the hiring-office door," an individual unwilling to "engage in a futile gesture" of applying "is as much a victim of discrimination as is he who goes through the motions of submitting an application").

or other similar process, mesne or final, shall be issued against [the SBA] or [its] property." 15 U.S.C. § 634(b)(1). "Some courts have read the anti-injunction language in Section 634(b)(1) literally and concluded that injunctive relief against the SBA is absolutely foreclosed." *Elk Assocs. Funding Corp. v. U.S. SBA*, 858 F. Supp. 2d 1, 20 (D.D.C. 2012) (collecting cases). "[O]thers have held that Section 634(b)(1) does not necessarily bar injunctions against the SBA in all circumstances." *Am. Ass'n of Pol. Consultants v. U.S. SBA*, 613 F. Supp. 3d 360, 369 (D.D.C. 2020) (citation omitted). "The D.C. Circuit has yet to take a clear position on this issue[.]" *Id.* But the Court need not decide the issue because an injunction is not warranted in this case.

The Supreme Court has explained that "*post hoc* rationalizations 'have traditionally been found to be an inadequate basis for review' of agency decisions." *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971)). And the Court has "approved the procedure of remanding so that an agency can provide an explanation for an inadequately articulated decision." *Id.* "Only in rare cases, when the reviewing court is convinced that remand would serve no purpose, does the court direct the agency how to resolve a problem." *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1111 n.6 (D.C. Cir. 2014). This is not such a case. The Court will thus vacate and remand the SBA's denial. The Court expresses no view about whether the SBA could permissibly issue another denial on remand.

## CONCLUSION

For the foregoing reasons, the Court grants New Century's motion for summary judgment, ECF No. 24, and denies the Defendants' motion, ECF No. 26. A separate order will issue.

 

                                                  SPARKLE L. SOOKNANAN
                                                  United States District Judge

Date:   September 29, 2025